1  Ronald J. Skocypec, Bar No. 72690
   J. Christopher Bennington, Bar No. 105432
2  KRING & CHUNG, LLP
   920 Hampshire Road
3  Suite A15
   Westlake Village, CA 91361
4  Telephone:  (805) 494-3892
   Facsimile:  (805) 494-3914
5
   Attorneys for Plaintiff
6  LIBERTY MUTUAL INSURANCE COMPANY

7

8              **UNITED STATES DISTRICT COURT**

9    **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

11 LIBERTY MUTUAL INSURANCE          ) Case No. C 06 2022 SC
   COMPANY,                          )
12                                   ) **Date:          October 26, 2007**
          Plaintiff,                 ) **Time:          10:00 a.m.**
13                                   ) **Courtroom:   1**
       vs.                           )
14                                   ) **MOTION FOR SUMMARY**
   MICHAEL T. BLATT,                 ) **JUDGMENT OR, IN THE**
15                                   ) **ALTERNATIVE, FOR SUMMARY**
          Defendant.                 ) **ADJUDICATION OF ISSUES;**
16                                   ) **MEMORANDUM OF POINTS AND**
                                     ) **AUTHORITIES; DECLARATION**
17                                   ) **OF J. CHRISTOPHER**
                                     ) **BENNINGTON; DECLARATION**
18 _____  ) **OF MICHAEL BAKER**

19     To Defendant Michael Blatt and his attorneys of record:

20

21     NOTICE IS HEREBY GIVEN that on October 26, 2007 at 10:00 a.m.,

22 or as soon thereafter as counsel may be heard in Courtroom 1 of the above-

23 entitled court, located at 450 Golden Gate Avenue, San Francisco, California,

24 Plaintiff Liberty Mutual Insurance Company will present its motion for

25 summary judgment or, solely in the alternative, for summary adjudication of

26 the following issues:

27     1) That Liberty Mutual is entitled to reimbursement from Defendant of

28

1  the $286,667.40 paid as attorney fees to the plaintiffs in the underlying
2  litigation;

3

4      2)  That Liberty Mutual is entitled to reimbursement from Defendant of
5  the $13,634.85 paid as costs of suit to the plaintiffs in the underlying
6  litigation;

7

8      3)  That Liberty Mutual is entitled to reimbursement from Defendant of
9  all of the $198,345.11 in fees and costs paid to defend Mr. Blatt in the
10 underlying litigation because the jury verdict in the underlying case
11 established as a matter of that Liberty Mutual never had an obligation to
12 defend Mr. Blatt;

13

14     4)  That, in the alternative, Liberty Mutual is entitled to reimbursement
15 from Defendant of any fees and costs paid to defend Mr. Blatt in the
16 underlying litigation against claims not covered by the policy;

17

18     5)  That Liberty Mutual is entitled to reimbursement from Defendant of
19 any fees and costs paid to defend Mr. Blatt in the underlying litigation and
20 incurred after the jury verdict was returned;

21

22     6) That Liberty Mutual is entitled to prejudgment interest at the rate of
23 ten percent per annum on the $286,667.40 paid as attorney fees to the
24 plaintiffs in the underlying litigation;

25

26     7)  That Liberty Mutual is entitled to prejudgment interest at the rate of
27 ten percent per annum on the $13,634.85 paid as costs of suit to the plaintiffs
28 in the underlying litigation;

**MOTION FOR SUMMARY JUDGMENT**

1    8) That Liberty Mutual is entitled to prejudgment interest at the rate of
2 ten percent per annum on the $198,345.11 paid to defend Mr. Blatt in the
3 underlying litigation, or any portion of that amount recovered by Liberty
4 Mutual.

5

6    The motion will be made on the grounds that Liberty Mutual had no
7 obligation to defend or indemnify Defendant against the claims raised in the
8 underlying litigation.  The motion will be based on this notice, the attached
9 memorandum of points and authorities, the declaration of Michael Baker, and
10 the declaration of J. Christopher Bennington.  Plaintiff will also ask the court
11 to take judicial notice of the complaint, jury verdict, and judgment in the
12 underlying litigation.

13

14 Dated:  September 21, 2007            KRING & CHUNG, LLP

15

16                                 By: _____
17                                     Ronald J. Skocypec
                                       J. Christopher Bennington
18                                     Attorneys for Plaintiff
                                       LIBERTY MUTUAL INSURANCE
                                       COMPANY
19

20

21

22

23

24

25

26

27

28

3
**MOTION FOR SUMMARY JUDGMENT**

1

# **TABLE OF CONTENTS**

2

3   Memorandum of Points and Authorities...........................................................1

4

5   Statement of Facts..........................................................................................1

6

7   The Liberty Mutual Insurance Company Policy...............................................3

8

9   Issues To Be Decided.....................................................................................4

10

11   Legal Argument...............................................................................................5

12

13   I. Liberty Mutual Is Entitled to Seek Reimbursement from Mr. Blatt..............5

14

15   II. Liberty Mutual Is Entitled to Recover All of the Attorneys Fees and

16      Costs Paid to Plaintiffs in the Underlying Lawsuit.....................................6

17

18   III. Liberty Mutual Is Entitled to Recover All of the Fees and Costs

19      Incurred in Defending Mr. Blatt Against the Underlying Litigation...........11

20

21   IV. Liberty Mutual Is Entitled to Recover Prejudgment Interest on

22      All Elements of Its Claim...........................................................................15

23

24   Conclusion....................................................................................................20

25

26

27

28



1

# TABLE OF AUTHORITIES

2 | Buss v. Superior Court,

3 | 16 Cal.4th 35, 65 Cal.Rptr.2d 366 (1997)....................................5, 6, 19

4 | California Shoppers, Inc. v. Royal Globe Ins. Co.,

5 | 175 Cal.App.3d 1, 221 Cal.Rptr. 171 (1985).........................................20

6 | Golden Eagle v. Cen-Fed, Ltd.,

7 | 148 Cal.App.4th 976, 56 Cal.Rptr.3d 279 (2007).........................7, 8, 14

8 | Hameid v. National Fire Insurance of Hartford,

9 | 31 Cal.4th 16, 1 Cal.Rptr.3d 401 (2003).............................................12

10 | Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.,

11 | 211 Cal.App.3d 1285, 260 Cal.Rptr. 190 (1989)............................16, 17

12 | Highland Ins. Co. v. Continental Casualty Co.,

13 | 64 F.3d 514 (9th Cir. 1995)....................................................................18

14 | Mirpad, LLC v. CIGA,

15 | 132 Cal.App.4th 1058, 34 Cal.Rptr.3d 136...........................................14

16 | Montrose Chemical Corp. v. Superior Court,

17 | 6 Cal.4th 287, 24 Cal.Rptr.2d 46 (1993)...............................................11

18 | Oil Base, Inc. v. Transport Indemnity Co.,

19 | 148 Cal.App.2d 490, 492, 306 P.2d 924 (1957)....................................20

20 | Prichard v. Liberty Mut. Ins. Co.,

21 | 84 Cal.App.4th 890, 101 Cal.Rptr.2d 298 (2000)....................................7

22 | Scottsdale Insurance Co v. MV Transportation,

23 | 36 Cal.4th 643, 31 Cal.Rptr.3d 147...........................................11, 12, 13

24 | Shell Oil Co. v. National Union Fire Ins. Co.,

25 | 44 Cal.App.4th 1633, 52 Cal.Rptr.2d 580 (1996)............................18, 19

26

27 | California Civil Code section 3287(a)...........................................................15

28 | California Civil Code section 3289(b).....................................................18, 19

ii

1

2

## **MEMORANDUM OF POINTS AND AUTHORITIES**

3    Liberty Mutual seeks to recover the defense costs incurred in defending
4 Michael Blatt against claims made in the underlying litigation, Gabbert v.
5 Blatt, Marin County case number CV 020477 ("Gabbert action"). The results
6 of the Gabbert action and the terms of the Liberty Mutual policy establish that
7 Liberty Mutual never had any obligation to defend Blatt at all. Liberty Mutual
8 is entitled to reimbursement of all costs of defense, including the attorneys
9 fees and costs paid to the underlying plaintiffs, and it is entitled to summary
10 judgment in this matter.

11

12

## **STATEMENT OF FACTS**

13

14    In September of 1998, James Gabbert and Michael Lincoln entered
15 into a contract with Michael Blatt, Catherine Blatt and Peter Kane, wherein
16 the Blatts agreed to build and sell two high-end condominiums in Sausalito to
17 Gabbert and Lincoln. Kane acted as the real estate agent for the Blatts.

18

19    Schnabel Foundation Company ("Schnabel") was hired to construct a soil
20 nail retaining wall to stabilize the hillside behind the condos. Schnabel as
21 insured by Liberty Mutual, and Liberty Mutual issued a certificate of insurance
22 naming Mr. Blatt as an additional insured.

23

24    Escrow on the Sausalito properties closed in March 1999, and Gabbert
25 and Lincoln embarked on extensive remodeling of the condominiums. During
26 the remodeling they discovered construction defects, including problems with
27 water intrusion from the hillside. (Exhibit D.)

28

**MOTION FOR SUMMARY JUDGMENT**

1      Gabbert and Lincoln filed suit against the Blatts and Kane in January
2 2002.  In Gabbert v. Blatt, Marin County case number CV 020477, the
3 plaintiffs asserted causes of action for breach of contract, negligence, fraud,
4 negligent misrepresentation, "suppression and concealment of facts," and
5 breach of implied warranty.  Plaintiffs generally alleged that the Blatts had
6 breached their contract because the building failed to conform to the agreed
7 plans and failed to meet the applicable codes.  They also maintained that the
8 property was unsuitable for occupation and that the Blatts had failed to
9 disclose defects in the property.  (Exhibit D.)  The Blatts, in turn, filed a cross-
10 complaint against Schnabel.

11

12      Mr. Blatt tendered his defense to Liberty Mutual under the terms of the
13 policy issued to Schnabel.  Liberty Mutual accepted Mr. Blatt's defense
14 subject to a September 4, 2002 reservation of rights, including Liberty
15 Mutual's "right to seek allocation and/or reimbursement of any defense costs
16 not associated with" covered claims.   Liberty Mutual ultimately paid
17 $198,345.11 for Mr. Blatt's defense.  (Declaration of Michael Baker; Exhibit
18 C.)

19

20      The matter proceeded to trial, and the jury returned a verdict on
21 February 27, 2004.  Mr. Blatt was found liable to the plaintiffs for almost
22 $145,000.  Schnabel was found not liable to any party.  Pursuant to an
23 attorneys' fees provision in their contract with Mr. Blatt, plaintiffs were
24 awarded their attorneys' fees of nearly $287,000 as prevailing parties, as well
25 as court costs of almost $14,000, for a total of $300,302.25.  (Exhibits E and
26 F.)

27

28

2
**MOTION FOR SUMMARY JUDGMENT**

1    Since Schnabel was found not liable, Liberty Mutual declined to pay
2  any indemnity on behalf of Mr. Blatt, and Mr. Blatt paid the $145,000
3  judgment to the plaintiffs.  However, Liberty Mutual did pay the court costs
4  and attorneys fees awarded in favor of Gabbert and Lincoln under the
5  supplementary payments provisions of the Schnabel policy.  Payment was
6  made subject to the reservation of rights.  (Baker declaration.)

7
8              **THE LIBERTY MUTUAL INSURANCE COMPANY POLICY**
9

10   Liberty Mutual Insurance Company issued policy TB1-131-011670-397
11  to Schnabel Foundation Company for the period April 1, 1997 to April 1,
12  1998, with policy limits of $1.5 million per occurrence subject to a general
13  aggregate limit of $3 million and a products/completed operations aggregate
14  of $2 million.  (Exhibit A.)

15

16   The policy included a blanket additional insured endorsement, form LG
17  1005.  The endorsement expands the policy definition of "insured" to include
18  "any person or organization for whom you have agreed in writing to provide
19  Liability insurance," but coverage is limited to "liability arising out of your
20  operations or premises owned by or rented to you."   Liberty Mutual also
21  issued a certificate of insurance that stated that "[a]ll liability policies . . . are
22  endorsed to include Mike Blatt as an additional insured as their interest(s)
23  may appear."  (Exhibit B.)[1]

24
25
26

27  [1]  While only the pertinent portions of the policy have been submitted with this motion, the
    entire policy was attached as an Exhibit to Plaintiff's complaint.
28

**MOTION FOR SUMMARY JUDGMENT**

1

## **ISSUES TO BE DECIDED**

2

3      1)  Did the jury verdict in the Gabbert action establish as a matter of
4   law that Liberty Mutual never had a duty to defend Mr. Blatt?

