Ronald D. Foreman (SBN 61148)
**FOREMAN & BRASSO**
930 Montgomery Street, Suite 600
San Francisco, CA 94133
Telephone:    (415) 433-3475
Facsimile:    (415) 781-8030
Email: foremanandbrasso@foremanandbrasso.com

Attorneys for Defendant
MICHAEL T. BLATT.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>         Plaintiff,<br><br>v.<br><br>MICHAEL T. BLATT,<br><br>         Defendant. | Case No. C06-2022 SC<br><br>**DECLARATION OF MICHAEL BLATT IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES**<br><br>Trial Date: November 19, 2007<br><br>      Date:    October 26, 2007<br>      Time:   10:00 a.m.<br>      Courtroom: 1, 17th floor |

I, Michael T. Blatt, declare that if called to testify in this matter that I would testify as hereinafter stated:

1.     I am a defendant in this lawsuit and I was a defendant in a matter known as James *Gabbert and Michael Lincoln v. Michael Blatt and Catherine Blatt, Marin County Superior Court Case No. CV 020477*, the underlying case.

2.     In 1997 I was granted approval from the city of Sausalito to split a lot so that I could construct my residence at 475 Bridgeway, Sausalito, and two units at 435 and

DECLARATION OF MICHAEL BLATT IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES

1   445 Bridgeway, Sausalito. As the owner, I contracted with Bray Construction to be the

2   general contractor to build 475 and 435- 445 Bridgeway, Sausalito. Construction

3   commenced in early 1998 on all three properties at approximately the same time, although

4   475 Bridgeway was always a little ahead.

5        3.    After excavation, foundation work and framing construction to the point of

6   sheet rocking, I entered into a contract with James Gabbert and Michael Lincoln in

7   September, 1998 to sell to them 435-445 Bridgeway. When escrow closed on March 2,

8   1999, construction of the units at 435-445 Bridgeway was approximately 60% complete. As

9   part of the purchase agreement, Gabbert and Lincoln were given certain credits against the

10  purchase price so that they might complete the construction of their units.

11       4.    In October of 2000, Gabbert and Lincoln and their representatives met with

12  me and Harold Bray to discuss their complaints regarding the construction. As a result of

13  their complaints, I paid $90,504.49 to Gabbert and Lincoln for repairs made to the work

14  performed by Harold Bray. (The original purchase price for each unit was $2,400,000.

15  Gabbert and Lincoln were each given a $200,000 credit for selection of finishes, floorings,

16  appliances and other upgrades. Therefore, the selling price for each unit was $2,200,000, for

17  a total of $4,400,000). After the repairs and payments, Gabbert and Lincoln were still

18  dissatisfied and filed the underlying action on January 29, 2002.

19       5.    As part of the construction project, I contracted with Schnabel Foundation

20  Company on June 9, 1997 **(Exhibit 1)**. Pursuant to that contract, I was an additional named

21  insured on the Schnabel insurance policy with Liberty Mutual **(Exhibit 2)**. After the lawsuit

22  was filed I had my attorney tender the lawsuit to Liberty Mutual Insurance company. My

23  attorney, Ronald D. Foreman received a September 4, 2002 letter from Michael Barnett from

24  Liberty Mutual Insurance stating that Liberty Mutual will share "in the defense and

25  indemnity of Michael Blatt" on the terms stated therein, **(Exhibit 3)**

26       6.    The payments of Liberty Mutual did not pay for all of the fees and costs

27  incurred by me in the defense of the case. The total fees and costs were $361,625.95,

28  **DECLARATION OF MICHAEL BLATT IN OPPOSITION TO THE MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES**

1  allocated $258,107 for attorney's fees and $103,518.95 for costs. Liberty Mutual claims it

2  paid $198,345.11 towards the total defense. I paid the balance to Foreman & Brasso.

