Ronald D. Foreman (SBN 61148)
**FOREMAN & BRASSO**
930 Montgomery Street, Suite 600
San Francisco, CA 94133
Telephone: (415) 433-3475
Facsimile: (415) 781-8030
Email: foremanandbrasso@foremanandbrasso.com

Attorneys for Defendant
MICHAEL T. BLATT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>MICHAEL T. BLATT,<br><br>  Defendant. | Case No. C 06 2022 SC<br><br>**DEFENDANT MICHAEL T. BLATT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**<br><br>Date: October 26, 2007<br>Time: 10:00 a.m.<br>Courtroom: 1<br><br>Hon. Samuel Conti, Sr.<br><br>Trial Date: November 19, 2007 |

Defendant MICHAEL T. BLATT ("Blatt") submits the following opposition to plaintiff LIBERTY MUTUAL INSURANCE COMPANY's ("Liberty Mutual") Motion for Summary Judgment or, in the alternative, Summary Adjudication of Issues.

## INTRODUCTION

This is an insurance coverage action that arises out of Liberty Mutual's defense of defendant Michael Blatt in an underlying construction defect action.

---
DEFENDANT'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT/ADJUDICATION           CASE NO.: C 06 2022 SC

The underlying action was *Gabbert v. Lincoln*, Marin County Superior Court, Case Number CV 020477. Liberty Mutual is seeking reimbursement of attorneys fees paid to plaintiffs' counsel in the underlying action ($286,667.40); reimbursement of costs of suit paid to plaintiff ($13,634.85); fees and costs paid to Blatt's defense attorneys in the underlying litigation ($198,345.11) and prejudgment interest.

The obvious flaw in Liberty Mutual's argument is its attempt to use the jury verdict to now assert that "Liberty Mutual *never* had a duty to defend Mr. Blatt." [Emphasis added.]. A jury verdict is necessarily later in time than the insurer's determination of its duty to defend. The fact that the insured is later exonerated does not alter whether the facts triggered a duty to defend in advance of the jury verdict. As was pointed out in *Buss v. Superior Court*, 16 Cal.4th 35 (1997):

> . . . the insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed. [Citations]. It entails the rendering of a service, *viz.*, the mounting and funding of a defense [Citations] in order to avoid or at least minimize liability [Citations]. It arises as soon as tender is made. [Citations]. It is discharged when the action is concluded. [Citations]. It may be extinguished earlier, if it is shown that no claim can in fact be covered. [Citations]. *If it is so extinguished, however, it is extinguished only prospectively and not retroactively: before, the insurer had a duty to defend; after, it does not have a duty to defend further.*

[Emphasis added]. *Id.* at 373. When Liberty Mutual's argument is extended to its logical conclusion, a defense verdict in every case could be used to retroactively deny coverage on claims that triggered coverage pre-verdict. This is expressly prohibited by *Buss*.

Moreover, because Liberty Mutual accepted the defense, it must have determined that at least one claim was potentially covered. It is Liberty Mutual's factual burden to prove that some or all of the underlying causes of action were claims for which there was no potential coverage under the policy. Liberty Mutual has failed to establish that no claims were potentially covered; and has also failed to parse out fees and costs with respect to the covered versus non-covered claims.

It stands to reason that Blatt's own attorneys fees were necessarily covered (because Liberty Mutual accepted the tender, it must have considered at least one claim "potentially covered") and thus these fees cannot be reimbursed to Liberty Mutual. In addition, as the Court can plainly see from the Gabbert and Lincoln complaint in the underlying action, the allegations of water intrusion applied to *all* causes of action and thus *all* claims were potentially covered in this case, preventing Liberty Mutual from collecting any amount paid for Blatt's attorneys fees. Finally, Liberty's payment of the plaintiff's attorneys fees and costs in 2004 estops it from claiming reimbursement three years later.

It is Liberty Mutual's factual burden to prove that some or all of the underlying causes of action constitute claims for which there was never any potential coverage under the policy. Because Liberty Mutual has failed to meet its burden, there are triable issues of fact. This motion must be denied.

## STATEMENT OF FACTS

### A.    The Underlying Litigation

In September of 1998, James Gabbert and Michael Lincoln contracted with Michael Blatt, Catherine Blatt and Peter Kane. The Blatts agreed to sell two units in Sausalito to Gabbert and Lincoln. (Foreman Decl., Exhibit 1). Kane was the realtor for the Blatts.

