1  Ronald D. Foreman (SBN 61148)
2  **FOREMAN & BRASSO**
   930 Montgomery Street, Suite 600
   San Francisco, CA 94133
3  Telephone:  (415) 433-3475
   Facsimile:   (415) 781-8030
4  Email: foremanandbrasso@foremanandbrasso.com

5  Attorneys for Defendant
   MICHAEL T. BLATT.
6

7

8              **UNITED  STATES  DISTRICT  COURT**

9              **NORTHERN  DISTRICT  OF  CALIFORNIA**

10

11  LIBERTY MUTUAL INSURANCE       )    Case No. C 06 2022 SC
    COMPANY,                        )
12                                  )    **DEFENDANT MICHAEL T.**
            Plaintiff,              )    **BLATT'S TRIAL BRIEF**
13                                  )
    v.                              )    Date:   January 28, 2008
14                                  )    Time: 9:30 a.m.
    MICHAEL T. BLATT,               )    Courtroom: 1
15                                  )
            Defendant.              )    Hon. Samuel Conti, Sr.
16                                  )    Trial Date: January 28, 2008
                                    )
17  _____)

18

19         Defendant MICHAEL T. BLATT ("Blatt")  submits the following trial

20  brief.

21                        **INTRODUCTION**

22         This is an insurance coverage action that arises out of Liberty Mutual's

23  defense of defendant Michael Blatt in an underlying construction defect

24  action.

25         The underlying action was *Gabbert v. Lincoln, Marin County Superior*

26  *Court, Case Number CV 020477.* In this action, Liberty Mutual is seeking

27  reimbursement of attorneys fees paid to plaintiffs' counsel in the underlying

28  action ($286,667.40); reimbursement of costs of suit paid to plaintiff

---

**DEFENDANT'S TRIAL BRIEF**                    **CASE NO.: C 06 2022 SC**

1  ($13,634.85); fees and costs paid to Blatt's defense attorneys in the underlying

2  litigation ($198,345.11) and for prejudgment interest. To that end, Liberty

3  Mutual filed a motion for summary adjudication decided by this Court on

4  October 26, 2007. (**Exhibit 1** is the Court's October 26, 2007 Order on the

5  Motion for Summary Judgment).

6  **STATEMENT OF FACTS**

7  **A.     The Underlying Litigation**

8        In September of 1998, James Gabbert and Michael Lincoln contracted

9  with Michael and Catherine Blatt to purchase two units in Sausalito that were

10 under construction.

11       Escrow closed in March of 1999. When Gabbert and Lincoln began

12 remodeling their condominiums, they claimed they discovered construction

13 defects and deficiencies which included water intrusion from the hillside.

14       On January 29, 2002, Gabbert and Lincoln filed a complaint against

15 Blatt for breach of contract, negligence, fraud, negligent misrepresentation,

16 concealment of material facts and breach of implied warranty. The complaint

17 alleged various construction defects, including water intrusion.[1] The gravamen

18 of the complaint was construction defects (including water intrusion) and *all*

19 the claims were based on these operative facts involving property damage.

20       Blatt contracted with Schnabel Foundation on June 6, 1997 to install a

21

22 _____

23 [1]"On or about September 1998, defendants negligently, and with lack of
   ordinary care, constructed houses for plaintiff such that, among other things, water

24 penetrated the Property, the Property failed to comply with applicable building and
   safety codes, the Property was not properly ventilated, and the Property was not

25 structurally sound." (Complaint, para. 17). These allegations were incorporated into

26 every cause of action. (See Complaint, para. 22 (Fraud), para. 32 (Negligent
   Misrepresentation), para. 44 (Suppression and Concealment of Facts) and para. 49

27 (Breach of Implied Warranty. Allegations of insufficient drainage were stated in the

28 first cause of action for breach of contact. (Complaint, para. 11).

_____

**DEFENDANT'S TRIAL BRIEF**                          **CASE NO.: C 06 2022 SC**

1  soil nail concrete wall to stabilize the hillside behind the units under
2  construction for Gabbert and Lincoln. Liberty Mutual issued a general liability
3  policy insuring Schnabel. Blatt was an additional-named insured on the policy.