5

6      2)  Did the jury verdict in the in the Gabbert action terminate any duty to
7   defend Mr. Blatt that Liberty Mutual may have had?

8

9      3)  Is Liberty Mutual entitled to recover from Mr. Blatt the $286,667.40
10   paid as attorney fees to the plaintiffs in the underlying litigation after the jury
11   verdict was returned?

12

13      4)  Is Liberty Mutual entitled to recover from Mr. Blatt the,667.40 paid
14   $13,634.85 paid as costs of suit to the plaintiffs in the underlying litigation
15   after the jury verdict was returned?

16

17      5)  Is Liberty Mutual entitled to reimbursement from Defendant of all of
18   the $198,345.11 in fees and costs paid to defend Mr. Blatt in the underlying
19   litigation because the jury verdict in the underlying case established as a
20   matter of LAW that Liberty Mutual never had an obligation to defend Mr.
21   Blatt?

22

23      6)  In the alternative, is Liberty Mutual entitled to reimbursement from
24   Defendant of any fees and costs paid to defend Mr. Blatt in the underlying
25   litigation against claims not covered by the policy?

26

27      7)  Is Liberty Mutual entitled to reimbursement from Defendant of any
28   fees and costs paid to defend Mr. Blatt in the underlying litigation and

4
**MOTION FOR SUMMARY JUDGMENT**

1  incurred after the jury verdict was returned?

2

3       8) Is Liberty Mutual is entitled to prejudgment interest at the rate of ten
4  percent per annum on the $286,667.40 paid as attorney fees to the plaintiffs
5  in the underlying litigation?

6

7       9) Is Liberty Mutual is entitled to prejudgment interest at the rate of ten
8  percent per annum on the $13,634.85 paid as costs of suit to the plaintiffs in
9  the underlying litigation?

10

11       10) Is Liberty Mutual is entitled to prejudgment interest at the rate of
12  ten percent per annum on the $198,345.11 paid to defend Mr. Blatt in the
13  underlying litigation, or any portion of that amount recovered by Liberty
14  Mutual?

15

16                            **LEGAL ARGUMENT**

17

18  **I.      Liberty Mutual Is Entitled to Seek Reimbursement from Mr.**
19  **Blatt**

20

21       In order to preserve its right to seek reimbursement, a carrier has to
22  give express notice of that reservation to the insured.  "To the extent that this
23  right [of reimbursement] is implied in law as quasi-contractual, it *must* indeed
24  be reserved. . . . Through reservation, the insurer gives the insured notice of
25  how it will, or at least may, proceed and thereby provides it an opportunity to
26  take any steps that it may deem reasonable or necessary in response --
27  including whether to accept defense at the insurer's hands and under the
28  insurer's control. . . or, instead, to defend itself as it chooses.  To the extent

                                    5
                      **MOTION FOR SUMMARY JUDGMENT**

1 that this right is implied in fact in the policy as contractual, it *should* be
2 reserved.  Through reservation, the insurer avoids waiver."  Buss v. Superior
3 Court, 16 Cal.4th 35, 61 n. 27, 65 Cal.Rptr.2d 366 (1997).

4

5       In its reservation of rights letter of September 4, 2002, Liberty Mutual
6 wrote: "Our defense obligation is triggered only by allegations of 'property
7 damage' arising out of our named insured's work.  We specifically reserve the
8 right to seek allocation and/or reimbursement of any defense costs not
9 associated with those allegations."  (Exhibit C.)

10

11       The language in Liberty Mutual's reservation of rights letter placed Mr.
12 Blatt on notice that Liberty Mutual might seek reimbursement of the defense
13 costs incurred in the Gabbert litigation.  As discussed in more detail below,
14 the payment of attorneys' fees and costs to the Gabbert plaintiffs was a
15 function of the defense obligation under the policy and was not a form of
16 indemnity.  Thus, the reservation to seek reimbursement of "defense costs"
17 expressed by Liberty Mutual includes the attorney's fees and costs incurred
18 to defend Mr. Blatt as well as the costs and fees paid to Gabbert and Lincoln
19 as part of the judgment.

20

21  **II.   Liberty Mutual Is Entitled to Recover All of the**
22       **Attorneys Fees and Costs Paid to Plaintiffs in the**
23       **Underlying Lawsuit**

24

25       The plaintiffs in the underlying action were awarded their attorneys'
26 fees and costs of  $300,302.25 as the prevailing parties pursuant to the terms
27 of their contract with Mr. Blatt.  (Exhibit F.)   That award (1) was based
28 exclusively on the plaintiffs' contract with Mr. Blatt and (2) did not, in any way,

1 arise out of the operations of Schnabel. In fact, Schnabel was completely
2 exonerated at trial. The payment of the Gabbert plaintiffs' attorney's fees
3 and costs under the supplementary payments provisions constituted a cost of
4 defense, rather than a form of indemnity. In Prichard v. Liberty Mut. Ins. Co.,
5 84 Cal.App.4th 890, 101 Cal.Rptr.2d 298 (2000), the Court of Appeal stated:

6

7 " . . . the supplementary payments provision providing all 'costs
8 taxed' is a function of the insurer's defense obligation, not its
9 indemnity obligation. Liberty Mutual's contention that its
10 insurance policy would not 'apply' to a defended mixed action
11 where there is no actual coverage is belied by the direct
12 references to the defense obligation and the allegation of
13 damages." Id. at 911-12.

14

15 The Prichard court also suggested that Liberty Mutual could seek
16 reimbursement of fees incurred after the determination was made that there
17 was no potential for coverage under the policy.

18

19 The recent decision by the California Court of Appeal in Golden Eagle
20 v. Cen-Fed, Ltd., 148 Cal.App.4th 976, 56 Cal.Rptr.3d 279 (2007), makes
21 express what the Prichard court only intimated: a carrier found to have had
22 no defense obligation in the first instance has no obligation to pay to the
23 plaintiff any attorney's fees and costs otherwise payable under a
24 supplementary payments provision.

25

26 In Cen-Fed the carrier was presented with a tender by a landlord sued
27 for a variety of claims stemming from the landlord's failure to maintain the
28 rental property in a manner consistent with the terms of the lease. In the

7
**MOTION FOR SUMMARY JUDGMENT**

1 underlying case, the jury awarded more than \$500,000 to the plaintiff/tenant
2 for "diminution in the value of the leasehold interest."  However, the jury
3 refused to make any award for claims of individual "damages" for things such
4 as the costs of repairs advanced by the tenant.  The plaintiff also received an
5 award of attorney's fees under the terms of the lease.

7      The trial court in the Cen-Fed coverage action determined that there
8 was no coverage for any of the judgment returned against the insured.
9 Among other things, the court found that there was no "occurrence" and no
10 "property damage" as those terms were defined in the policy at issue.

12      However, despite the fact that there was no coverage, the trial court
13 also held that Golden Eagle was obliged under the supplementary payments
14 provisions to pay the attorneys fees and costs awarded against the insured.
15 This decision was based on the rather mechanical logic that the policy called
16 for the payment of costs in "any suit against an insured we defend," and
17 since Golden Eagle had provided a defense – albeit under a reservation of
18 rights – it had to pay the fee and cost award.  The trial court reached this
19 conclusion despite acknowledging that Golden Eagle had no duty under the
20 policy to defend Cen-Fed against any of the claims in the underlying
21 litigation.

23      The Court of Appeal rejected that logic, and found that because there
24 was no obligation to defend the insured, there also was no obligation to pay
25 an award that constituted an element of that defense.

27      In reaching its conclusion, the Cen-Fed court first agreed with the
28 Prichard court about the nature of the supplementary payments provision,

1 and then distinguished that case from its own set of facts:

3 "The Prichard court stated the supplementary payments provision
4 'is a function of the [carrier's] defense obligation, not its indemnity
5 obligation. . . . In that case, the insurer *owed* a duty to defend at
6 least one of the claims asserted against the insured. That, of
7 course, is not the case here; and that distinction makes all the
8 difference." 148 Cal.App.4th 976, 992.

10 In reversing the trial court's decision that Golden Eagle had to make
11 payments under the supplementary payments provision, despite a finding
12 that there was no coverage for the claim, the Court of Appeal concluded:

14 "The trial court's judgment regarding the supplementary payments
15 clause is also inconsistent with an insurer's right to seek
16 reimbursement of defense costs where it is determined that no
17 defense was owed and the insurer has provided a defense under
18 a full reservation of rights. . . . If . . . Golden Eagle would be
19 entitled to recoup from Cen-Fed all of its properly reserved
20 defense costs, then why would that not also extend to any
21 supplementary payments obligation it might otherwise have under
22 a literal reading of the policy. In this case, it seems worse than
23 anomalous to allow Golden Eagle to recover its own defense
24 costs, but then turn around and require it to pay the costs and
25 attorney's fees awarded against Cen-Fed. The liability for such
26 supplementary payment is an integral part of the Golden Eagle
27 defense burden. . . . Since no defense liability ever existed,
28 Golden Eagle should likewise have no obligation under the

9

1  supplementary payments provision.  That clause must necessarily
2  be read as applying *only* to those cases where the insurer actually
3  owed a duty to defend.  To read it otherwise conflicts with
4  common sense, is contrary to the public policy of encouraging
5  rather than discouraging liability insurers to provide a defense to
6  an insured, and obviously would not be within the *objectively*
7  reasonable expectations of any party to the policy."  Id. at 996,
8  emphases in original.

9

10     Here, the award of attorneys' fees against Mr. Blatt arose exclusively
11  out of Mr. Blatt's contract with the underlying plaintiffs and did not, in any
12  way, arise out of Schnabel's operations, as required by Liberty Mutual's
13  policy language.  Those attorneys fees and costs were also awarded by the
14  underlying court *after* the jury had found Schnabel not liable.  Thus, the fees
15  and costs were awarded *after it had been established as a matter of law that*
16  *the claims against Mr. Blatt did not arise out of Schnabel's operations, and*
17  *that Liberty Mutual had no obligation to defend or indemnify Mr. Blatt.*  Liberty
18  Mutual reserved its rights to recover any defense fees and costs incurred in
19  connection with noncovered damages, such as the attorneys' fees awarded
20  to the underlying plaintiffs.   Liberty Mutual is now entitled to complete
21  reimbursement for the noncovered supplementary payments made to the
22  Gabbert plaintiffs.

23

24

25

26

27

28

10
**MOTION FOR SUMMARY JUDGMENT**

1

2

3

4

## III. **Liberty Mutual Is Entitled to Recover All of the Fees and Costs Incurred in Defending Mr. Blatt Against the Underlying Litigation**

5  California law requires a carrier to defend its insured against a third
6  party complaint if there is potential for coverage for any of the claims or facts
7  alleged in that complaint.  As the Supreme Court has noted, the duty to
8  defend is excused only where "the third party complaint can by no
9  conceivable theory raise a single issue which could bring it within the policy
10 coverage."  Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 300,
11 24 Cal.Rptr.2d 46 (1993).

12

13 When some of the claims against the insured are potentially covered
14 and some are not, the carrier has a duty to defend the entire action.  This
15 obligation is imposed by law because, as the Supreme Court noted in Buss,
16 "[t]o defend meaningfully, the insurer must defend immediately. . . .  To
17 defend immediately, it must defend entirely.  It cannot parse the claims,
18 dividing those that are at least potentially covered from those that are not."
19 16 Cal.4th 35, 49.

20

21 On the other hand, the Buss court also made it clear that a carrier can
22 seek reimbursement from its insured for those defense costs "that are not
23 even potentially covered" under the policy.  Id. at 50.  Thus, a carrier can
24 reserve its rights, defend its insured, and then seek reimbursement from that
25 insured for costs incurred exclusively in the defense of uncovered claims.

26

27 The California Supreme Court expanded its Buss holding in Scottsdale
28 Insurance Co v. MV Transportation, 36 Cal.4th 643, 31 Cal.Rptr.3d 147

11

**MOTION FOR SUMMARY JUDGMENT**

1 (2005).  The Scottsdale court held that "where it is ultimately determined, as
2 a matter of law, that a policy never afforded any potential for coverage," and
3 the carrier never had a duty to defend its insured against a given lawsuit, the
4 carrier can seek reimbursement of *all* of the defense costs so long as it has
5 "properly reserved its rights to such reimbursement."  Id. at 649.