3       7.      To satisfy the verdict and judgment in the underlying case, I paid $143,000 to

4  Alexander Anolik Trust Account on August 30,2004 **(Exhibit 4)**. The verdict was in a

5  higher amount, however, there was a credit against that verdict for settlements made to the

6  plaintiffs by other defendants prior to trial.

7       8.      I understand that in September, 2004, Liberty Mutual paid the attorney's fees

8  award made by the trial court in favor of the plaintiff in the underlying action by paying to

9  Alexander Anolik the sum of $286,667.40 as attorney's fees and $13,634.85 as costs.

10      9.      Near the time that Liberty Mutual Insurance paid the fees and costs described

11 in paragraph 8, above, noone from Liberty Mutual informed me that it would seek

12 reimbursement of these attorney's fees and costs which it paid to Alexander Anolik. I spoke

13 face-to-face with Michael Barnett, the Liberty Mutual claims person, on multiple occasions

14 as he attended the trial. When Liberty Mutual Insurance paid these attorney's fees and costs,

15 it was after I paid the verdict and judgment and seven months after the jury verdict was

16 rendered. Liberty Mutual's payment to Alexander Anolik took away my opportunity to

17 negotiate the fees and costs.

18      10.     I am amazed that Liberty Mutual Insurance would make the payment in

19 September, 2004 and wait until March 16, 2006 to file their complaint and ask me for

20 reimbursement and interest on top of that amount. This seems most unfair.

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 **DECLARATION OF MICHAEL BLATT IN OPPOSITION TO THE MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES**

1    11.    A core issue in the underlying litigation was a claim of water intrusion

2    damage. This damage claim was alleged in the Complaint in the underlying matter, the

3    subject of much debate at the depositions which I attended, the expert's reports and

4    testimony during the trial of the underlying case in February, 2004. I believe that I presented

5    a defense to these claims throughout the litigation, which may be why plaintiffs in the

6    underlying litigation were awarded $1.00 on their contract claim and $388,254, on their

7    negligence claim, less the credit which the plaintiffs received from other payments, even

8    though plaintiffs asked the jury for $2.5 million.

9    I declare, under penalty of perjury under the laws of the State of California that the

10    foregoing is true and correct.

11    Dated: October ___, 2007    By: _____

                                        Michael T. Blatt

12

13

14

15

16

17

18    L:\FAB\Blatt\Liberty

19    Mutual\Pleadings\DECblattOPPtoMOTSumJudg.wpd

20

21

22

23

24

25

26

27

28    **DECLARATION OF MICHAEL BLATT IN OPPOSITION TO THE MOTION FOR SUMMARY
      JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES**

1      11.    A core issue in the underlying litigation was a claim of water intrusion

2   damage. This damage claim was alleged in the Complaint in the underlying matter, the

3   subject of much debate at the depositions which I attended, the expert's reports and

4   testimony during the trial of the underlying case in February, 2004. I believe that I presented

5   a defense to these claims throughout the litigation, which may be why plaintiffs in the

6   underlying litigation were awarded $1.00 on their contract claim and $388,254, on their

7   negligence claim, less the credit which the plaintiffs received from other payments, even

8   though plaintiffs asked the jury for $2.5 million.

9        I declare, under penalty of perjury under the laws of the State of California that the

10  foregoing is true and correct.

11  Dated: October 4, 2007                    By: _____
                                                    Michael T. Blatt

12

13

14

15

16

17

18  L:\FAB\Blatt\Liberty

19  Manual\Pleadings\DECblatt0PPtoMOTSumJudg.wpd

20

21

22

23

24

25

26

27

28  DECLARATION OF MICHAEL BLATT IN OPPOSITION TO THE MOTION FOR SUMMARY
    JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES

# EXHIBIT 1



X NO. 2134            06/09/97  14:47            P.002


# Schnabel
FOUNDATION COMPANY

# PROPOSAL

TO:   **Michael Blatt**                          REF:   **435 - 445, & 476 Bridgeway**
      5 Marion St.
      Sausalito, CA  94965                               Sausalito, CA  94965