Blatt hired Schnabel Foundation ("Schnabel") to build a soil nail retaining wall in order to stabilize the hillside behind the homes. (Foreman Decl., Exhibit 2). Liberty Mutual issued a general liability policy insuring Schnabel. Blatt was an additional insured on the policy. (Baker Decl., Exhibits A and B).

Escrow closed in March of 1999. When Gabbert and Lincoln began remodeling the condominiums, they claimed they discovered construction defects and deficiencies which included water intrusion from the hillside.

On January 29, 2002, Gabbert and Lincoln filed a complaint against Blatt

for breach of contract, negligence, fraud, negligent misrepresentation, concealment of material facts and breach of implied warranty. The complaint alleged various construction defects, including water intrusion.[1] The gravamen of the complaint was construction defects (water intrusion). *All* the claims were based on operative facts involving property damage. (Bennington Decl., Exhibit D).

Blatt contracted with Schnabel on June 6, 1997 to install a soil nail concrete retaining wall after excavation. (Foreman Decl., Exhibit 2). Gabbert and Lincoln claimed that they sustained water build up behind the masonry block wall built in front of the soil nail wall because proper drainage was not installed. The allegations were that the Schnabel design and construction of the soil nail wall failed to take into account the amount of water which the hillside on Bridgeway would accumulate and that the drainage was inadequate for the flow. Another claim was that the soil nail wall should have had, but did not have, a moisture protection material applied to the exterior of the wall. Gabbert and Lincoln tested the wall and found no evidence of a moisture protection material. It was alleged that Schanbel was responsible for applying a moisture barrier.

On April 30, 2002, Blatt cross-complained against Schnabel for its failure to provide adequate retaining walls and drainage, alleging that this failure caused plaintiffs' damages. (Foreman Decl., Exhibit 8, Cross-Complaint, para. 40, 47, 54, 55).

---

[1] "On or about September 1998, defendants negligently, and with lack of ordinary care, constructed houses for plaintiff such that, among other things, water penetrated the Property, the Property failed to comply with applicable building and safety codes, the Property was not properly ventilated, and the Property was not structurally sound." (Complaint, para. 17). These allegations were incorporated into every cause of action. (See Complaint, para. 22 (Fraud), para. 32 (Negligent Misrepresentation), para. 44 (Suppression and Concealment of Facts) and para. 49 (Breach of Implied Warranty. Allegations of insufficient drainage were stated in the first cause of action for breach of contact. (Complaint, para. 11).

On March 21, 2002, Blatt tendered his defense to Liberty Mutual as an additional insured under the Schnabel policy. Liberty accepted the defense subject to a September 4, 2002 reservation of rights letter. (Baker Decl., Exhibit C). This letter stated that Liberty reserves the right to "seek allocation and/or reimbursement of any defense costs not associated with covered claims." The letter also stated: "We have reviewed the subcontract and the certificates of insurance that you provided, and because the correspondence in this case can be read as alleging 'property damage' to which our policy would potentially apply, we will agree to share in the defense of Michael Blatt..." (Baker Decl., Exhibit C). Liberty Mutual agreed to provide a defense to Blatt.

Throughout the trial, Blatt proceeded on an integrated defense on all claims that stemmed from construction defect and deficiency allegations, including water intrusion. In fact, Gabbert and Lincoln's construction defect expert, Paul Weir, was critical of Schnabel and testified that, in his opinion, Schnabel was responsible for failing to provide a vapor barrier and adequate drainage. He testified that there was water migration through the concrete walls with additional water collecting behind the wall. (Foreman Decl., Exhibit 6, Weir Trial Testimony at 26:12-26; 28:19-25). Weir also testified that there should have been a drainage system and weather protection elements at the face of the concrete. (Foreman Decl., Exhibit 6, Weir Trial Testimony, 49:1-19). He testified that he had some criticisms of Schnabel, the soil-nail wall designer and installer. (Foreman Decl., Exhibit 6, Weir Trial Testimony, 105:6-8; see also, Exhibit 5, Weir Deposition Testimony). One concern was over the detail Schnabel provided as the way to hook up the drain. (Foreman Decl., Exhibit 6, Weir Trial Testimony, 173:1-12). Weir also criticized the lack of drainage above the shotcrete wall built by Schnabel. This caused significant water migrating through the shotcrete wall. (Foreman Decl., Exhibit 6, Weir Trial Testimony, 185:10-21; 187:21-28). Blatt

could have been held liable under this theory against Schnabel.