4  In their lawsuit, Gabbert and Lincoln claimed that they sustained water
5  build up behind the masonry block wall built in front of the soil nail wall
6  because proper drainage was not installed.  The allegations were that the
7  Schnabel design and construction of the soil nail wall failed to take into
8  account the amount of water which the hillside would accumulate and that the
9  drainage was inadequate for the flow. Another claim was that the soil nail wall
10 should have had, but did not have, a moisture protection material applied to
11 the exterior of the wall.  Gabbert and Lincoln tested the wall and found no
12 evidence of a moisture protection material.  It was alleged that Schanbel was
13 responsible for applying a moisture barrier.

14 On April 30, 2002, Blatt cross-complained against Schnabel for its
15 failure to provide adequate retaining walls and drainage, alleging that this
16 failure caused plaintiffs' damages.

17 On March 21, 2002, Blatt tendered his defense to Liberty Mutual as an
18 additional insured under the Schnabel policy. Liberty accepted the defense
19 subject to a September 4, 2002 reservation of rights letter. This letter stated
20 that Liberty reserves the right to "seek allocation and/or reimbursement of any
21 defense costs not associated with covered claims." The letter also stated: "We
22 have reviewed the subcontract and the certificates of insurance that you
23 provided, and because the correspondence in this case can be read as alleging
24 'property damage' to which our policy would potentially apply, we will agree
25 to share in the defense of Michael Blatt...". Liberty Mutual agreed to provide a
26 defense to Blatt.

27 Throughout the trial, Blatt proceeded on an integrated defense on all
28 claims that stemmed from construction defect and deficiency allegations,

1    including water intrusion. In fact, Gabbert and Lincoln's construction defect
2    expert, Paul Weir, was critical of Schnabel and testified that, in his opinion,
3    Schnabel was responsible for failing to provide a vapor barrier and adequate
4    drainage. He testified that there was water migration through the concrete
5    walls with additional water collecting behind the wall. Weir also testified that
6    there should have been a drainage system and weather protection elements at
7    the face of the concrete. He testified that he had some criticisms of Schnabel,
8    the soil-nail wall designer and installer. One concern was over the detail
9    Schnabel provided as the way to hook up the drain. Weir also criticized the
10   lack of drainage above the shotcrete wall built by Schnabel. This caused
11   significant water migrating through the shotcrete wall. Blatt could have been
12   held liable under this theory against Schnabel.

13        On February 27, 2004, the jury returned a verdict against Blatt on the
14   negligence and breach of contract claim. For the breach of contract claim, the
15   jury only awarded Gabbert and Lincoln damages in the amount of $1.00. The
16   jury did not find fraud or negligent misrepresentation. Schnabel obtained a
17   defense verdict in the underlying action. Judgment was entered on February
18   27, 2004.

19   **B.    Post Trial Motions and the Amended Judgment**

20        On June 30, 2004, the Court amended the judgment and awarded
21   plaintiffs Gabbert and Lincoln $286,669 in attorneys fees and $13,634.85 in
22   costs against Blatt.

23        On August 31, 2004, Blatt paid the judgment of $144,428.60 to Gabbert
24   and Lincoln. Liberty Mutual expressly stated it would not indemnify Blatt or
25   pay Gabbert and Lincoln.

26        In September of 2004, Liberty Mutual paid Gabbert and Lincoln's
27   attorneys fees ($286,667.40) and costs ($13,634.85). At that time, Liberty
28   Mutual did not tell Blatt that it would seek reimbursement of these amounts or

1  that Blatt would have to repay these amounts to Liberty Mutual. These

2  payments were made without notice to Blatt that Liberty Mutual would seek

3  reimbursement of these amounts.

4      It is important to note that Blatt's time to file an appeal (60 days from

5  judgment) ran on August 31, 2004. In fact, Blatt's appellate rights were placed

6  in the hands of counsel for Liberty Mutual. In a September 7, 2004 letter,

7  counsel for Blatt wrote: "The intent of the appeal was to protect Mike Blatt's

8  legal rights and give Liberty Mutual the opportunity to negotiate a fee payment

9  deal or pursue the appeal." Liberty Mutual did neither and simply paid the full

10 amounts of the judgment. Had Blatt been informed by Liberty Mutual that it

11 was going to seek reimbursement of these sums, Blatt could have insisted that

12 Liberty Mutual appeal the verdict and/or negotiate to reduce the amount of

13 attorneys fees and costs in exchange for a waiver of appeal. Instead, Liberty

14 Mutual stepped in and paid 100% of the judgment, never informing Blatt it

15 would seek reimbursement from him three years later for the full amount plus

16 prejudgment interest. If Liberty Mutual knew post-verdict, *as it now contends*,

17 that it had no obligation to pay Blatt's attorneys fees and plaintiffs' attorneys

18 fees and costs, it should have immediately informed Blatt of this prior to

19 paying these amounts so that Blatt could have asserted legal challenges to the

20 fees and costs.