6

7      In Scottsdale, the insured had been sued for breach of contract,
8 unlawful business practices, and misappropriation of confidential proprietary
9 information, which it used to compete unfairly for bussing contracts from
10 urban transportation authorities.   Scottsdale agreed to defend, under a
11 reservation of rights, on the theory that some of the allegations may have
12 given rise to a covered claim for advertising injury.  Scottsdale also filed a
13 declaratory relief lawsuit seeking a determination of its coverage obligations.

14

15      Scottsdale argued that the advertising injury coverage in its general
16 liability policy did not apply because "advertising" connoted widespread
17 promotional activities directed to the public at large.  The allegations against
18 the insured did not include any suggestion of such widespread promotional
19 activities, but rather one-on-one solicitation of individual customers.

20

21      While Scottsdale's action was pending, the Supreme Court decided
22 Hameid v. National Fire Insurance of Hartford, 31 Cal.4th 16, 1 Cal.Rptr.3d
23 401 (2003), in which it determined that advertising injury as defined in
24 general liability policies required widespread dissemination of promotional
25 materials, not narrowly circumscribed solicitations or communications to a
26 handful of recipients.  The decision in Hameid thus answered the coverage
27 question raised in Scottsdale, and the Scottsdale court ultimately held that
28 the carrier was entitled to retroactive reimbursement of *all* defense costs

**MOTION FOR SUMMARY JUDGMENT**

1   incurred on behalf of the insured.[2]

2

3   The Scottsdale court explained:

4

5   "[W]e have made clear that where the third-party suit never

6   presented any potential for policy coverage, the duty to defend

7   does not arise in the first instance, and the insurer may properly

8   deny a defense.  Moreover, the law governing the insurer's duty to

9   defend need not be settled at the time the insurer makes its

10   decision.  As several courts have explained, *subsequent* case law

11   can establish, in hindsight that no duty to defend ever existed. . . .

12

13   "These principles are equally true where, as here, the insurer

14   does not deny a defense at the outset but instead elects to

15   provide one under a reservation of its right to reimbursement.  By

16   law applied in hindsight, courts can determine that no potential for

17   coverage, and thus no duty to defend, ever existed."  36 Cal.4th

18   643, 657-58.

19

20   In this case, the jury decision in favor of Schnabel established, as a

21   matter of law, that Liberty Mutual had never had any obligation to defend Mr.

22   Blatt.  Mr. Blatt was only due a defense to the extent that his liability arose

23   out of Schnabel's operations.  The jury verdict in favor of Schnabel means

24   that none of the claims against Mr. Blatt could have ever resulted from

25

26   _____

[2]   The Court of Appeal in Scottsdale held that the carrier was only relieved of any
27   prospective duty to defend in light of Hameid, but denied Scottsdale a recovery of any
   defense costs incurred up to that point.

28

1 Schnabel's operations on the project.

2

3 The decision in <u>Cen-Fed</u> also supports this conclusion. The <u>Cen-Fed</u>
4 court also held that the determination of no coverage for the jury verdict in
5 the underlying case was a resolution of a purely *legal matter*, and did not
6 hinge on a *factual dispute*. At different points in the opinion, the court wrote
7 that "there was no actual or potential coverage, *as a matter of law*, under the
8 Coverage A provisions of the Golden Eagle policies," and "Golden Eagle
9 never had any duty, *as a matter of law*, to indemnify [the insured]. . . ." 148
10 Cal.App.4th 976, 989, 993 (second emphasis in original).[3]   The Court of
11 Appeal even stated: "We conclude that the trial court correctly determined
12 that Golden Eagle was not liable to indemnify Cen-Fed for the damages
13 awarded against it in the underlying action.   Moreover, since there was no
14 coverage under the Golden Eagle policy for the WMB claims, as a matter of
15 law, a duty to defend the underlying action never arose." 148 Cal.App.4th at
16 980.

17

18 To summarize, the Supreme Court held in <u>Scottsdale</u> that a carrier can
19 recover past defense costs if it is found that there was no duty to defend in
20 the first instance because of a question of law.  In <u>Cen-Fed</u>, the carrier was
21 found to have no duty to defend in the first instance because the underlying

22

23 ─────────────────────
24 [3]   In addition to determining that there was no duty to defend under Coverage A because
there was no "property damage" caused by an "occurrence," the <u>Cen-Fed</u> trial court found
that Golden Eagle had no obligation under Coverage B because of an exclusion against
25 liability assumed under contract.  Without reaching that issue, the Court of Appeal held
that personal injury coverage was unavailable because it only applied to claims raised by
26 *persons*, not corporate plaintiffs such as the one who sued Cen-Fed.  The rule limiting
personal injury coverage to claims by individuals was announced by the Second District in
27 <u>Mirpad, LLC v. CIGA</u>, 132 Cal.App.4th 1058, 34 Cal.Rptr.3d 136 (2005), an opinion
published after the trial court's ruling in <u>Cen-Fed</u>.
28

**MOTION FOR SUMMARY JUDGMENT**

1  plaintiff did not receive any award for "property damage."

2

3  In the instant case, the jury verdict in favor of Schnabel established, as
4  a matter of law, that Liberty Mutual never had a duty to defend or indemnify
5  Mr. Blatt because there was never any covered claim.  There was no covered
6  claim because none of the claims arose out of the operations of Schnabel.
7  The Liberty Mutual policy only covered Mr. Blatt against claims arising out of
8  Schnabel's operations.   Liberty Mutual is therefore entitled to recover all
9  sums it spent in defending Mr. Blatt in the Gabbert action.

10

11  Solely in the alternative, Liberty Mutual is entitled under Buss to
12  recover all defense fees and costs spent defending Mr. Blatt against claims
13  unrelated to the allegations involving the wall built by Schnabel.   This is
14  black-letter law, and the court should establish the right to reimbursement by
15  granting this motion.   The only issue then remaining at trial would be an
16  allocation of the fees and costs between those related to defense of Mr. Blatt
17  against claims involving the Schnabel wall and those related to the defense
18  other claims or incurred by Mr. Blatt in pressing his affirmative claims against
19  Schnabel.

20

21  **IV.   Liberty Mutual Is Entitled to Recover Prejudgment**
22  **Interest on All Elements of Its Claim**

23

24  Under the provisions of Civil Code section 3287(a) a party is entitled to
25  recover prejudgment interest on any claim which involves "damages certain,
26  or capable of being made certain by calculation" so long as "the right to
27  recover is vested in him on a particular day. . . ."  In this case, Liberty Mutual
28  has the right to recover the specific sum of defense fees and costs incurred

15
**MOTION FOR SUMMARY JUDGMENT**

1 in the underlying litigation and the specific amount paid as supplementary
2 payments to the Gabbert plaintiffs. Liberty Mutual's right to recover those
3 amounts from defendant vested when the payments were made because, as
4 a matter of law, Liberty Mutual never had an obligation to defend Mr. Blatt in
5 the underlying litigation.

6

7 An insurer's right to recover prejudgment interest from another when
8 the carrier is determined to have no coverage for a claim is well-established.
9 For example, in Hartford Accident & Indemnity Co. v. Sequoia Ins. Co., 211
10 Cal.App.3d 1285, 260 Cal.Rptr. 190 (1989), Hartford was determined to have
11 a right to reimbursement for a portion of the settlement it paid in resolving
12 claims arising from a single-vehicle rollover accident. On appeal, the court
13 found that Hartford, as the primary and excess insurer of the vehicle, was
14 entitled to recover from both Sequoia, the permissive driver's primary carrier,
15 and Transamerica, the permissive driver's excess carrier. Hartford was also
16 awarded to prejudgment interest from each of the defendants.

17

18 Among other things, Transamerica argued that Hartford was not
19 entitled to recover interest because its claim and its corresponding right to
20 damages was unclear. The appellate court rejected this argument and
21 declared that "[w]hile Hartford's right to recover damages from Transamerica,
22 like Hartford's right to recover damages from Sequoia was in issue, the
23 amount of damages recoverable was 'certain, or capable of being made
24 certain by calculation' and was 'vested' in Hartford . . . the day Hartford
25 exhausted its primary policy limit and first paid out money under its umbrella
26 policy." 211 Cal.App.3d at 1307. The court also granted Hartford's claim to
27 interest even though the total amount of damages would have been different
28 depending on the how the trial court ordered the priority of the several

16

**MOTION FOR SUMMARY JUDGMENT**

1   policies.  It explained:

2

3           "Assuming Hartford was entitled to recover damages, the only
4           question remaining was how the trial court would prioritize the
5           policies.  In this respect, the court had only two options: (1) to
6           hold, as it did, that the Sequoia policy was second in order and
7           that the Hartford and Transamerica polices share the excess
8           liability on a prorata basis, or (2) that the Hartford umbrella policy
9           and the combine limits of the Sequoia and Transamerica policies
10          be prorated.  This was purely a question of law since the amount
11          of damages under either formula was reasonably ascertainable by
12          mathematical calculation.  Thus, the amount of damages was
13          never 'unliquidated' or 'contingent' but rather, only the legally
14          proper order of priority of the respective policies was uncertain.
15          Under these circumstances, Hartford is entitled to prejudgment
16          interest."  Id.

17

18          Likewise, in Shell Oil Co. v. National Union Fire Ins. Co., 44
19   Cal.App.4th 1633, 52 Cal.Rptr.2d 580 (1996), Shell was an additional insured
20   under a policy issued to one its contractors by National Union.  Shell was
21   awarded damages and prejudgment interest against the carrier when
22   National Union paid the entirety of its policy limits on behalf of its named
23   insured contractor to settle a suit filed against both that contractor and Shell.
24   Citing Hartford, the Shell court wrote:

25

26          "Here, Shell's alternative theories required only the court's legal
27          determination of which was appropriate; the amount of damages
28          would thereby be fixed.  The present case thus resembles

17
**MOTION FOR SUMMARY JUDGMENT**

1   Hartford . . . , in which the overall responsibility of an insurer was
2   in dispute, and the amount recoverable from it depended on how
3   the court assigned priorities among it and two other insurers.
4   There, as here, 'the amount of damages under either formula was
5   readily   ascertainable   by   mathematical   calculation.'"   44
6   Cal.App.4th at 1651.

7

8   In Highland Ins. Co. v. Continental Casualty Co., 64 F.3d 514 (9th Cir.
9   1995), the plaintiff excess carrier sought to recover all amounts it paid to
10  indemnify a mutual insured where the defendant primary carrier refused on
11  several occasions to accept an offer to settle the underlying case for an
12  amount within the primary carrier's limits of coverage.   The Ninth Circuit
13  agreed with the trial court that Highland was entitled to prejudgment interest
14  even though Continental had argued that there were questions of
15  comparative fault that affected Highland's right to recovery.

16

17      Based on this authority, Liberty Mutual is entitled to recover
18  prejudgment interest from defendant.  While Mr. Blatt may dispute Liberty
19  Mutual's *right* to reimbursement, the *amount* of damages is readily
20  ascertainable from the amounts paid by Liberty Mutual and the bills prepared
21  by his own defense counsel in the underlying case.  Liberty Mutual is entitled
22  to prejudgment interest on those amounts pursuant to section 3287.

23

24      The applicable rate of interest is 10 percent.   Civil Code section
25  3289(b) provides that "[i]f a contract entered into after January 1, 1986 does
26  not stipulate a legal rate of interest, the obligation shall bear interest at a rate
27  of 10 percent per annum after a breach."  The Liberty Mutual policy in this
28  case was issued for the period April 1997 to April 1998, so it falls within the

18

1   purview of section 3289(b).