                                                  DATE:   6/9/97

      **Attention:  Mike Blatt**
      Phone:        (415) 331-9377
      FAX:          (415) 331-9377

## SCOPE OF WORK

In accordance with the attached <u>GENERAL PROVISIONS OF THIS PROPOSAL</u>, we propose to furnish all materials, equipment and labor to complete the following:

Design, furnish and install approximately 5000 sf of  permanent soil nail walls in accordance with the following documents:

1.   Architectural plans prepared by Donald Olsen for 435-445 Bridgeway dated May 1, 1997, and for 475 Bridgeway, Rev. 4 date 3-27-97.
2.   Structural plans prepared by SAABCO for 435-445 Bridgeway dated 5/12/97, and for 475 Bridgeway, Rev. 1 date 10-18-96.
3.   Schnabel Foundation Company plans for 435-445 Bridgeway dated 6/2/97, and for 475 Bridgeway Rev. 2 dated 6/9/97.

Our proposal is based on the following conditions:

1.   We will provide a permanent shotcrete wall (rod finish). The wall will be constructed as indicated on Schnabel's plans.   Excavation (by others) shall be as indicated on Schnabel's plans.
2.   We will test approximately five (5) percent of the nails.
3.   Membrane curing will be used for the shotcrete walls.
4.   Foundations for the house and walls at 60 Atwood are supported on firm rock (to be verified by others).
5.   Subsurface material into which the soil nailing is to be installed is assumed to be weathered rock in the top 5-10 feet, grading to unweathered rock below the weathered zone (to be verified by others).
6.   A 1:1 slope is to be cut above the soil nail walls.  This slope is shown on the Schnabel plans for information only.  Responsibility for the design and adequacy of this slope is "by others."

In addition to the standard exclusions listed in the attached General Provisions, we specifically exclude the following:

a.   Layout of the wall line.
b.   Provisions for routing drainage from behind the wall locations.
c.   Wall finish other than rod finish.
d.   Excavation as required per our plans.
e.   Drainage V-ditch behind and above the soil nail walls.

3075 Citrus Circle, Suite 150, Walnut Creek, CA 94598; 510/947-1881, FAX 510/947-0418
Atlanta • Boston • Chicago • Denver • Houston • Philadelphia • San Francisco • Washington, D.C.

06/09/97  14:47  NO.2134  P.003

**Proposal for Mike Blatt's Residence 6/9/97, Page 2 of 4**

PRICE:

Three Hundred Thirteen Thousand Six Hundred Dollars  ($313,600.00)

In addition to the monthly and final payment provisions listed in the attached GENERAL PROVISIONS, this proposal is based on the following additional provisions:

1.    First payment of $35,000.00 upon signing of this Subcontract;

2.    Second payment of $100,000.00 one (1) week prior to mobilizing;

3.    Remaining monthly and final payments to be in accordance with the payment provisions of the attached GENERAL PROVISIONS.

For soil nailing quantities in excess of, or less than that indicated on Schnabel's drawings the following unit prices shall apply:

Add:      $58.00/SF
Deduct:   ($36.00/SF)

This proposal is based upon a normal five-day work week of eight (8) hours per day and one mobilization, unless noted otherwise in the Scope of Work above.

Additional Mobilization: $_____Cost plus 25%_____ per each.

If we are delayed due to man-made obstructions or "by others", the following rates shall apply:

Soil Nails:      $ 475_____ per hour per rig.

This offer to perform the stated work is based solely on this proposal and the attached GENERAL PROVISIONS, and no other document(s), and is valid for thirty (30) days from the above date.