On February 27, 2004, the jury returned a verdict against Blatt on the negligence claim, which he paid directly to plaintiffs. On the breach of contract claim, the jury only awarded plaintiffs $1.00 in damages. The jury did not find fraud or negligent misrepresentation. Schnabel obtained a defense verdict in the underlying action. Judgment was entered on February 27, 2004. (Bennington Decl., Exhibit E).

**B.     Post Trial Motions and Judgment**

On April 28, 2004, the Court denied Blatt's Motion for Judgment Notwithstanding the Verdict.

On June 30, 2004, the Court amended the judgment and awarded plaintiffs Gabbert and Lincoln $286,669 in attorneys fees and $13,634.85 in costs against Blatt. (Bennington Decl., Exhibit F).

On August 31, 2004, Blatt paid the judgment of $143,000 to the plaintiffs because Liberty Mutual explicitly stated it would not indemnify him. (Foreman Decl., Exhibit 4).

In September of 2004, Liberty Mutual paid the judgment against Blatt for Gabbert and Lincoln's attorneys fees ($286,667.40) and costs ($13,634.85). At that time, Liberty Mutual never told Blatt that it would seek reimbursement of these amounts or that Blatt would have to pay these amounts directly. These payments were made without notice to Blatt that Liberty Mutual would seek reimbursement of these amounts.

It is important to note that Blatt's time to file an appeal (60 days from judgment) ran on August 31, 2004. In fact, Blatt's appellate rights were placed in the hands of counsel for Liberty Mutual. (Foreman Decl., Exhibit 9). In that September 7, 2004 letter, counsel for Blatt wrote: "The intent of the appeal was to protect Mike Blatt's legal rights and give Liberty Mutual the opportunity to

negotiate a fee payment deal or pursue the appeal." *Id*. Liberty Mutual did neither and simply paid the full amounts of the judgment. Had Blatt been informed by Liberty Mutual that it was going to seek reimbursement of these sums, Blatt could have insisted that Liberty Mutual appeal the verdict and/or negotiate to reduce the amount of attorneys fees and costs in exchange for a waiver of appeal. Instead, Liberty Mutual stepped in and paid 100% of the judgment, never informing Blatt it would come back to him three years later for reimbursement of the full amount plus prejudgment interest. If Liberty Mutual knew post-verdict, as it now contends, that it had no obligation to pay Blatt's attorneys fees and plaintiffs' attorneys fees and costs, it should have immediately informed Blatt of this prior to paying these amounts so that Blatt could have asserted legal challenges to the fees and costs.

Also, if Liberty Mutual knew that it had no obligation to pay the attorneys fees and costs post-verdict (February 27, 2004–the point in time Liberty Mutual states it knew there was no coverage), why did it do so? Why did it then wait two years to file this lawsuit for reimbursement? Liberty Mutual admits that when Schnabel was exonerated by the jury, it declined to pay any indemnity on behalf of Blatt. Why didn't it decline to pay the plaintiffs' attorneys fees and costs at the same time?

**B.    The Liberty Mutual Policy**

It is undisputed that Blatt was an additional named insured under the Liberty Mutual policy. Liberty defended Blatt under the terms of an endorsement which provided that Blatt was an additional insured under the Liberty policy. (Baker Decl., Exhibit B).

**C.    This Action.**

On March 16, 2006, almost two years post-judgment, Liberty Mutual, to Blatt's surprise, filed the instant action to recover all attorneys fees paid, costs and

interest on the amounts it paid on the June 2004 judgment. The complaint for Equitable Indemnity and Declaratory Relief alleges:

> "23. The claims against defendant in the Gabbert/Lincoln complaint were for breach of contract, negligence, fraud, negligent misrepresentation, concealment of material facts and breach of implied warranty. Some or all of these causes of action constitute claims for which there never was any potential for coverage and therefore, no duty to defend, Liberty is entitled to recover any and all defense fees and costs attributable thereto."
>
> * * *
>
> "29. An actual controversy exists between Liberty, on the one hand, and Blatt, on the other, concerning who is obligated to pay attorneys' fees and costs awarded to Gabbert/Lincoln in the underlying action. Liberty contends that it had no duty to pay the costs awarded to the underlying it's plaintiffs [sic] under the policy and, therefore, Liberty is entitled to recover, pursuant to Buss v. Superior Ct. 16 Cal.4th 35 (1997), the monies it expended on Blatt's behalf. Liberty is informed and believes that Blatt contents that Liberty is obligated to pay such monies under the terms of the Liberty policy. Liberty seeks judicial determination of its rights and duties under the Policy and its rights with respect to the recovery of Liberty's payments from Blatt." (See Complaint)