21     Also, if Liberty Mutual knew that it had no obligation to pay the

22 attorneys fees and costs post-verdict (February 27, 2004–the point in time

23 Liberty Mutual states it knew there was no coverage), why did it do so? Why

24 did it then wait two years to file this lawsuit for reimbursement? Liberty

25 Mutual admits that when Schnabel was exonerated by the jury, it declined to

26 pay any indemnity on behalf of Blatt. Why didn't it decline to pay the

27 plaintiffs' attorneys fees and costs at the same time?

28 ///

1    **B.    The Liberty Mutual Policy**

2        It is undisputed that Blatt was an additional named insured under the
3    Liberty Mutual policy.  Liberty defended Blatt under the terms of an
4    endorsement which provided that Blatt was an additional insured under the
5    Liberty policy.

6    **C.    This Action.**

7        On March 16, 2006, almost two years post-judgment, Liberty Mutual, to
8    Blatt's surprise, filed the instant action to recover attorneys fees, costs and
9    interest on the amounts it paid on the June 2004 judgment. The complaint for
10   Equitable Indemnity and Declaratory Relief alleges:

11       "23.  The claims against defendant in the Gabbert/Lincoln complaint
12   were for breach of contract, negligence, fraud, negligent misrepresentation,
13   concealment of material facts and breach of implied warranty. Some or all of
14   these causes of action constitute claims for which there never was any
15   potential for coverage and therefore, no duty to defend, Liberty is entitled to
16   recover any and all defense fees and costs attributable thereto."

17       "29.  An actual controversy exists between Liberty, on the one hand, and
18   Blatt, on the other, concerning who is obligated to pay attorneys' fees and
19   costs awarded to Gabbert/Lincoln in the underlying action. Liberty contends
20   that it had no duty to pay the costs awarded to the underlying it's plaintiffs
21   [sic] under the policy and, therefore, Liberty is entitled to recover, pursuant to
22   Buss v. Superior Ct. 16 Cal.4th 35 (1997), the monies it expended on Blatt's
23   behalf. Liberty is informed and believes that Blatt contents that Liberty is
24   obligated to pay such monies under the terms of the Liberty policy. Liberty
25   seeks a judicial determination of its rights and duties under the Policy and its
26   rights with respect to the recovery of Liberty's payments from Blatt." (See
27   Complaint)

28   ///

**D.     Liberty Mutual's Motion for Summary Adjudication**

On summary adjudication, Liberty Mutual argued that because a jury found Schnabel, the original insured, not liable, Liberty Mutual never had a duty to defend Blatt and thus may recover the costs of defense of Blatt. However, as this Court pointed out, the insurer's duty to defend arises whenever the third party complaint or the facts suggest the possibility of covered claims. In the underlying case, the buyers alleged water intrusion from the hillside and insufficient drainage.

After a jury trial, Blatt was found liable under negligence and breach of contract claims, both of which included allegations of property damage. On summary adjudication, this Court held that the allegations in the breach of contract claim created the potential for coverage under the policy, which is all that is required to trigger a duty to defend. (Ex. 1, 7:9-8:9). This Court held, as a matter of law, "the Buyers' cause of action for breach of contract constituted a claim for physical injury to tangible property and therefore was a claim for property damage." (Ex. 1, 8:6-9). The Court found the same for the negligence claim, as a matter of law. (Ex. 1, 9:1-4).

On summary adjudication, the Court also dispensed with Liberty Mutual's assertion that the jury verdict in the underlying case established as a matter of law that there was never potential coverage for the claims against Blatt. (Ex. 1, 9:5-8). Liberty Mutual's duty to defend was triggered because of the disputed factual issues. (Ex. 1, 9:22-10:5).

In conclusion, the Court found, as a matter of law, that Gabbert and Lincoln's claim for breach of contract and negligence constituted claims that were potentially covered by the Liberty Mutual insurance policy for property damage and that Liberty Mutual's duty to defend Blatt was triggered. According to this Court, Liberty Mutual cannot seek reimbursement for defense funds that accrued before the jury verdict. (Ex. 1, 10:20-26).