2

3      In applying the rate of 10 percent, there is no doubt that this case
4   represents a type of contractual claim by Liberty Mutual against Mr. Blatt. In
5   Buss, the Supreme Court made clear that a carrier may seek reimbursement
6   of defense costs spent on uncovered claims because of "a right of
7   reimbursement that is implied in law as quasi-contractual, whether or not it
8   has one that is implied in fact in the policy as contractual."  16 Cal.4th at 51.
9   In a footnote in the opinion, the court is even clearer:

10

11      "That the insurer does not have a right of reimbursement express
12      in the policy does not mean that it does not have one implied in
13      law.  Rather, that it has an implied-in-law right helps explain why it
14      does not have an express-in-policy one.  The former renders the
15      latter unnecessary.  This is proved by the fact that, with an
16      implied-in-law right and without an express-in-policy one, insurers
17      have sought, and obtained, reimbursement – and have done so,
18      on the evidence of reported decisions, for more than a
19      decade. . . ." Id.

20

21      The right to reimbursement is implied in law into the contract.  This is
22   similar to the Buss court's decision that the obligation to defend, at least
23   initially, all parts of a "mixed" action against the insured is justified "as an
24   obligation imposed by law in support of the policy."  16 Cal.4th at 48-49.
25   Both the obligation to defend an entire mixed action, and the right to seek
26   reimbursement for uncovered claims, are implied into the contract under
27   concepts of equity.  But at root, these are implied into the *contract*; they are
28   not created from whole cloth.  As such, the provisions of section 3289

19

1   governing the rate of prejudgment interest in contract cases apply.

2

3       The same should be true in this case.  Liberty Mutual's right of
4   reimbursement is implied by law into the contract.  The scope of coverage
5   under the policy – which is the issue that determines in the first place
6   whether there is a duty to defend and indemnify – is a question of contract
7   interpretation.    Therefore, the contract remedy of prejudgment interest
8   applies.

9

10      Simple notions of fairness also compel this conclusion.  If the roles
11  were reversed, and Mr. Blatt were seeking benefits payable under the policy,
12  he would surely be seeking prejudgment interest at the statutory rate.  And
13  he would be entitled to such a recovery.  See, for example, California
14  Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal.App.3d 1, 33, 221 Cal.Rptr.
15  171 (1985);  Oil Base, Inc. v. Transport Indemnity Co., 148 Cal.App.2d 490,
16  492, 306 P.2d 924 (1957).

17

18      How would it be fair to deny Liberty Mutual a full recovery, including
19  prejudgment interest, when Mr. Blatt would be allowed to do so?    The
20  question answers itself.

21

22                              **CONCLUSION**

23

24      The jury verdict in the Gabbert action established that Liberty Mutual
25  never had an obligation to defend Mr. Blatt because Mr. Blatt's liability could
26  not have arisen out of the operations of Schnabel, Liberty Mutual's insured.
27  Because Liberty Mutual reserved its right to seek reimbursement from Mr.
28  Blatt, it is now entitled to recover the fees and costs incurred in defending Mr.

                                    20

1   Blatt against the Gabbert action, as wells as the fees and costs paid to the
2   underlying plaintiffs.  Liberty Mutual is also entitled to recover prejudgment
3   interest on those sums.  Plaintiff respectfully requests that the court enter
4   summary judgment in favor of Liberty Mutual and against Michael Blatt for
5   the total of $498,647.36 plus interest.

6

7        Solely in the alternative, Plaintiff asks the court to resolve in its favor
8   those issues outlined above:

9

10       1)   That the jury verdict in the in the Gabbert action established as a
11  matter of law that Liberty Mutual never had a duty to defend Mr. Blatt;

12

13       2)   Alternatively, that the jury verdict in the Gabbert action terminated
14  any duty to defend that Mr. Blatt that Liberty Mutual may have had;

15

16       3)     That Liberty Mutual is entitled to recover from Mr. Blatt the
17  $286,667.40 paid as attorney fees to the plaintiffs in the underlying litigation
18  after the jury verdict was returned;

19

20       4)     That Liberty Mutual is entitled to recover from Mr. Blatt the
21  $13,634.85 paid as costs of suit to the plaintiffs in the underlying litigation
22  after the jury verdict was returned;

23

24       5)  That Liberty Mutual is entitled to reimbursement from Defendant of
25  all of the $198,345.11 in fees and costs paid to defend Mr. Blatt in the
26  underlying litigation because the jury verdict in the underlying case
27  established as a matter of that Liberty Mutual never had an obligation to
28  defend Mr. Blatt;

**MOTION FOR SUMMARY JUDGMENT**

1    6)  That, in the alternative, is Liberty Mutual entitled to reimbursement
2  from Defendant of any fees and costs paid to defend Mr. Blatt in the
3  underlying litigation against claims not covered by the policy;

4

5    7)  That Liberty Mutual is entitled to reimbursement from Defendant of
6  any fees and costs paid to defend Mr. Blatt in the underlying litigation and
7  incurred after the jury verdict was returned;

8

9    8) That Liberty Mutual is entitled to prejudgment interest at the rate of
10  ten percent per annum on the $286,667.40 paid as attorney fees to the
11  plaintiffs in the underlying litigation?

12

13    9)  That Liberty Mutual is entitled to prejudgment interest at the rate of
14  ten percent per annum on the $13,634.85 paid as costs of suit to the plaintiffs
15  in the underlying litigation?

16

17    10)  That Liberty Mutual is entitled to prejudgment interest at the rate of
18  ten percent per annum on the $198,345.11 paid to defend Mr. Blatt in the
19  underlying litigation, or any portion of that amount recovered by Liberty
20  Mutual.

21

22  Dated:  September 21, 2007                KRING & CHUNG, LLP

23

24                                      By: _____
25                                           Ronald J. Skocypec
                                            J. Christopher Bennington
26                                           Attorneys for Plaintiff
                                            LIBERTY MUTUAL INSURANCE
27                                           COMPANY

28



22
**MOTION FOR SUMMARY JUDGMENT**

1 | Ronald J. Skocypec, Bar No. 72690
J. Christopher Bennington, Bar No. 105432
2 | KRING & CHUNG, LLP
920 Hampshire Road
3 | Suite A15
Westlake Village, CA 91361
4 | Telephone: (805) 494-3892
Facsimile: (805) 494-3914
5 |
Attorneys for Plaintiff
6 | LIBERTY MUTUAL INSURANCE COMPANY

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10 |

11 | LIBERTY MUTUAL INSURANCE ) Case No. C 06 2022 SC
COMPANY, )
12 | ) **DECLARATION OF J.**
Plaintiff, ) **CHRISTOPHER BENNINGTON**
13 | ) **SUBMITTED IN SUPPORT OF**
vs. ) **MOTION FOR SUMMARY**
14 | ) **JUDGMENT**
MICHAEL T. BLATT, )
15 | )
Defendant. )
16 | —————————————————— )

17 | J. Christopher Bennington declares:

18 |

19 |
20 | 1. I am an attorney licensed to practice before all of the courts of the
state of California. I am also admitted to the Northern District. I am
21 |
associated with the firm of Kring & Chung, counsel for Plaintiff Liberty Mutual
22 |
Insurance Company in the instant litigation. I could competently testify as to
23 |
the following matters if called upon to do so by the court.
24 |

25 |
2. Attached as Exhibit D to Liberty Mutual's Motion for Summary
26 |
Judgment is a true and correct copy of the complaint filed by plaintiffs in
27 |
Gabbert v. Blatt, Marin County Superior Court case CV 020477 ("Gabbert



**DECLARATION OF J. C. BENNINGTON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1 action").

2

3        3.    Attached as Exhibit E to Liberty Mutual's Motion for Summary
4  Judgment is a true and correct copy of the jury verdict form in the Gabbert
5  action.

6

7        4.    Attached as Exhibit F to Liberty Mutual's Motion for Summary
8  Judgment is a true and correct copy of the judgment in the Gabbert action.

9

10        I declare under penalty of perjury under the laws of the United States of
11  America that foregoing is true and correct.  Executed September 20, 2007 at
12  Westlake Village, California.

13

14

15                                                    _____

16                                                    J. Christopher Bennington

17

18

19

20

21

22

23

24

25

26

27

28



2

**DECLARATION OF J.C. BENNINGTON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1   Ronald J. Skocypec, Bar No. 72690
    J. Christopher Bennington, Bar No. 105432
2   KRING & CHUNG, LLP
    920 Hampshire Road
3   Suite A15
    Westlake Village, CA 91361
4   Telephone: (805) 494-3892
    Facsimile: (805) 494-3914
5
    Attorneys for Plaintiff
6   LIBERTY MUTUAL INSURANCE COMPANY

7

8                    **UNITED STATES DISTRICT COURT**

9      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

11  LIBERTY MUTUAL INSURANCE          )  Case No. C 06 2022 SC
    COMPANY,                          )
12                                    )  **DECLARATION OF MICHAEL**
              Plaintiff,              )  **BAKER**
13                                    )
         vs.                          )
14                                    )
    MICHAEL T. BLATT,                 )
15                                    )
              Defendant.              )
16  ——————————————————————  )

17

18        Michael Baker declares:

19

20        1. I am a senior technical claims specialist employed by Liberty Mutual

21  Insurance Company. In my position I am responsible for the current lawsuit.

22  I am also familiar with the facts of the underlying litigation Gabbert v. Blatt,

23  Marin County case number CV 020477 ("Gabbert action"). I have reviewed

24  the claims files and policy relevant to these matters, and I could competently

25  testify to the following facts.

26

27        2.   Liberty Mutual issued policy TB1-131-011670-397 to Schnabel

28  Foundation Company for the period April 1, 1997 to April 1, 1998 ("Schnabel



_____
**DECLARATION OF MICHAEL BAKER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1 policy"). A true and correct copy of the declaration pages for the Schnabel
2 policy is attached as Exhibit A.

3

4    3.   Liberty Mutual recognized Michael Blatt as an additional insured
5 under the terms of the Schnabel policy. Under endorsement LG 1005, the
6 policy provided coverage for additional insureds, but that coverage was
7 limited to "liability arising out of [Schnabel's] operations or premises owned
8 by or rented to [Schnabel]." A true and correct copy of the endorsement is
9 attached as Exhibit B.

10

11    4.   Mr. Blatt tendered his defense against the claims in the Gabbert
12 action to Liberty Mutual. Liberty Mutual agreed to defend Mr. Blatt subject to
13 a reservation of the company's rights. A reservation of rights letter was sent
14 to Mr. Blatt's counsel on or about September 4, 2002. A true and correct
15 copy of the reservation of rights letter is attached as Exhibit C. Among other
16 things, the letter includes the following specific reservation at page 5: "Our
17 defense obligation is triggered only by the allegations of 'property damage'
18 arising out of our named insured's work. We specifically reserve the right to
19 seek allocation and/or reimbursement of any defense costs not associated
20 with those allegations."

21

22    5.   The Gabbert action went to trial, and the jury found that Schnabel
23 was not liable to any party. Because Schnabel was not liable, Liberty Mutual
24 declined to pay the judgment against Mr. Blatt.

25

26    6.   Liberty Mutual did pay the award of attorneys fees and costs
27 ordered by the court in the Gabbert action. These fees and costs, which
28 totaled $300,302.25, were paid under the supplementary payments portion of

2

**DECLARATION OF MICHAEL BAKER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1 the Schnabel policy.   The supplementary payments portion of the policy
2 provides in pertinent part that: "We will pay, with respect to any claim we
3 investigate or settle, or any 'suit' against an insured we defend . . . all costs
4 taxed against the insured in the 'suit.'"

5

6     7.   Liberty Mutual also paid a total of $198,345.11 in direct fees and
7 costs to defend Mr. Blatt against the claims in the Gabbert action.

8

9     I declare under penalty of perjury under the laws of the United States of
10 America that foregoing is true and correct.  Executed September 20, 2007 at
11 Orange, California.

12

13

14 _____

15                               Michael Baker

16

17

18

19

20

21

22

23

24

25

26

27

28



3

1

## **PROOF OF SERVICE**

2 STATE OF CALIFORNIA, COUNTY OF ORANGE

3    I, the undersigned, am employed in the County of Orange, State of
California.  I am over the age of eighteen (18) years and not a party to the
4 within action.  My business address is 38 Corporate Park, Irvine, CA 92606-
5 5105.

6    On September 21, 2007, I served true copies of the foregoing
document(s) described as **MOTION FOR SUMMARY JUDGMENT OR, IN**
7 **THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES;**
**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF J.**
8 **CHRISTOPHER BENNINGTON DECLARATION OF MICHAEL BAKER** on
9 the interested parties in this action, addressed as follows:

10    Ronald D. Foreman, Esq.
Russell F. Brasso, Esq.
11    FOREMAN & BRASSO
930 Montgomery St., Suite 600
12    San Francisco, CA 94133
Tel.:  (415) 433-3475
13    Fax:  (415) 781-8030

14    ☒    BY E-MAIL:  By transmitting a true copy of the foregoing document(s)
15    to the e-mail addresses set forth above.