ACCEPTED:                          Respectfully submitted

Company:_____           SCHNABEL FOUNDATION COMPANY

Signature:_Michael T. Blatt___

Title:_owner_____                 _K. Ronald Chapman_____

Witness:_____           K. Ronald Chapman, Vice President



# Schnabel

## FOUNDATION COMPANY

### GENERAL PROVISIONS

The Scope of Work and Prices detailed in this proposal are based upon all of the **GENERAL PROVISIONS** listed below:

**1. Coordination** - You shall coordinate the projects so that the work can proceed in an orderly, productive and continuous operation. For the items listed, the following will be provided to us free of charge: (A) Soldier Beams: excavation to the tops of the soldier beams shall be completed prior to the start of placing soldier beams; layout of the soldier beams; (B) Lagging: excavation to the back face of the lagging; (C) Underpinning: excavation to the top of the footing shall be completed prior to the start of underpinning work; (D) Tiedowns: the work surface shall be maintained firm and dry; (E) Soil Nailing: the excavation shall be made to within one (1) inch of the back of shotcrete line; (A-E) Additional work required due to over excavation shall be paid as an extra to Schnabel.

Additionally, we shall be provided free of charge: Excavation in approximately five (5) foot lifts, or less if the soil will not stand open; Rock excavation so as not to undermine or otherwise damage our work; A berm around the top of the excavation to prevent overtopping of the retention system by water or debris; Safe access for our personnel, equipment and concrete trucks moving under their own power to and from each work location; Access includes furnishing, placing and maintaining dry, level, firm benches (as specified in the Proposal), and ramps with mats, gravel or other surface materials as required, throughout the project. Benches are to be slightly sloped away from any work area, in order to prevent ponding of water, and are to be wide enough for safe operation of our personnel and equipment, and as specified in the **SCOPE OF WORK**.

**2. Temporary Service** - The following will be provided to us free of charge: 220-volt, 200-amp single phase, 110-volt, 40-amp electrical power, and water under normal city pressure, with all outlets and connections to be located within 200 feet of any work area; job toilets; watchmen services; space for a job trailer 10' x 40' in size; space for fabrication and storage of material to be used in job; spot grades and elevations around the job; and see **SCOPE OF WORK** for any additional services required.

**3. Plans and Permission** - For any Schnabel Foundation Company design, a detailed plan will be furnished, signed by a licensed engineer, showing the original plan on which this price is based. Changes will be made as you request, or as necessary to obtain approval of others, but if such changes result in changed costs, the price shall be adjusted accordingly. Permission to close portions of public space will be obtained by others, as will permission to do portions of this work, including tieback or soil nail installation, on adjacent private property.

**4. Labor** - We propose to do this job using union labor, and should labor trouble prevent us from completing this contract, we will be paid for the cost of all work performed to that time, plus a reasonable amount for overhead and profit.

**5. Utilities** - The following shall be performed "by others" prior to commencement of our work: power lines closer than legally permissible are to be removed, sheathed or de-energized; utilities along the shoring line are to be uncovered and located, then relocated, resupported or removed, as required to prevent interference with our work.

**6. Exclusions** - This price does not include any expense or work in connection with the following: excavation, (except for



underpinning); concrete (except for soldier beams and underpinning); collection and removal of debris and spoil (including shotcrete rebound) from any work location and the site; removal of : overhead or underground manmade obstructions, old footings and footing projections; backfill, tamping, restoration, line and grade work, monitoring, demolition, pumping and site dewatering (including pumping rain water); treated wood; fences, stairways, barricades and handrails; traffic control and flagmen; street cleaning; protection and maintenance of slopes, benches, berms and shoring; fees, permits, deposits, and bonds; liquidated and consequential damages; liability other than for our own negligence, and for negligence of our subcontractors; material testing and inspections other than per our design; removal of any of our work. See, **SCOPE OF WORK** for any additional exclusions.

**7. Change Orders** - Change orders will be in writing and subject to advance approval by Schnabel Foundation Company as to design and price before performing changed work. No back charges will be issued, nor accepted unless 72 hours notice in writing of a condition requiring correction is given with an additional and reasonable amount allowed for its correction.