As the Court can readily discern, even from Liberty Mutual's own pleadings, there is a *factual* question whether some or all of the claims were potentially covered.[2]

## LEGAL ARGUMENT

**A.  Triable Issues of Fact Exist as to Whether or Not Claims Were Potentially Covered.**

The filing of a summary judgment motion requires the trial court to decide if the evidence presents sufficient disagreement to require submission to a jury, or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty*

---

[2] Whether a right to jury trial in a declaratory relief action exists depends on whether the issues to be tried in the declaratory relief action are equitable or legal in nature. *Interinsurance Exchange v. Savior*, 51 Cal. App. 3d 691, 694 (1975). This may be determined from the relief sought as well as from the nature of the facts stated in the complaint. *Dills v. Delira Corp.*, 145 Cal. App. 2d 124, 128 (1956). If the declaratory relief action is in effect a substitute for an action at law for breach of contract, the parties are entitled to a jury trial as a matter of right. *Interinsurance Exchange v. Savior, supra*, 51 Cal. App. 3d at 694.

*Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Summary judgment is only appropriate when the case presents a dispositive question of law; the nonmovant cannot prove an essential element of its case for which it has the burden of proof at trial; or the nonmovant's evidence fails to meet the applicable evidentiary standard, so that a reasonable trier of fact could not return a verdict in its favor. A material issue of fact is a question that a jury must answer to determine the rights of the parties under the applicable substantive law. *Id.* at 248.

Liberty Mutual's Motion for Summary Judgment is not a pure question of law for this Court. Indeed, the issues presented are a mixed question of law and fact making summary judgment inappropriate.

### 1. Liberty Mutual Accepted The Duty To Defend, Thus It Necessarily Found A Potentially Covered Claim Existed.

An insurer must defend its insured against claims that create a potential for indemnity under the policy. The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded or until it has been shown that there is no potential for coverage. When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, it is extinguished only prospectively and not retroactively. *Golden Eagle Insurance Corporation v. Cen-Fed, Ltd.*, 148 Cal.App.4th 976, 984-985 (2007).

Liberty Mutual's reliance on *Cen-Fed* is misplaced. In *Cen-Fed*, the trial court found that there was no duty to defend under the policy, yet held that the insurer had to pay attorneys fees pursuant to contract:

> The trial court's literal application of the supplementary payments clause to a case where no defense duty ever existed undermines the well-settled policy of encouraging insurers to step forward and provide a defense even in those cases of doubtful or disputed coverage. To endorse the trial court's ruling would effectively penalize the insurer providing a conditional defense to its insured and would create a substantial disincentive for insurers to do so.

*Id.* at 996. In Blatt's case, at the time of tender, Liberty Mutual found that the

complaint had the potential for coverage.[3]

In its September 4, 2004 reservation of rights letter, Liberty Mutual stated:

> Our defense obligation is triggered only by allegations of "property damage" arising out of our named insured's work. We specifically reserve the right to seek allocation and/or reimbursement of any defense cost not associated with those allegations.

It is clear from the evidence and trial record that Blatt mounted an integrated defense on the construction defect and deficiency claims, including Gabbert and Lincoln's claim that Schnabel's retaining walls did not provide adequate drainage and did not have a vapor barrier which resulted in water intrusion. Because all claims arose from the same set of operative facts regarding construction defects and deficiencies, the attorneys fees cannot be segregated as to the defense of one claim.

Moreover, the February 2004 jury verdict does not determine coverage. See, *Palmer v. Truck Insurance Exchange*, 21 Cal.4th 1109 (1999); *Schaefer/Karpf Productions v. CNA Insurance Companies*, 64 Cal.App.4th 1306 (1998). Liberty Mutual's argument that no claim was "potentially covered" because the jury verdict did not find liability against Schnabel is misleading. Whether or not a claim is potentially covered is not decided in hindsight, after the jury's verdict. Indeed, Liberty Mutual necessarily decided at least one claim was "potentially covered" as it afforded Blatt a defense in the underlying action.

In the underlying case, Liberty Mutual made the decision that it had a duty to defend and cannot now argue, post-verdict, that such a duty never existed. The attorneys fees and costs incurred were *pre-verdict* and were incurred while defending potentially covered claims.