1  Once the jury returned a finding of no liability for Schnabel, Liberty

2  Mutual's duty to defend Blatt was extinguished. Therefore, Liberty Mutual

3  claims attorneys fees and costs generated after the jury verdict in the total

4  amount of $10,617.69.

5  ### ISSUES TO BE DECIDED AT TRIAL

6  After summary adjudication, this Court identified three issues that are

7  left for determination:

8      (1)    Whether any attorneys' fees and/or costs were generated, in the

9             defense of Blatt, after the jury verdict;

10      (2)    Whether Liberty Mutual paid any of these fees and/or costs;

11      (3)    The amount, if any of these fees and costs.

12  The Court has defined the scope of the trial with these three questions.

13  Therefore, Blatt moves, *in limine*, for an order excluding any evidence that

14  does not relate to these three questions as irrelevant. Fed. R. Evid. 402.

15  The response to these questions are contained in the Stipulated Facts[2].

16  Of the $198,344.88 in direct defense expenses, $23,045.71 was incurred on

17  behalf of Blatt after the jury verdict in the underlying action. (Stipulated Fact

18  **No. 1**). Of this amount, $8,755.19 was paid by Liberty Mutual after the

19  verdict. (Stipulated Fact **No. 2**). Of the $300,303.85 fee and cost award,

20  $1,582.50 was incurred by counsel for Gabbert and Lincoln after the jury

21  verdict in the underlying action. (Stipulated Fact **No. 3**). This amount was paid

22  by Liberty Mutual to Gabbert and Lincoln. Therefore, the total amount due is

23  easily ascertained from the stipulated facts: $10,617.69.

24  In defense of the complaint, Blatt asserted various Affirmative

25  Defenses. The defenses are a bar to the payment of the amount claimed by

26

27      [2]At the time of filing this Trial Brief, the parties were still negotiating some of
the language for the Stipulated Facts. It is anticipated that the language contest will
28  be resolved by Trial and that Fact Nos. 1, 2 and 3 are accurately represented.

---

1   Liberty Mutual. Blatt alleges that Liberty Mutual is estopped and has waived

2   its right to collection of the $10,617.69 by paying this amount, not giving

3   appropriate notice to Blatt and not seeking reimbursement for over 2 years.

4   Liberty Mutual's claims are barred by the doctrines of estoppel and waiver

5   (Blatt's Seventh Affirmative Defense), and unclean hands defense (Blatt's

6   Thirteenth Affirmative Defense).[3] The doctrine of equitable estoppel and

7   waiver provide that a party who, by the party's own statement or conduct,

8   intentionally and deliberately led another to believe a particular thing to be

9   true and to act on that belief, may not, in litigation arising out of that statement

10  or conduct, contradict it. *Hair v. State of California*, 2 Cal. App. 4th 321, 328-

11  329 (1991).

12      After the verdict, Liberty Mutual paid Gabbert and Lincoln's judgment

13  for attorney's fees and costs, in full. Liberty Mutual failed to notify Blatt at the

14  time of payment, or up to the time of filing this lawsuit, that it would seek

15  reimbursement of the amounts paid. Had Blatt been given notice, he could

16  have pursued the appeal of the judgment or negotiate a discount in the

17  payment to Gabbert and Lincoln. Liberty Mutual prejudiced Blatt's legal rights

18  and remedies by paying plaintiffs 100% of the fees and costs and then, three

19  years later, suing Blatt for reimbursement, along with years of interest. The

20  court cannot countenance such tactics. Liberty Mutual's delay and failure to

21  promptly notify Blatt of its decision to seek reimbursement clearly prejudiced

22  Blatt's legal rights and remedies.

23      For these reasons, Liberty Mutual should take nothing by way of its

24  complaint and this case should be dismissed.

25  ///

26

27  [3]A party who has acted wrongfully, dishonestly, or unfairly in bringing an
    action to court may be precluded from obtaining equitable relief. *Seymour v. Cariker*,
28  220 Cal. App. 2d 300, 305 (1963).

**CONCLUSION**

Based on the foregoing, defendant Blatt requests a defense verdict and dismissal of this case.

DATED: January 23, 2008                    FOREMAN & BRASSO

By:    /s/_____
       Ronald D. Foreman
       Attorneys for Defendant
       Michael T. Blatt

---

DEFENDANT'S TRIAL BRIEF                    CASE NO.: C 06 2022 SC
- 10 -