16    I declare under penalty of perjury under the laws of the State of
17 California that the foregoing is true and correct.

18    Executed on September 21, 2007, at Irvine, California.

19

20                                    _____
                                         MICHELLE BENNETT
21

22

23

24

25

26

27

28

1

Exhibit "A"

**LIBERTY MUTUAL INSURANCE COMPANY**

**LIBERTY MUTUAL.**
Liberty Mutual Insurance Group·Boston

**COMMERCIAL GENERAL LIABILITY DECLARATIONS**

| ACCOUNT | SUB-ACCT NO. |
|---|---|
| 01 16 70 | 0000 |

| POLICY NO. | TD/CD | SALES OFFICE | CODE | SALES REPRESENTATIVE | CODE | N/R | 1ST YR |
|---|---|---|---|---|---|---|---|
| TB1- 131-011670-397 | 33/9 | FAIRFAX | 307 | REBBECK | 6821 | 2 | 71 |

Item 1. Named Insured  SCHNABEL FOUNDATION COMPANY, EARTH SUPPORT SYSTEMS AND DULLES INDUSTRIES
45240 BUSINESS COURT, SUITE 250

Address  STERLING, VA 22170

The named insured is: ☐ Individual  ☐ Partnership  ☒ Corporation  ☐ Other

Business of named insured is:  FOUNDATION CONTRACTOR

Item 2. Policy Period From  Mo. 4  Day 1  Year 97  to  Mo. 4  Day 1  Year 98
12:01 A.M., standard time at the address of the named insured as stated herein.

Item 3. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**LIMITS OF INSURANCE**

| | |
|---|---|
| **Coverages A, B, C, - GENERAL AGGREGATE LIMIT**<br>**(Other Than Products - Completed Operations)** | $3,000,000 |
| Coverage A-PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| Coverage A-BODILY INJURY and PROPERTY DAMAGE LIABILITY | $1,500,000  per occurrence |
| Coverage A-FIRE LEGAL LIABILITY (subject to occurrence limit) | $ 50,000  per fire |
| Coverage C-MEDICAL PAYMENTS (subject to occurrence limit) | $ 5,000  per person |
| Coverage B-PERSONAL AND ADVERTISING INJURY | $1,500,000  per person/<br>per organization |

Deductible Endorsement Yes ☐  No ☒

TOTAL DEPOSIT PREMIUM  $  108,975

The premium for this policy is payable $          in advance, $          on first anniversary and $          on
the second anniversary.

Audit Basis: ☐ At Expiration  ☐ Annual  ☒ Semi Annual  ☐ Quarterly  ☐ Monthly  ☐ Flat Charge

The declarations are completed on the schedules designated Item 3 Declarations Extension Schedules

Forms and endorsements attached to this policy: CG C179, IL 0138, IL 0017, IL 0021, LG 3025, LG 3026,
LG 6080, IL 0921, 2280, LG 2057, CG 2243, CG 2404, CG 2243, IL 0161, CG 0104, CG 0109,
LG 1005, LG 6038, LG 6034, LG 6093, CG 2503, CG 0107, CG 0160, CG 0181, CG 9901, CG 0154,
IL 0126, CG 0186, IL 0926, IL 0128, IL 0910, IL 0165, CG 2621, CG 0163, CG 2605, IL 0286,
CG 2151, IL 0913, IL 0158, CG 0.08, 2322, 2319, CG 2620, CG 2011, CG 2010, CG 0001,
GPO 4078, END. NO'S. 10, 11, 12, 13, 14, 15
v. including all endorsements issued herewith, is hereby countersigned by_____

Authorized Representative

*1R25*

| PED PB | PERIODIC PAYMENT | RATING BASIS | AUDIT BASIS | HOME STATE | Pol HG | RENWAL OF |
|---|---|---|---|---|---|---|
| '19/97 | $ | ☐ R ☒ NR | 2 | VA | S- ☐ | TB1-396 |

Exhibit A - p. 12

Exhibit "B"

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - BLANKET**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an insured any person or organization for whom you have agreed in writing to provide Liability insurance, but only with respect to liability arising out of your operations or premises owned by or rented to you.

This insurance does not apply to any person or organization for whom you have procured separate liability insurance while such insurance is in effect, regardless of whether the scope of coverage or limits of insurance of this policy exceed those of such other insurance or whether such insurance is valid and collectible.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date          Expiration Date

For attachment to Policy or Bond No.

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

Barry S. Wilson          Edmund F. Kelly
SECRETARY                PRESIDENT

Countersigned by ...........................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.

LG 1005

Exhibit A - p. 72

Exhibit "C"



**LIBERTY MUTUAL.**

Liberty Mutual Group

P.O. Box 9118
Pleasanton, CA 94566
(925) 734-9200
(800) 676-6514
Fax:(925) 734-0916

September 4, 2002

Ronald Foreman
Foreman & Brasso
807 Montgomery Street
San Francisco, CA 94133

RE:    Gabbert v. Blatt
       Liberty Mutual Insured: Schnabel Foundation Co.
       Our File No.: P602-070876-01
       Our Insured Job No.: 9-2476, 435-445 & 476 Bridgeway, Sausalito, CA

Dear Mr. Foreman:

This responds to your firm's letters to us in which you tendered the defense and
indemnity of your client, Michael Blatt, as an additional insured under our policy for
Schnabel Foundation Co., in the above action.

We have reviewed the subcontract and the certificates of insurance that you provided,
and because the correspondence in this case can be read as alleging "property damage"
to which our policy would potentially apply, we will agree to share in the defense of
Michael Blatt, together with all other carriers with potentially applicable coverage, as an
additional insured for the period of 4/1/97 to 4/1/98.
Liberty Mutual will share in the defense and indemnity of Michael Blatt in this action,
pursuant to the terms and conditions set forth below.

We will pay for any defense costs and expenses as they relate to the defense of work
performed on behalf of our named insured only. We will not pay for any other work,
or time spent by your firm on behalf of any other subcontractor. We will pay for
defense costs and expenses from the date of tender. We will pay $125.00 per hour for
attorney fees and $65.00 per hour for paralegal work. This is in accordance with Civil
Code Section 2860, Section C (2). If any other insurance carrier for Schnabel Foundation
Co. also agrees to participate in the defense, we will share Schnabel Foundation's
proportionate share with the co-carriers.
We will only pay for property damage to other property arising out of the named
insured's work.

**Helping People Live Safer, More Secure Lives**

Please advise as to the following:

1) Does your client have their own insurance that would also apply to this loss?

2) Is your client entitled to contractual indemnity from any other subcontractors?

3) Have you tendered your client's defense and indemnity to any other carriers on behalf of our named insured, Schnabel Foundation Co. ?

4) Please provide us with your proposed cost sharing allocation, a copy of your fees and costs to date, and your estimated future fees and costs.

Please allow this to clarify our position with regard to your policy coverage concerning this lawsuit. Your policy does not provide coverage for your work or your product, fraud, breach of contract, failure to perform; nor does it provide coverage for damages which occur outside your policy period with Liberty Mutual.
This insurance applies only to bodily injury or property damage which occurs during the policy period. The bodily injury or property damage must be caused by an occurrence.

Please note the applicable parts of the insuring agreement. They read as follows:

Section 1 - Coverage's

Coverage a. Bodily injury and property damage liability.

1.   Insuring agreement

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any occurrence and settle any claim or suit that may result but:

(1)   The amount we will pay for damages is limited as described in Section 3 Limits of insurance; and
(2)   Our right and duty to defend when we have used up the applicable limits of insurance in the payment of judgements or settlements under coverage's A or B or medical expenses under coverage C.

Your policy defines "occurrence" as ;

"An accident including continuous and repeated exposure to substantially the same general harmful conditions."

Additionally, the policy specifically excludes the following:

This insurance does not apply to:

(k)  "Property damage" to "your product" arising out of it or any part of it.

(l)  Property damage to "your work" arising out of it or any part of it included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or work out of which the damage arises was performed on your behalf by a subcontractor.

(m)  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defective, deficiency inadequacy or dangerous condition in "your product" or "your work"; or.

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of the other property arising out of sudden or accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(n)  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdraw, recall, inspection, repair, replacement, adjustment, removal or disposal of;

(1)  "Your product"
(2)  "Your work" or
(3)  "Impaired property";

if such product, work, or properties withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The policy defines "property damage" to mean:

(a)  Physical injury to tangible property, including all resulting loss of use

of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b)   Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

The policy defines "your product" to mean:

(a)   Any goods or products, other then real property, manufactured, sold, handled, distributed or disposed of by:

(1)   You;
(2)   Others trading under your name; or
(3)   A person or organization whose business or assets you have required; and

(b)   Containers  (other then vehicles),  materials, parts, or equipment furnished in connection with such goods or products.

"Your product" includes warranties or representations made at anytime with respect to the fitness, quality, durability, performance or use of "your product"; and the providing of or failure to provide warnings or instructions.


The policy defines "your work" to mean:

(a)   Work or operations performed by you or on your behalf; and

(b)   Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at anytime with respect to the fitness, quality, durability, performance or use of "your work"; and the providing of or failure to provide warnings or instructions.

The policy defines "impaired property" to mean tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

(a)   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

(b)   You have failed to fulfill the terms of the contract or agreement;

If such property can be restored to use by:

(a)   The repair, replacement, adjustment or removal of "your product" or "your work"; or

(b)   Your fulfilling the terms of the contract or agreement.

Your policy includes coverage for damages because of "bodily injury," defined as "bodily injury, sickness or disease sustained by a person, including death resulting fr any of these at any time."

Your policy excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

Based upon the insuring agreement, the exclusions and the definitions, the coverage indemnification available to you is for consequential damage to the plaintiff's property and bodily injury as defined in your policy and caused by an occurrence. You do not have coverage for repair or replacement of your work or yo work product. Further, with exceptions of certain assumptions of liability under "insured contract" defined in your policy, there is no coverage for damages claimed result of breach of contract.

In the above mentioned action the plaintiffs make a claim for punitive damages. Liberty Mutual policies do have coverage for such damages; however, the state of California, in the case of City Product Corporation vs Globe Indemnity (88 Cal App 31, 151 Cal. Rptr 494 [1979] expresses a public policy that precludes an insurance company from paying punitive damages awards.
Therefore, Liberty Mutual's policy would not provide coverage for this type of dam You may wish to retain separate counsel to represent your interests against punitiv damages.

We may withdraw our defense of this case if it is determined that the damages in question are not covered under the terms of our policy and if the evidence conclud that damages as they relate to the insured's work occurred outside your coverage period with Liberty Mutual.

Our defense obligation is triggered only by allegations of "property damage" arisi out of our named insured's work. We specifically reserve the right to seek allocati and/or reimbursement of any defense costs not associated with those allegations.

Should you have any questions regarding our position please do not hesitate to call me at the above number.

Sincerely,
LIBERTY MUTUAL INSURANCE CO.


Michael Barnette
Sr. Technical Claims Specialist


cc  Ronald Chapman – Schnabel Foundation Co.

Exhibit "D"

1   Alexander Anolik, Esq., State Bar No. 042685
    Jordan A. Lavinsky, Esq., State Bar No. 192215
2   Alexander Anolik, A Professional Law Corporation
    2107 Van Ness Avenue, Suite 200
3   San Francisco, Ca 94109-2536
    Telephone: (415) 673-3333
4   Facsimile: (415) 673-3548

5   Attorneys for Plaintiffs:
    JAMES GABBERT AND
6   MICHAEL LINCOLN

**FILED**

JAN 2 9 2002

JOHN P. MONTGOMERY,
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: S. McConnell, Deputy

7

8                    IN THE MARIN COUNTY SUPERIOR COURT

9                       FOR THE STATE OF CALIFORNIA

9   JAMES GABBERT AND MICHAEL        )  Case No. CV 020477
10  LINCOLN,                          )
                                      )  **COMPLAINT FOR BREACH OF**
11          Plaintiffs,               )  **CONTRACT, NEGLIGENCE, FRAUD,**
                                      )  **NEGLIGENT MISREPRESENTATION,**
12      vs.                           )  **CONCEALMENT OF MATERIAL**
                                      )  **FACTS AND BREACH**
13  MICHAEL BLATT, CATHERINE BLATT,   )
    PETER KANE AND DOES 1 to 100,     )
14  inclusive,                        )
                                      )
15          Defendants.               )
                                      )
16                                    )

17  PLAINTIFFS allege:

18                       GENERAL ALLEGATIONS

19      1.    Plaintiff James Gabbert and Plaintiff Michael Lincoln (collectively referred to

20  herein as "plaintiffs") reside in Marin County.