**8. Insurance** - We will indemnify you for damages caused by our negligence. We will maintain the following insurance: a) Worker's Compensation - limits established by state law; b) Commercial General Liability in occurrence form - limits of $1.5 million (bodily injury and property damage combined per occurrence), $3 million (general aggregate), and $2 million (completed operations aggregate) including XCU hazards; c) Auto Liability - limits of $1.5 million each accident (single limit - bodily injury and property damage combined); d) Umbrella Excess Liability - limits of $1 million. Additional coverage and limits requested by you, if available, will be provided at cost.

**9. Payments** - Our price is based upon payments being made by you to us by the 10th of the following month for 90% (or more if stated in the specifications) of all work done the preceding month, including materials delivered to the site or stored in Schnabel's yard, irrespective of whether you have been paid for such work. Final payment to us, including all retainages, will be made by you to us 30 days after substantial completion of our work stated above, irrespective of whether or not you have been paid for such work. If there are later phases, such as ramp removal or other similar items to be completed at a later date, they shall be treated as separate jobs with an agreed to value withheld, and no other retention will be withheld. Interest at the rate of 1-1/2% per month, or the applicable legal maximum rate if more, shall accrue on all amounts not paid by the times provided above, and shall be paid by you to us monthly. Additional work performed by Schnabel shall be included in monthly progress estimates and paid monthly, without retention being withheld. No charges of any kind are to be made against Schnabel's account unless they are agreed to and signed by Schnabel Foundation Company. In the event any amount due as above provided is not paid when due and we commence legal proceedings to enforce payment, you shall be liable to us for all costs of any such legal proceedings, including reasonable attorney fees based on the time expended by our attorneys. If we are not paid within 30 days after the due dates as above provided , we may suspend work (without liability for damages resulting from suspension) until we have been paid in full for all amounts which have not been timely paid, including amounts coming due during such suspensions, and the cost of demobilization and remobilization.

**10. Acceptance** - This proposal may be accepted by your signature, or oral, or written notice to us, that you wish us to perform the work covered hereby, or by asking us to proceed with any part of the said work. Upon acceptance, a contract will exist incorporating the terms hereof. If you wish to use a different form of contract, then we would be pleased to negotiate a contract with terms consistent with proposal and other mutually agreeable terms.

1/95

# Schnabel
### FOUNDATION COMPANY

| Atlanta | Boston | Chicago | Denver | Houston | Philadelphia | San Francisco | Washington,D.C. |
|---|---|---|---|---|---|---|---|
| 404/971-6455 | 603/622-8427 | 708/639-8900 | 303/696-7268 | 713/531-1103 | 215/277-2950 | 510/947-1881 | 301/657-3060 |

# EXHIBIT 2

Certificate of Insurance

THIS CERTIFICATE IS ISSUED AS A MA         F INFORMATION ONLY AND CONFERS NO RIGHT.         N YOU THE CERTIFICATE HOLDER. THIS CERTIFICATE IS NOT AN INSURANCE PL       CY AND DOES NOT AMEND, EXTEND, OR ALTER THE CUVERAGE AFFORDED BY THE POLICIES LISTED BELOW.

**This is to Certify that**

SCHNABEL FOUNDATION COMPANY
45240 BUSINESS COURT, SUITE 250
STERLING, VIRGINIA 20166-6703
ATTN: NORMAN GARFIELD
(703) 742-0020

Name Supercedes Cert. dated 6-20-97
address of
Insured

Faxed to 415-331-9377 and mailed.