2.      **Liberty Mutual Has Failed To Demonstrate that Any of the**

---

[3]*Prichard v. Liberty Mutual Ins. Co.*, 84 Cal.App.4th 890 (2000) is also misapplied by Liberty Mutual as it deals with when the duty to defend is extinguished.

### Claims Were Not "Potentially Covered."

It is well settled that the insurer must defend an action in its entirety if any claim against the insured is potentially covered under the policy, despite the inclusion of other claims not even potentially covered. *Buss v. Sup.Ct. (Transamerica Ins. Co.)*, 16 Cal.4th 35, 48 (1997).

*Buss* states that if an insurer has properly "reserved its rights" it may be entitled to seek reimbursement from the insured of certain defense costs incurred, the insurer has no right to reimbursement of defense costs attributable to claims for which there was at least potential coverage under the policy, even if it turns out there was no actual coverage. *Id.* at 49. Absent a contrary provision in the policy, the insurer has no right or reimbursement for defending claims potentially covered by the policy and the insurer's reservation of rights to seek reimbursement for claims is therefore ineffectual, even if the insured agrees to the reservation. *Id.* at 49-50.

Moreover, the insurer can recovery only those costs *solely* allocable to claims not potentially covered under the policy. It has no right to be reimbursed for costs jointly allocable to claims that were actually or potentially covered under the policy because it would have had to expend such costs in any event. *Id.* at 52-53. When the insurer seeks reimbursement from the insured, it bears the burden of proving, by a preponderance of the evidence, the defense costs solely allocable to claims not potentially covered. *Id.* at 53.

In *Buss*, Mr. Buss owned and operated the Los Angeles Lakers, a professional basketball team, and the Los Angeles Kings, a professional hockey team. He and various entities owned and operated the Great Western Forum indoor sports arena in Inglewood; leased the facility and presented athletic competitions and owned and operated cable television broadcasting networks. Buss entered into various contracts with H&H Sports, which he unilaterally terminated, resulting in

a complaint alleging 27 causes of action, one for defamation. Mr. Buss' insurer accepted a duty to defend only as a result of this defamation cause of action and later sought reimbursement for fees and costs incurred in defending the uncovered 26 cause of action. *Buss* answers four relevant questions:

> The questions we shall address, and the answers we shall give, are these: First, may the insurer seek reimbursement from the insured for defense costs? Yes, as to claims that are not even potentially covered, but no, as to those that are. Second, for what specific costs may the insurer obtain reimbursement? Those that can be allocated solely to claims that are not even potentially covered. Third, when the insurer seeks reimbursement, which party must carry the burden of proof? The insurer. Fourth and final, what is the burden of proof? Proof by a preponderance of the evidence.

*Id.* at 368-369.

Based on *Buss*, a case upon which Liberty Mutual relies, it has failed to meet is burden on summary judgment. Liberty Mutual is claiming all fees paid and has not shown by *any* evidence defense costs allocable to claims not potentially covered. Because Liberty Mutual accepted the tender of defense, it must have considered some, if not all claims, potentially covered. Yet, it now inconsistently claims to seek reimbursement of *all* fees and costs paid, implying that no claims were potentially covered. Moreover, the Gabbert and Lincoln complaint was grounded in property damage. Each and every claim alleged construction defects and deficiencies, including water intrusion as a result of Schnabel's retaining walls and failure to provide adequate drainage. Liberty Mutual has also failed to address *Vandenberg v. Superior Court*, 21 Cal.4th 815 (1999), which holds that the form of a particular cause of action is not determinative where the complaint alleges the requisite property damage.

Because Liberty Mutual has failed to meet its burden on this factual issue, summary judgment must be denied.

### 2. Liberty Mutual is Estopped From Claiming Reimbursement.

Liberty Mutual's claims are barred by the doctrines of estoppel (Blatt's 7th Affirmative defense), waiver (7th Affirmative Defense), and unclean hands (13th

Affirmative Defense).[4] Evid. Code § 623 creates the doctrine of equitable estoppel. It provides that a party who has, by the party's own statement or conduct, intentionally and deliberately led another to believe a particular thing to be true and to act on that belief, may not, in litigation arising out of that statement or conduct, contradict it. *Hair v. State of California*, 2 Cal. App. 4th 321, 328-329 (1991).