21      2.    Defendants Michael Blatt and Catherine Blatt, husband and wife (hereinafter

22  referred to as the "Blatt Defendants") also reside in Marin County.

23      3.    Defendant Peter Kane (hereinafter "Defendant Kane") is a resident of Marin

24  County. Plaintiffs believe that Defendant Kane is a real estate agent licensed to engage in the

25                                     1

26  **COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD,**
    **NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS**
    **AND BREACH**

1   sale of real estate in the State of California.  On information and belief, plaintiffs allege that

2   Defendant Kane represented the Blatt Defendants and himself (collectively referred to herein as

3   "defendants") in the ownership, development and sale of the Property at issue in this action.

4       4.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein

5   as DOES 1to 100, inclusive, and therefore sues these defendants by such fictitious names.

6   Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

7   Plaintiffs are informed, believe and thereon allege that at all times herein mentioned, each of

8   the defendants was the agent and/or employee of each of the remaining defendants, and in

9   doing the things hereinafter alleged, was acting in course and scope of such agency and

10  employment.

11          FIRST CAUSE OF ACTION - BREACH OF CONTRACT

12              (Against Blatt Defendants and Does 1 to 100)

13      5.    Plaintiffs re-allege and incorporate each of the allegations set forth in the above

14  paragraphs 1 through 4, inclusive.

15      6.    On or about September 1998, plaintiffs and the Blatt Defendants entered into a

16  written Residential Purchase Agreement (hereinafter "Purchase Agreement") for the purchase

17  of newly constructed property located at 435 and 445 Bridgeway Avenue, Sausalito, California

18  (hereinafter, the "Property").  The Purchase Agreement is attached hereto as Exhibit "A".

19      7.    Pursuant to the terms of the Purchase Agreement, specifically, inter alia,

20  paragraph 3 of the Revised Addendum Number Two, the Blatt Defendants promised to deliver

21  to plaintiffs the Property constructed according to the Blatt Defendants' original structural and

22  engineering plans, except with regard to particular changes agreed to by the parties.

23  Furthermore, the Blatt Defendants agreed to disclose all material defects in the Property as

24

25                          2

26      COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD,
     NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS
                          AND BREACH

1 required by law and the Blatt defendants promised to deliver the Property in compliance with

2 applicable building and safety codes. .

3     8.    In exchange for the Blatt Defendants' promise to deliver the Property as

4 originally designed, plaintiffs agreed to pay, and did in fact pay the agreed upon purchase price.

5     9.    Plaintiffs performed all other conditions and agreements required of them by the

6 terms of the Purchase Agreement.

7     10.    The Blatt Defendants unreasonably and unjustifiably breached the Purchase

8 Agreement by failing to deliver to plaintiffs the Property in accordance with the original

9 structural and engineering plans. In fact, the Property that the Blatt Defendants delivered not

10 only failed to conform to the Blatt Defendants' original plans, but the Property was in a

11 condition such that it was unsuitable for the residential occupation for which the Property was

12 intended. Furthermore, bringing the Property into compliance with the original structural and

13 engineering plans and in compliance with applicable building and safety codes, required

14 reducing the Property to such a state of disrepair that the Property has been unsuitable for

15 occupation. The Blatt Defendants also breached the Purchase Agreement by failing to disclose

16 material defects as required by law.

17     11.    Among the defects are the following: required hold-downs were missing from

18 the elevator shaft as was required shear wall; walls were missing sill plate and were not built to

19 plan; steel beaming used that failed to comply with design plans; through bolts were missing as

20 was wood beam packing; steel beams were not correctly packed; welded bolts were used

21 instead of through bolts; hold-down straps for shear to beam attachment missing; excess

22 plywood packing causing "speedbumps"; missing beam bolts; improper stair risers; shear walls

23 incorrectly connected to joist blocking; garage walls not built to plans but built too low; no

24 foundations installed as required in plans; tie downs incorrectly installed; missing deck

3

25

26 **COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD, NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS AND BREACH**

Exhibit B - p. 100

1  flashing; missing ceiling vents; roof showed signs of failure; improper number of roof drains;

2  vapor barriers missing; insufficient drainage because of the lack of exit routes; stair cases did

3  not meet code requirements; fire sprinkler system failed to meet code.

4      12.    Plaintiffs demanded that the Blatt Defendants remedy the damages as set forth

5  herein, however, defendants have failed and refused to perform the work necessary to remedy

6  all the defects.

7      13.    As a direct and proximate result of the Blatt Defendants' breach of the Purchase

8  Agreement, plaintiffs have been injured to an extent exceeding the cost of bringing the Property

9  into compliance with the Blatt Defendants' original structural and engineering plans and in

10  compliance with applicable building and safety codes, and otherwise placing plaintiffs in a

11  position as if the Blatt defendants had never breached the Purchase Agreement as set forth

12  herein.  To the extent that plaintiffs are unable to bring the Property into compliance with the

13  Blatt Defendants' original structural and engineering plan and in compliance with applicable

14  building and safety codes, plaintiffs have been injured by virtue of the Blatt Defendants'

15  devaluation of the Property.  Furthermore, plaintiffs have been injured by virtue of the Blatt

16  Defendants' interference with plaintiffs' fair use and enjoyment of the Property to which

17  plaintiffs are entitled.

18      14.    WHEREFORE, plaintiffs pray for relief as set forth below.

19              SECOND CAUSE OF ACTION – NEGLIGENCE

20                    (Against All Defendants and Does 1 to 100)

21      15.    Plaintiffs re-allege and incorporate each of the allegations set forth in the above

22  paragraphs 1 through 14, inclusive.

23      16.    By virtue of the Purchase Agreement, defendants owed plaintiffs a duty to

24  proceed with ordinary care in constructing the Property, which plaintiffs agreed to buy.

                                    4

25  _____

26  COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD,
    NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS
    AND BREACH

Exhibit  B - p. 101

1  Furthermore, by virtue of the law of the State of California, defendants had a duty to disclose

2  all material defects in the Property.

3      17.    On or about September 1998, defendants negligently, and with lack of ordinary

4  care, constructed houses for plaintiffs such that, among other things, water penetrated the

5  Property, the Property failed to comply with applicable building and safety codes, the Property

6  was not properly ventilated, and the Property was not structurally sound.  Furthermore,

7  defendants so negligently constructed the Property that, in order for necessary repairs to be

8  made, the Property had to be reduced to a state of disrepair, unsuitable for residential

9  occupation.  Defendants also negligently and carelessly selected and engaged contractors and

10  subcontractors and others to perform portions of the work on the Property.  Furthermore,

11  defendants negligently failed to disclose material defects in the Property, as required by law.

12      18.    Plaintiffs are informed and believe and thereon allege that defendants

13  negligently hired, supervised and employed persons, individuals or entities, including

14  contractors and subcontractors, to perform work on the Property in that defendants knew, or in

15  the exercise of reasonable diligence should have known, that the persons, individuals or entities

16  were incompetent and unfit to perform the duties for which they were employed, and that an

17  undue risk to the lives and property of persons like plaintiffs would exist as a result.

18      19.    Despite defendants' knowledge that the persons, individuals or entities were not

19  qualified or able to perform the tasks of their employment competently and properly,

20  defendants did not adequately supervise those persons, individuals or entities in the

21  performance of their tasks.

22      20.    As a direct and proximate result of defendants' negligence, plaintiffs were

23  damaged as set forth herein.

24      21.    WHEREFORE, plaintiffs pray for relief as set forth below.

5

25

26  COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD,
NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS
AND BREACH

# THIRD CAUSE OF ACTION – FRAUD

### (Against All Defendants and Does 1 to 100)

22. Plaintiffs re-allege and incorporate each of the allegations set forth in the above paragraphs 1 through 21, inclusive.

23. On or about September 1998, defendants represented to plaintiffs that defendants would sell to plaintiffs the Property that complied with the original structural and engineering design and that said Property would be suitable for residential occupation and was in compliance with all applicable building and safety codes. Defendants further implied that the Property was free of any defects requiring disclosure.

24. However, defendants' representations were false in that the Property did not in fact comply with the Blatt Defendants' original design, was not suitable for residential occupation, was not in compliance with applicable building and safety codes and had concealed defects that should have been disclosed and which were known or should have been known to defendants. For example, defendants were aware of a supposedly external ventilation that ended internally creating serious health risks and nuisance problems, yet failed to disclose this defect to Plaintiffs'. Also, defendants were aware that the stairs failed to meet building and safety code requirements yet failed to disclose that fact to plaintiffs.

25. Defendants knew of the falsity of their representations and/or made such statements with reckless disregard for the truth.

26. Defendants made such statements with the intent and knowledge that plaintiffs would rely upon them.

27. Plaintiffs did in fact reasonably and justifiably rely upon defendants' false representations in that reasonable investigation would not have revealed the falsity of

6

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD, NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS AND BREACH

1    defendants' representations. Plaintiffs did not have reasonable access to the truth of the matters

2    stated by defendants.

3        28.    Plaintiffs' reliance on defendants' false statements was detrimental to plaintiffs'

4    interest because instead of purchasing newly constructed residential property build in

5    compliance with the original and intended structural and engineering design and suitable for

6    residential occupation, plaintiffs received the Property, which failed to comply with the Blatt

7    Defendants' structural and engineering plans and applicable building and safety codes, and

8    which was unsuitable for residential occupation. Furthermore, plaintiffs received property,

9    which, as a result of the defects discussed herein, was of much less value than reasonably

10   expected. Finally, the Property that plaintiffs received required substantial remedial work.

11   Plaintiffs would not have purchased the Property had they been aware of the truth.

12       29.    As a direct and proximate result of the fraudulent conduct of defendants as

13   herein alleged, plaintiffs were damaged as set forth in this complaint.

14       30.    Defendants' conduct was knowingly fraudulent and with reckless disregard for

15   the truth in that defendants observed and/or were specifically informed of the above alleged

16   defects. Defendants' conduct was intentional, oppressive, malicious and in bad faith, thereby

17   justifying the award of punitive damages.

18       31.    WHEREFORE, plaintiffs pray for relief as set forth below.

19       FOURTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

20                  (Against All Defendants and Does 1 to 100)

21       32.    Plaintiffs re-allege and incorporate each of the allegations set forth in the above

22   paragraphs 1 through 31, inclusive.

23       33.    On or about September 1998, defendants represented to plaintiffs that

24   defendants would sell to plaintiffs the Property in compliance with the original structural and

25                                       7

26   **COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD, NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS AND BREACH**

Exhibit B - p. 104

1    engineering design and that said property would be suitable for residential occupation and was

2    in compliance with all applicable building and safety codes. Defendants further represented

3    that the Property was free of any defects requiring disclosure.

4         34.    However, defendants' representations were false in that the Property did not in

5    fact comply with the original structural and engineering plans, was not suitable for residential

6    occupation, was not in compliance with applicable building and safety codes, and had defects

7    requiring disclosure.

8         35.    Defendants knew of the falsity of their representations and/or made such

9    statements with reckless disregard for the truth.

10        36.    Defendants made these representations with the intention of inducing plaintiffs

11   to act in reliance on these representations in the manner alleged in this compliant, or with the

12   expectation that plaintiffs would so act.

13        37.    At the time defendants made these representations and at the time plaintiffs took

14   the actions alleged in this complaint, plaintiffs were ignorant of the falsity of defendants'

15   representations and believed them to be true.

16        38.    In reliance on these representations, plaintiffs were induced to and did, among

17   other things, purchase the Property.

18        39.    Had plaintiffs known the actual facts, plaintiffs would not have so acted.

19        40.    Plaintiffs' reliance on defendants' representations was justified because

20   reasonable investigation would not have revealed the falsity of defendants' representations.

21   Furthermore, plaintiffs did not have reasonable access to the truth of the matters stated by

22   defendants.