**LIBERTY MUTUAL.**

is, at the issue date of this certificate, insured by the Company under the policy(ies) listed below. The insurance afforded by the listed policy(ies) is subject to all their terms, exclusions and conditions and is not altered by any requirement, term or condition of any contract or other document with respect to which this certificate may be issued.

| TYPE OF POLICY | CERTIFICATE EXP. DATE<br>☐ CONTINUOUS<br>☐ EXTENDED<br>☒ POLICY TERM | POLICY NUMBER | LIMIT OF LIABILITY | | |
|---|---|---|---|---|---|
| **WORKERS COMPENSATION** | 4-1-98 | WC2-131-011670-607 | Coverage Afforded Under WC Law of the Following States:<br>AL AZ AR CA CO CT DC DE FL GA ID IL IN IA KS KY LA | **EMPLOYERS LIABILITY** | |
| | | | | Bodily Injury By Accident $500,000 | Each Accident |
| | | | MD MA MI MN MS MO MT NE NH NJ NM NY NC | Bodily Injury By Disease $500,000 | Policy Limit |
| | | | OK OR PA SC SD TN TX UT VT VA WI HI | Bodily Injury By Disease $500,000 | Each Person |
| **GENERAL LIABILITY**<br><br>☐ CLAIMS MADE<br>RETRO DATE<br><br>☒ OCCURRENCE | 4-1-98 | TB1-131-011670-397<br><br>INCLUDES:<br>XCU COVERAGE<br>CONTRACTUAL LIABILITY | General Aggregate-Other than Prod/Completed Operations $3,000,000 | | |
| | | | Products/Completed Operations Aggregate $2,000,000 | | |
| | | | Bodily Injury and Property Damage Liability $1,500,000 | Per Occurrence | |
| | | | Personal and Advertising Injury $1,500,000 | Per Person/ Organization | |
| | | | Other:$50,000 FIRE LEGAL LIABILITY | Other:$5,000 MEDICAL PAYMENTS | |
| **AUTOMOBILE LIABILITY**<br>☒ OWNED<br>☒ NON-OWNED<br>☒ HIRED | 4-1-98 | AS2-131-011670-407 | $1,500,000 | Each Accident - Single Limit - B. I. and P. D. Combined | |
| | | | | Each Person | |
| | | | | Each Accident or Occurrence | |
| | | | | Each Accident or Occurrence | |
| **UMBRELLA EXCESS LIABILITY** | 4-1-98 | TH1-131-011670-377 | $1,000,000 PER OCCURANCE FOR BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY OVER UNDERLYING LIMITS | | |
| **CONTRACTORS EQUIPMENT** | 4-1-98 | MS2-131-011670-317 | ALL LEASED OR HIRED EQUIPMENT LIMIT $500,000 DEDUCTIBLE $5,000 | | |

RE: SFC Job #9-2476, 435-445, & 476 Bridgeway, Sausalito, CA. All liability policies shown above are endorsed to include Mike Blatt as an additional insured, as their interest(s) may appear.

IF THE CERTIFICATE EXPIRATION DATE IS CONTINUOUS OR EXTENDED TERM, YOU WILL BE NOTIFIED IF COVERAGE IS TERMINATED OR REDUCED BEFORE THE CERTIFICATE EXPIRATION DATE. HOWEVER, YOU WILL NOT BE NOTIFIED ANNUALLY OF THE CONTINUATION OF COVERAGE.

SPECIAL NOTICE - OHIO: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

NOTICE OF CANCELLATION: (NOT APPLICABLE UNLESS A NUMBER OF DAYS IS ENTERED BELOW.) BEFORE THE STATED EXPIRATION DATE THE COMPANY WILL NOT CANCEL OR REDUCE THE INSURANCE AFFORDED UNDER THE ABOVE POLICIES UNTIL UNTIL AT LEAST 30 DAYS NOTICE OF SUCH CANCELLATION HAS BEEN MAILED TO:

Liberty Mutual
Insurance Group

AUTHORIZED REPRESENTATIVE

| CERTIFICATE HOLDER | MIKE BLATT<br>5 MARION STREET<br>SAUSALITO CA 94965 |
|---|---|

June 20, 1997
DATE ISSUED

FAIRFAX, VA
OFFICE

This certificate is executed by LIBERTY MUTUAL INSURANCE GROUP as respects such insurance as is afforded by those Companies