Liberty Mutual paid the judgment of Gabbert and Lincoln's attorneys fees and costs awarded pursuant to contract in full in 2004 and never notified Blatt at that time (or at any time up to the filing of this lawsuit) that it would seek reimbursement of those amounts. Had it, Blatt could have appealed the judgment and/or negotiated and settled the claim at a discounts. Liberty Mutual prejudiced Blatt's legal rights and remedies by paying plaintiffs 100% of the fees and costs and then, three years later, is turning to Blatt for reimbursement, along with years of interest. The court cannot countenance such tactics. Liberty Mutual's delay and failure to promptly notify Blatt of its decision to seek reimbursement obviously prejudiced Blatt's legal rights and remedies.

**B.  Even If The Court Decides This Motion as a Pure Question of Law, The Motion Must Be Denied.**

Insurance policies are contracts construed in accordance with the parties' mutual intent at the time of contract formation, as inferred from the written provisions. *Civ. Code §§ 1636, 1639*. Whatever ambiguity a phrase possesses due to a party's legal knowledge is resolved in favor of coverage. *Vandenberg v. Superior Court, supra*, 21 Cal. 4th at 840-841.

As an additional Insured, Blatt was covered under the following provision:

---

[4] A party who has acted wrongfully, dishonestly, or unfairly in bringing an action to court may be precluded from obtaining equitable relief. *Seymour v. Cariker*, 220 Cal. App. 2d 300, 305 (1963).

"**SECTION II - WHO IS AN INSURED** is amended to include any person or organization for whom you have agreed in writing to provide Liability Insurance, but only with respect to liability arising out of your operations or premises owned by or rented to you."[5]

In the September 4, 2004 reservation of rights letter, Liberty Mutual stated:

> Our defense obligation is triggered only by allegations of "property damage" arising out of our named insured's work. We specifically reserve the right to seek allocation and/or reimbursement of any defense cost not associated with those allegations.

It is clear from the evidence about that Blatt mounted an integrated defense on the construction defects claimed, including Gabbert and Lincoln's claim that the retaining wall did not provide adequate drainage and did not have a vapor barrier which, according to them, resulted in water intrusion. Because all claims arose from the same set of operative facts regarding construction defects and deficiencies, the attorneys fees cannot be segregated as to the defense of one claim.

The September 4, 2004 reservation of right letter states:

> We may withdraw our defense of this case if it is determined that the damages in question are not covered under the terms of our policy and if the evidence concludes that damages as they relate to the insured's work occurred outside your coverage period with Liberty Mutual.

Significantly, Liberty Mutual never withdrew their defense of the case. It necessarily follows that Liberty Mutual determined the damages were covered under the terms of the policy.

---

[5] "Arising out of" in commercial general liability policy is construed broadly. "It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship. (Citations)." *Acceptance Insurance Company v. Syufy Enterprises*, 69 Cal.App.4th 321, 328 (1999). See also, *Vitton Construction v. Pacific Insurance Co.*, 110 Cal.App.4th 762 (2003)–[minimal causal connection required to trigger coverage under additional insured provision found]; and *Marquez Knolls Property Owners Association, Inc. v. Executive Risk Indemnity, Inc.*, 153 Cal.App.4th 228 (2007).

The analysis of coverage occurs during the pendency of the case. Liberty Mutual accepted coverage and never withdrew its defense on any claim. The fact that the jury verdict ultimately exonerated Schanbel has no bearing on the legal analysis here. Once the property damage was alleged, coverage was triggered and the duty to defend attached. Because all claims involved the alleged defect of water intrusion, Liberty Mutual cannot seem reimbursement on any of the claims.

## CONCLUSION

Liberty Mutual's claim against its insured, Blatt, is a claim for damages that must be tried by a jury. See *American Motorists Ins. Co. v. Sup.Ct. (Montrose Chem. Corp. of Calif.)*, 68 Cal.App.4th 864, 874 (1998). (See also, Liberty Mutual's Complaint requesting a jury trial.) Triable issues of fact exist as to whether or not the underlying claims were potentially covered under the policy. Even if the Court decides this motion as a pure question of law, the subject policy required Liberty Mutual to defend Blatt and all claims were covered because they arose from the same set of construction defect facts, including water intrusion as a result of Schnabel's retaining wall and failure to provide adequate drainage. For these reasons, the Court must deny summary judgment and/or summary adjudication of issues.

DATED: October 5, 2007                FOREMAN & BRASSO

By: /s/ Ronald D. Foreman
Ronald D. Foreman
Attorneys for Defendant
Michael T. Blatt

---

DEFENDANT'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT/ADJUDICATION     CASE NO.: C 06 2022 SC
- 15 -