23        41.    As a direct and proximate result of the fraudulent conduct of defendants as

24   herein alleged, plaintiffs were damaged as set forth in this complaint.

8

25

26   COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD,
     NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS
     AND BREACH

42.    Defendants' conduct was knowingly fraudulent and with reckless disregard for the truth. Defendants' conduct was intentional, oppressive, malicious and in bad faith, thereby justifying the award of punitive damages.

43.    WHEREFORE, plaintiffs pray for relief as set forth below.

### FIFTH CAUSE OF ACTION – SUPPRESSION AND CONCEALMENT OF FACTS

(Against All Defendants and Does 1 to 100)

44.    Plaintiffs re-allege and incorporate each of the allegations set forth in the above paragraphs 1 through 43, inclusive.

45.    Defendants had a duty to disclose known facts to the plaintiffs concerning, among other things, defects in the Property that defendants built for and sold to plaintiffs.

46.    At the time the parties entered into the purchase agreement and at all times thereafter, defendants failed to disclose known facts concerning, among other things, material defects in the property.

47.    As a direct and proximate result of defendants' suppression of facts and the facts alleged, plaintiffs were damaged as set forth in this complaint.

48.    WHEREFORE, plaintiffs pray for relief as set forth below.

### SIXTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY

(Against All Defendants and Does 1 to 100)

49.    Plaintiffs re-allege and incorporate each of the allegations set forth in the above paragraphs 1 through 48, inclusive.

50.    On or about September 1998, defendants constructed and sold to plaintiffs the Property as alleged herein.

51.    Defendants implicitly warranted that the Property was built according to the original structural and engineering plans and was constructed in a reasonably skillful and

9

**COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD, NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS AND BREACH**

1   workmanlike manner, so as to be reasonably fit for its intended purpose.  Defendants further

2   represented that the Property was free from any defects requiring disclosure.

3        52.    Plaintiffs relied on the warranty and believed in good faith that the house was fit

4   for its purpose as a home and was free of defects.

5        53.    Defendants breached the implied warranty in that the Property was constructed

6   with material defects, including those set forth above.

7        54.    Defendants' breach of implied warranty has caused plaintiffs substantial

8   damages including the cost of repair, depreciation in value, loss of use and enjoyment and loss

9   of peace of mind.

10       55.    Plaintiffs gave defendants notice of their breach of warranty within a reasonable

11  time after discovering the breach and before filing this complaint.  However, defendants have

12  failed to remedy the numerous problems that have resulting from defendants' breach.

13       56.    As a proximate result of the breach of warranty by defendants, plaintiffs have

14  been damaged as set forth in this complaint.

15       57.    WHEREFORE, plaintiffs pray for relief as set forth below.

16                              PRAYER FOR RELIEF

17  WHEREFORE, plaintiffs pray for relief as follows:

18       1.     For general damages in excess of one million dollars;

19       2.     For special damages in excess of one million dollars;

20       3.     For punitive and exemplary damages in the amount of one million dollars;

21       4.     For costs of suit incurred;

22       5.     For attorneys' fees according to proof; and

23  ///

24                                      10

25

26  COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD,
    NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS
                            AND BREACH

6.     For such other and further relief as the court may deem just and proper.

Dated: January 21, 2002

ALEXANDER ANOLIK,
A Professional Law Corporation

By: _____

ALEXANDER ANOLIK, Esq.
Attorney for Plaintiffs
James Gabbert and Michael Lincoln

11

**COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD,
NEGLIGENT MISREPRESENTATION, CONCEALMENT OF MATERIAL FACTS
AND BREACH**

Exhibit B - p. 108

Exhibit "E"

07/19/2006 14:39 415781 1 GGL3 PAGE 05/43

FILED

## MARIN COUNTY SUPERIOR COURT
### State of California
P. O. BOX 4988
San Rafael, CA 94913-4988

FEB 27 2004

JOHN P. MONTGOMERY,
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: J. Mirkovasi, Deputy

PLAINTIFF(S):

JAMES GABBERT AND MICHAEL LINCOLN

vs

DEFENDANT(S):

MICHAEL BLATT AND CATHERINE BLATT

CASE NO. CV 020477

### JUDGMENT ON VERDICT IN OPEN COURT

This cause came on regularly for trial on  FEBRUARY 11, 13, 17, 18, 19, 20, 24, 25, 26, and 27, 2004

ALEXANDER ANOLIK, JOHN CROSSFIELD AND ALEXANDER PEVZNER appearing as counsel for the plaintiff(s), and RONALD FOREMAN AND JACQUELINE HAMILTON. JOSEPH appearing for the defendant(s). A jury of RYAN FOR CRDF-SCHNABEL FOUNDATION COMPANY 12  persons was duly accepted, impaneled, and sworn to try the case. Witnesses were sworn and examined.

After hearing the evidence, the arguments of counsel, and instructions of the court, the cause was submitted to the jury, and the jury retired to deliberate. The jury subsequently returned into court, and rendered the following verdict:

### See attached verdicts

IT IS ORDERED THAT the judgment be entered accordingly.

Judgment entered on   2  /  27  /  2004

I certify the attached to be a correct copy of the judgment entered in the above-entitled action.

Executed at San Rafael, California

_____ / _____ / _____

JOHN P. MONTGOMERY
Court Executive Officer

By _____
                    Deputy

310-230 Rev. 5/99

EXHIBIT 5 p. 4

FILED

FEB 27 2004

JOHN P. MONTGOMERY,
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: J. Minkowicz, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MARIN – UNLIMITED JURISDICTION

| | |
|---|---|
| JAMES GABBERT AND MICHAEL LINCOLN, | CASE NO. CV 020477 |
| Plaintiffs, | |
| v. | |
| MICHAEL BLATT, CATHERINE BLATT, | **SPECIAL VERDICT** |
| Defendants. | |
| | |
| MICHAEL BLATT AND CATHERINE BLATT, | |
| Cross-complainants, | |
| v. | |
| JAMES GABBERT, MICHAEL LINCOLN, AND SCHNABEL FOUNDATION COMPANY, | Trial Date: February 6, 2004<br>Time: 9:00 a.m.<br>Dept.: L |
| Cross-defendants. | |

SPECIAL VERDICT

- 1 -

EXHIBIT 5 p.5

1    We, the jury in the above-entitled action, find the following special verdict on the

2  questions submitted to us:

3    **Plaintiffs James Gabbert and Michael Lincoln's Cause of Action For Breach of**

4    **Written Contract**

5    Question No.1:  Did Michael and Catherine Blatt breach the written real estate

6  purchase agreement?

7  Answer "yes" or "no".

8  Answer:                    Jes          11 - 1

9  If you answer Question No. 1 "no", then answer Question No. 6. If you answer Question

10  No. 1 "yes", then answer Question No. 2.

11    Question No. 2:  Did Michael and Catherine Blatt's breach of the written real

12  estate purchase agreement cause damages to James Gabbert and Michael Lincoln?

13  Answer "yes" or "no".

14  Answer:        Yes        11 —

15  If you answer Question No. 2 "no", then answer Question No. 6. If you answer Question

16  No. 2 "yes", then answer Question No. 3.

17    Question No. 3: What do you find to be the total amount of damages suffered by

18  James Gabbert and Michael Lincoln that were caused by Michael and Catherine Blatt's

19  breach of the written real estate purchase agreement?

20·  Answer:    $  1              12 - 0

21    Answer question No. 4.

22    Question No. 4:  Were any of these damages caused by the work of Schnabel

23  Foundation?    No          11 - 0 - 1

24    If you answer question No. 4 "no", go to question No. 6.  If you answer question

25  No. 4 "yes", go to question No. 5 and answer question No. 33.

26  \\\

27  \\\

28

SPECIAL VERDICT                - 2 -

EXHIBIT 5 p.6

1     **Question No. 5:** If you have answered question No. 4 "yes", what is the amount of

2 damages caused by the work of Schnabel Foundation?

3 Answer:     $_____

4      Answer question No. 6.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SPECIAL VERDICT           - 3 -

EXHIBIT 5 p. 7

1 **Plaintiffs James Gabbert and Michael Lincoln's Cause of Action for Negligence**

2     Question No. 6: Were Michael and Catherine Blatt negligent? Answer "yes" or

3 "no".

4 Answer:    Yes 10-1-to-t 11-1

5     If you answer Question No. 6 "no", go to Question No. 14. If you answer Question

6 No. 6 "yes", then answer Question No. 7.

7     Question No. 7: Was Michael and Catherine Blatt's negligence a cause of damage

8 to James Gabbert and Michael Lincoln? Answer "yes" or "no".

9 Answer:    12-0   yes

10     If you answer Question No. 7 "no", go to Question No. 14. If you answer Question

11 No. 7 "yes", then answer Question No. 8.

12     Question No. 8: Without taking into consideration the effect on damages due to the

13 negligence of James Gabbert and Michael Lincoln or others, if any, what do you find to be

14 the total amount of damages suffered by James Gabbert and Michael Lincoln and caused

15 by the negligence of Michael and Catherine Blatt? (388,259)

                                                             379,883

16 Answer: $   808,375   388,000      ( 91,509 )

17                        12-0

    If you answer Question No. 8 "none", go to Question No. 14. If you answer

18 Question No. 8 with an amount of money, answer Question No. 9.

19

20     Question No. 9: Were any of these damages caused by the work of Schnabel

21 Foundation?    NO   12-0

22     If you answer question No. 9 "no", go to question No. 11. If you answer question

23 No. 9 "yes", go to question No. 10 and answer question No. 33.

24     Question No. 10: If you have answered question No. 9 "yes", what is the amount

25 of damages caused by the work of Schnabel Foundation?

26 Answer:    $ _____

27     Answer Question No. 11. Non Nano

28

SPECIAL VERDICT

                 - 4 -

EXHIBIT 5 p.8

1     **Question No. 11:** Were James Gabbert and Michael Lincoln negligent? Answer

2 "yes" or "no".

3 Answer:     Yes   12 - 0

4     If you answer Question No. 11 "no", do not answer Question No. 12. Instead,

5 proceed directly to Question No. 14.  If you answer Question No. 11 "yes", then answer

6 Question No. 12.

7     **Question No. 12:** Was the negligence of James Gabbert and Michael Lincoln

8 damage to themselves? Answer "yes" or "no".

9 Answer:     Yes   12 - 0

10     If you answer Question No. 12 "no", do not answer Question No. 13. Instead,

11 proceed directly to Question No. 14.  If you answer Question No. 12 "yes", then answer

12 Question No. 13.

13

14     **Question No. 13:** If 100% represents the total negligence that was the cause of the

15 James Gabbert and Michael Lincoln damage, what percentage of this 100% is due to the

16 contributory negligence of James Gabbert and Michael Lincoln?

17 Answer:     To plaintiffs: ____10____ %   12 - 0

18 Answer question No. 14.

19

20

21

22

23

24

25

26

27

28

SPECIAL VERDICT

- 5 -

EXHIBIT 5 p.9

1   Plaintiffs James Gabbert and Michael Lincoln's Cause of Action For Fraud

2       Question No. 14: Did Michael Blatt conceal or suppress a material fact?

3   Answer "yes" or "no".

4   Answer:         No ~~To 2~~ 11-(

5       If you answer Question No. 14 "no", then answer Question No. 20. If you answer

6   Question No. 14 "yes", then answer Question No. 15.

7       Question No. 15: Did Michael Blatt intentionally conceal or suppress the fact with

8   the intent to defraud James Gabbert and Michael Lincoln?

9   Answer "yes" or "no".

10  Answer:

11      If you answer Question No. 15 "no", answer Question No. 20. If you answer

12  Question No. 15 "yes", then answer Question No. 16.

13      Question No. 16: Were James Gabbert and Michael Lincoln aware of the fact at

14  the time they acted?

15  Answer "yes" or "no".

16  Answer:

17      If you answer Question No. 16 "yes", answer Question No. 20. If you answer

18  Question No. 16 "no", then answer Question No. 17.

19      Question No. 17: Would James Gabbert and Michael Lincoln have acted in the

20  way they acted if they had known of the concealed or suppressed fact?