BS 77296

Exhibit C - p. 109

# EXHIBIT 3



Liberty Mutual Group

P.O. Box 9118
Pleasanton, CA 94566
(925) 734-9200
(800) 676-6514
Fax:(925) 734-0916

September 4, 2002

Ronald Foreman
Foreman & Brasso
807 Montgomery Street
San Francisco, CA 94133

RE:   Gabbert v. Blatt
      Liberty Mutual Insured: Schnabel Foundation Co.
      Our File No.: P602-070876-01
      Our Insured Job No.: 9-2476, 435-445 & 476 Bridgeway, Sausalito, CA

Dear Mr. Foreman:

This responds to your firm's letters to us in which you tendered the defense and
indemnity of your client, Michael Blatt, as an additional insured under our policy for
Schnabel Foundation Co., in the above action.

We have reviewed the subcontract and the certificates of insurance that you provided,
and because the correspondence in this case can be read as alleging "property damage"
to which our policy would potentially apply, we will agree to share in the defense of
Michael Blatt, together with all other carriers with potentially applicable coverage, as an
additional insured for the period of 4/1/97 to 4/1/98.
Liberty Mutual will share in the defense and indemnity of Michael Blatt in this action,
pursuant to the terms and conditions set forth below.

We will pay for any defense costs and expenses as they relate to the defense of work
performed on behalf of our named insured only. We will not pay for any other work,
or time spent by your firm on behalf of any other subcontractor. We will pay for
defense costs and expenses from the date of tender. We will pay $125.00 per hour for
attorney fees and $65.00 per hour for paralegal work. This is in accordance with Civil
Code Section 2860, Section C (2). If any other insurance carrier for Schnabel Foundation
Co. also agrees to participate in the defense, we will share Schnabel Foundation's
proportionate share with the co-carriers.
We will only pay for property damage to other property arising out of the named
insured's work.

Please advise as to the following:

1) Does your client have their own insurance that would also apply to this loss?

2) Is your client entitled to contractual indemnity from any other subcontractors?

3) Have you tendered your client's defense and indemnity to any other carriers on behalf of our named insured, Schnabel Foundation Co. ?

4) Please provide us with your proposed cost sharing allocation, a copy of your fees and costs to date, and your estimated future fees and costs.

Please allow this to clarify our position with regard to your policy coverage concerning this lawsuit. Your policy does not provide coverage for your work or your product, fraud, breach of contract, failure to perform; nor does it provide coverage for damages which occur outside your policy period with Liberty Mutual.
This insurance applies only to bodily injury or property damage which occurs during the policy period. The bodily injury or property damage must be caused by an occurrence.

Please note the applicable parts of the insuring agreement. They read as follows:

Section 1 - Coverage's

　　Coverage a. Bodily injury and property damage liability.

　　1.　　Insuring agreement

　　a.　　We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any occurrence and settle any claim or suit that may result but:

　　(1)　　The amount we will pay for damages is limited as described in Section 3 Limits of insurance; and

　　(2)　　Our right and duty to defend when we have used up the applicable limits of insurance in the payment of judgements or settlements under coverage's A or B or medical expenses under coverage C.

Your policy defines "occurrence" as ;

"An accident including continuous and repeated exposure to substantially the same general harmful conditions."

Additionally, the policy specifically excludes the following:

This insurance does not apply to:

(k)    "Property damage" to "your product" arising out of it or any part of it.

(l)    Property damage to "your work" arising out of it or any part of it included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or work out of which the damage arises was performed on your behalf by a subcontractor.

(m)    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defective, deficiency inadequacy or dangerous condition in "your product" or "your work"; or.

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of the other property arising out of sudden or accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(n)    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdraw, recall, inspection, repair, replacement, adjustment, removal or disposal of;

(1)    "Your product"
(2)    " Your work" or
(3)    "Impaired property" ;

if such product, work, or properties withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The policy defines "property damage" to mean:

(a)    Physical injury to tangible property, including all resulting loss of use

of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b)     Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the occurrence that caused it.