21  Answer "yes" or "no".

22  Answer:

23      If you answer Question No. 17 "yes", go to Question No. 20. If you answer

24  Question No. 17 "no", then answer Question No. 18.

25  \\\

26  \\\

27  \\\

28  _____

SPECIAL VERDICT                    - 6 -

EXHIBIT 5 p.10

1       Question No. 18: Did Michael Blatt's concealment or suppression of the fact cause

2 James Gabbert and Michael Lincoln damage?

3 Answer "yes" or "no".

4 Answer:

5       If you answer Question No. 14 "no", go to Question No. 20. If you answer Question

6 No. 18 "yes", then answer Question No. 19.

7       Question No. 19: What is the total amount of all damage that was suffered by

8 James Gabbert and Michael Lincoln that was caused by the concealment or suppression of

9 the fact?

10 Answer:     $_____

11 Answer Question No. 20.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SPECIAL VERDICT

- 7 -

EXHIBIT 5 p. 11

1    **Plaintiffs Cause of Action For Negligent Misrepresentation**

2    Question No. 20: Did Michael Blatt represent to James Gabbert and Michael

3    Lincoln that an important fact was true?

4    Answer "yes" or "no".

5    Answer: _Yes 11-1_

6        If you answer Question No. 20 "yes", answer Question No. 21.  If you answer

7    Question No. 20 "no", then answer Question No. 30.

8        Question No. 21: Was Michael Blatt's representation not true?

9    Answer "yes" or "no".

10   Answer: _Yes 11-1_

11       If you answer Question No. 21 "yes", answer Question No. 22. If you answer

12   Question No. 21 "no", then answer Question No. 30.

13       Question No. 22: Did Michael Blatt have no reasonable grounds for believing the

14   representation was true when he made it?

15   Answer "yes" or "no".  _No 12-0_

16   Answer:

17       If you answer Question No. 22 "yes", answer Question No. 23. If you answer

18   Question No. 22 "no", then answer Question No. 30.

19       Question No. 23: Did Michael Blatt intend that James Gabbert and Michael

20   Lincoln rely on this representation?

21   Answer "yes" or "no".

22   Answer:

23       If you answer Question No. 23 "yes", answer Question No. 24. If you answer

24   Question No. 23 "no", then answer Question No. 30.

25   \\\

26   \\\

27   \\\

28

SPECIAL VERDICT          - 8 -

EXHIBIT 5 p.12

1          **Question No. 24:** Did James Gabbert and Michael Lincoln reasonably rely on

2    Michael Blatt's representation?

3    Answer "yes" or "no".

4    Answer:

5          If you answer Question No. 24 "yes", answer Question No. 25. If you answer

6    Question No. 24 "no", then answer Question No. 30.

7          **Question No. 25:** Were James Gabbert and Michael Lincoln damaged as a result of

8    relying on the representation of fact?

9    Answer "yes" or "no".

10    Answer:

11          If you answer Question No. 25 "yes", answer Question No. 26. If you answer

12    Question No. 25 "no", then answer Question No. 30.

13          **Question No. 26:** Was James Gabbert and Michael Lincoln's reliance on Michael

14    Blatt's representation a substantial factor in causing their harm or damage?

15    Answer "yes" or "no".

16    Answer:

17          If you answer Question No. 26 "yes", answer Question No. 27. If you answer

18    Question No. 26 "no", then answer Question No. 30.

19          **Question No. 27:** What is the total amount of all damage that was suffered by

20    James Gabbert and Michael Lincoln that was caused by the negligent misrepresentation?

21    Answer:    $_____

22    Answer Question No. 28.

23          **Question No. 28:** Were any of these damages caused by Schnabel Foundation?

24          If you answer question No. 28 "no", go to question No. 30.  If you answer question

25    No. 28 "yes", go to question No. 29 and answer question No. 33.

26    \\\

27    \\\

28    \\\

SPECIAL VERDICT

- 9 -

EXHIBIT 5 p.13

1    **Question No. 29:** If you have answered question No. 28 "yes", what is the amount

2    of damages caused by the work of Schnabel Foundation?

3    Answer:       $ _____

4    Answer question No. 30.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SPECIAL VERDICT                           - 10 -

EXHIBIT 5 p.14

1       **Cross-complainants' Cause of Action For Breach of Oral Contract**

2       **Question No. 30:** Did James Gabbert and Michael Lincoln breach the oral repair

3  contract?

4  Answer "yes" or "no".

5  Answer:     yes 12-0

6       If you answer Question No. 30 "no", go to question No. 33. If you answer Question

7  No. 30 "yes", then answer Question No. 31.

8       **Question No. 31:** Did James Gabbert and Michael Lincoln's breach of the oral

9  repair contract cause damages to Michael Blatt and Catherine Blatt?

10  Answer "yes" or "no".     No 12 - 0

11  Answer:

12       If you answer Question No. 31 "no", go to question No. 33. If you answer Question

13  No. 31 "yes", then answer Question No. 32.

14       **Question No. 32:** What do you find to be the total amount of damages suffered by

15  Michael Blatt and Catherine Blatt that was caused by James Gabbert and Michael

16  Lincoln's breach of the oral repair contract?

17  Answer:     $_____

18  Answer question No. 33.

19

20

21

22

23

24

25

26

27

28

SPECIAL VERDICT        - 11 -

EXHIBIT 5 p.15

**Indemnity Cause of Action Against Schnabel Foundation**

1

2      **Question No. 33:** If you've answered by inserting a dollar amount in response to

3 question 5, 10, and 29, do you find that Schnabel Foundation was negligent?

4      If you've answered question 33 "no", sign and return this verdict. If you've

5 answered question 33 "yes", answer question 34.

6      **Question No. 34:** Was Schnabel Foundation's negligence a cause of the damages

7 you have found in response to question 5, 10, and 29?

8 Answer:

9      If you have answered question 34 "no", sign and return this verdict. If you have

10 answered question 34 "yes", answer question 35.

11      **Question No. 35:** If 100% represents the total of all negligence which caused the

12 damages which you found in response to question 5, 10, and 29, what percentage of the

13 total negligence do you attribute to the following persons:

14      Plaintiffs Gabbert/Lincoln         _____%

15      Defendant Blatt                          _____%

16      Cross-Defendant Schnabel          _____%

17           Total:                               100%

18

19      Sign and return this verdict.

20 Dated:  2/27/04

21                                              Foreperson

22

23

24

25

26

27

28

SPECIAL VERDICT

- 12 -

EXHIBIT 5 p.16

(STATE OF CALIFORNIA)
(COUNTY OF MARIN)

JAMES GABBERT AND MICHAEL LINCOLN v. MICHAEL BLATT AND
CATHERINE BLATT

ACTION # CV 020477

(PROOF OF SERVICE BY MAIL)

I AM A CITIZEN OF THE UNITED STATES AND AN EMPLOYEE OF THE MARIN
COUNTY SUPERIOR COURT; I AM OVER THE AGE OF EIGHTEEN YEARS AND NOT A
PARTY TO THE WITHIN ABOVE-ENTITLED ACTION; MY BUSINESS ADDRESS IS
CIVIC CENTER, HALL OF JUSTICE, SAN RAFAEL, CA 94903. ON *March 1, 2004* I
SERVED THE WITHIN JUDGMENT ON VERDICT IN OPEN COURT IN SAID ACTION
TO ALL INTERESTED PARTIES, BY PLACING A TRUE COPY THEREOF ENCLOSED IN
A SEALED ENVELOPE WITH POSTAGE THEREON FULLY PREPAID, IN THE UNITED
STATES POST OFFICE MAIL BOX AT SAN RAFAEL, CA, ADDRESSED AS FOLLOWS:

| | |
|---|---|
| *ALEXANDER ANOLIK*<br>*JOHN CROSSFIELD*<br>*ALEXANDER PEVZNER*<br>*2107 VAN NESS AVENUE, SUITE 200*<br>*SAN FRANCISCO, CA 94109-2536* | *RONALD FOREMAN*<br>*JACQUELINE HAMILTON*<br>*FOREMAN & BRASSO*<br>*930 MONTGOMERY STREET, SUITE 600*<br>*SAN FRANCISCO, CA 94133* |
| | *JOSEPH RYAN*<br>*RYAN AND LIFTER*<br>*2010 CROW CANYON PLACE, SUITE 330*<br>*SAN RAMON, CA 94583-1344* |

*I CERTIFY (OR DECLARE), UNDER PENALTY OF PERJURY UNDER THE LAWS OF
THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.*

*DATE:* 3-1-04

EXHIBIT 5 p.17

Exhibit "F"

07/19/2006 14:39 415·857771 GGLS PAGE 03/43

1  Ronald D. Foreman, Esq. (SB No. 061148)
   Jacqueline C. Hamilton, Esq. (SB 187732)
2  FOREMAN & BRASSO
   930 Montgomery Street, Suite 600
3  San Francisco, CA 94133
   Telephone:   (415) 433-3475
4  Facsimile.   (415) 781-8030

5  Attorneys for Defendants,
   Cross-complainants, and Cross-defendants
6  Michael Blatt and Catherine Blatt

7

8

9                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  COUNTY OF MARIN – UNLIMITED JURISDICTION

11  JAMES GABBERT AND MICHAEL          )   CASE NO. CV 020477
    LINCOLN,                           )
12                                     )
        Plaintiffs,                    )   AMENDED JUDGMENT ON
13                                     )   VERDICT IN JURY TRIAL
        v.                             )
14                                     )
    MICHAEL BLATT, CATHERINE           )
15  BLATT, PETER KANE and DOES 1-100,  )
    inclusive,                         )
16                                     )
        Defendants                     )
17                                     )
    _____   )
18                                     )
    AND RELATED CROSS-ACTIONS          )
19                                     )

20

21          This action came on regularly for trial on February 11, 13, 17, 18, 19, 20, 24, 25, 26 and 27,

22  2004, in Department L of the Marin Superior Court, the Honorable Lynn M. Duryee presiding.

23  Alexander Anolik, John Crossfield and Alexander Pevzner, appeared as attorneys for plaintiffs

24  James Gabbert and Michael Lincoln. Ronald D. Foreman and Jacqueline Hamilton appeared as

25  attorneys for defendants Michael Blatt and Catherine Blatt. Joseph Ryan, appeared as attorney for

26  cross-defendants Schnabel Foundation Company.

27

28  AMENDED JUDGMENT ON
    VERDICT IN JURY TRIAL                          - 1 -

EXHIBIT 6 p.18

07/19/2006 14:39   41...57771    FUREMAN   & SHUGED     GGLS          PAGE 04/43   NO. 546

1      A jury of 12 persons was impaneled and sworn. Witnesses were sworn and testified. After

2 hearing the evidence and the arguments of attorneys, the jury was instructed by the court and retired

3 to consider its verdict.

4      After returning into court and being called, the jurors answered to their names and rendered

5 their verdict in writing pursuant to the terms of a Special Verdict. Judgment was entered by the

6 Clerk of the Court on February 27, 2004 in accord with the findings of the Special Verdict.

7      On April 28, 2004, the Court heard and Denied Michael and Catherine Blatt's Motion for

8 Judgment Notwithstanding the Verdict. On May 4, 2004 the Court Granted and Denied, in part,

9 Michael and Catherine Blatt's Motion to Tax Costs.

10      Now, the Court hereby amends the February 27, 2004 Judgment on Verdict in Jury Trial as

11 follows:

12      IT IS ADJUDGED, DECREED and ORDERED that:

13      1.     Plaintiffs James Gabbert and Michael Lincoln shall recover judgment on the merits

14             against defendants Michael Blatt and Catherine Blatt in the amount of $144,428.60,

15             after the Court applies the appropriate deductions for pretrial settlement credits.

16      2      Plaintiffs James Gabbert and Michael Lincoln shall recover against defendants

17             Michael Blatt and Catherine Blatt, their attorneys fees in the amount of $286,669.

18      3.     Plaintiffs James Gabbert and Michael Lincoln shall recover against defendants

19             Michael Blatt and Catherine Blatt their costs in the amount of $12,634.85.

20      4.     Cross-complainants Michael Blatt and Catherine Blatt shall recover nothing from

21             cross-defendants Schnabel Foundation Company, James Gabbert and Michael

22             Lincoln.

23 DATED: June **30** 2004

24

25                    _____

                     Judge of the Marin County Superior Court

26

27 E:\FAB\Blatt\Pleadings\amended judgment.wpd

28 AMENDED JUDGMENT ON
    VERDICT IN JURY TRIAL            - 2 -

EXHIBIT 6 p. 19