The policy defines "your product" to mean:

(a)     Any goods or products, other then real property, manufactured, sold, handled, distributed or disposed of by:

(1)     You;
(2)     Others trading under your name; or
(3)     A person or organization whose business or assets you have required; and

(b)     Containers  (other then vehicles), materials, parts, or equipment furnished in connection with such goods or products.

"Your product" includes warranties or representations made at anytime with respect to the fitness, quality, durability, performance or use of "your product"; and the providing of or failure to provide warnings or instructions.

The policy defines "your work" to mean:

(a)     Work or operations performed by you or on your behalf; and

(b)     Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at anytime with respect to the fitness, quality, durability, performance or use of "your work"; and the providing of or failure to provide warnings or instructions.

The policy defines "impaired property" to mean tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

(a)     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

(b)    You have failed to fulfill the terms of the contract or agreement;

If such property can be restored to use by:

(a)    The repair, replacement, adjustment or removal of "your product" or "your work"; or

(b)    Your fulfilling the terms of the contract or agreement.

Your policy includes coverage for damages because of "bodily injury," defined as "bodily injury, sickness or disease sustained by a person, including death resulting fr any of these at any time."

Your policy excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

Based upon the insuring agreement, the exclusions and the definitions, the coverage indemnification available to you is for consequential damage to the plaintiff's property and bodily injury as defined in your policy and caused by an occurrence. You do not have coverage for repair or replacement of your work or yo work product. Further, with exceptions of certain assumptions of liability under "insured contract" defined in your policy, there is no coverage for damages claimed result of breach of contract.

In the above mentioned action the plaintiffs make a claim for punitive damages. Liberty Mutual policies do have coverage for such damages; however, the state of California, in the case of City Product Corporation vs Globe Indemnity (88 Cal App 31, 151 Cal. Rptr 494 [1979] expresses a public policy that precludes an insurance company from paying punitive damages awards. Therefore, Liberty Mutual's policy would not provide coverage for this type of dam You may wish to retain separate counsel to represent your interests against punitiv damages.

We may withdraw our defense of this case if it is determined that the damages in question are not covered under the terms of our policy and if the evidence conclude that damages as they relate to the insured's work occurred outside your coverage period with Liberty Mutual.

Our defense obligation is triggered only by allegations of "property damage" arisi out of our named insured's work. We specifically reserve the right to seek allocatio and/or reimbursement of any defense costs not associated with those allegations.

Should you have any questions regarding our position please do not hesitate to call me at the above number.

Sincerely,
LIBERTY MUTUAL INSURANCE CO.


Michael Barnette
Sr. Technical Claims Specialist


cc  Ronald Chapman – Schnabel Foundation Co.

# EXHIBIT 4

BLATT DEVELOPMENT OF NV INC.
2777 NORHTTOWNE LANE
RENO, NV  89512

**Schwab**

450

3-5/310
150

DATE  *8-30-4*

PAY TO THE
ORDER OF  *Alexander Anwik TRUST Account*  $ *130,000*

*One hundred thirty thousand and 0/100*  DOLLARS

PNC BANK, N.A.
Philadelphia, PA

FOR _____

⑈031000053⑈ 70180729171⑈ 2 0 4 5 0

---

MICHAEL BLATT
CATHERINE E. BREMNER-BLATT

**Schwab**

2238

3-5/310
150

DATE  *8-31-04*

PAY TO THE
ORDER OF  *Alexander Anwik TRUST Account*  $ *13,000*

*Thirteen Thousand & 00/100*  DOLLARS

PNC BANK, N.A.
Philadelphia, PA

FOR _____

⑈031000053⑈ 700958 26 19⑈ 2 2238

*John Rogue Jr*
*9-1-04*