UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL T. BLATT, <br><br> Defendant. | Case No. 06-2022 SC <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION |

I. **INTRODUCTION**

This matter comes before the Court on a motion by plaintiff Liberty Mutual Insurance Company ("Plaintiff" or "Liberty") for Summary Judgment or, in the Alternative, For Summary Adjudication ("Motion"). See Docket No. 36. Defendant Michael T. Blatt ("Defendant" or "Blatt") filed an Opposition and Liberty submitted a Reply. See Docket Nos. 43, 45.

For the following reasons, the Court DENIES Liberty's Motion for Summary Judgment and GRANTS IN PART and DENIES IN PART Liberty's Motion for Summary Adjudication.

II. **BACKGROUND**

In September 1998, Blatt contracted to build and sell two high-end condominiums to James Gabbert and Michael Lincoln ("the

Buyers").[1] Opp'n at 3; Mot. at 1. Prior to the contract, on June 9, 1998, Blatt had contracted with a foundation contractor, Schnabel Foundation Company ("Schnabel"), to build a retaining wall in order to stabilize the hillside behind the two units. Opp'n at 3.

At the time, Schnabel was insured by Liberty under a general liability policy ("the Policy"). Opp'n at 3; Mot. at 3. The Policy covered property damage and stated that Liberty's "defense obligation is triggered only by allegations of 'property damage' arising out of our named insured's [Schnabel's] work." Mot. at 6. The policy included a blanket additional insured endorsement, which expanded the policy definition of insured to include "any person or organization for whom you have agreed in writing to provide liability insurance, but coverage is limited to liability arising out of your operations or premises owned by or rented to you." Id. at 3 (internal quotations omitted).

On June 20, 1997, Blatt was included as an additional insured on the Policy and Liberty issued a certificate of insurance stating that "[a]ll liability policies are . . . endorsed to include Mike Blatt as an additional insured as their interest(s) may appear." Mot. at 3. (alterations in original).

Escrow on the condominiums closed in March 1999. Opp'n at 3. The Buyers then began remodeling the condominiums and discovered

---

[1] Because Liberty has moved for summary judgment, "the evidence of [Blatt] is to be believed, and all justifiable inferences are to be drawn in [his] favor." Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). Any disputed issue of fact is thus construed in favor of Blatt. Id.

1  construction defects, including problems associated with water
2  intrusion from the hillside. Id.; Mot. at 1. On January 29,
3  2002, the Buyers filed suit against Blatt in Marin County Superior
4  Court, CV 020477. Opp'n at 1; Mot. at 2. On March 21, 2002,
5  Blatt tendered his defense to Liberty and Liberty accepted the
6  defense subject to a September 4, 2002, reservation of rights
7  letter. Opp'n at 5; Mot. at 2. The letter reads, in part:

> This responds to your firm's letters to us [Liberty] in which you tendered the defense and indemnity of your client, Michael Blatt, as an additional insured under our policy for Schnabel . . . . We have reviewed the subcontract and the certificates of insurance . . . and because the correspondence in this case can be read as alleging 'property damage' to which our policy would potentially apply, we will agree to share in the defense of Michael Blatt . . . .

14 Mot., Ex. C.
15      In the complaint filed in Superior Court the Buyers asserted
16 causes of action for breach of contract, negligence, fraud,
17 negligent misrepresentation, concealment of material facts and
18 breach of implied warranty against Blatt. Opp'n at 4; Mot. at 2.
19 Among other construction defects, the Buyers alleged that water
20 from the hillside had penetrated the property and there was
21 insufficient drainage. Compl., Ex. B ¶¶ 11, 17. All of the
22 causes of action included allegations of property damage. Id.
23 Blatt, in turn, cross-complained against Schnabel, alleging that
24 Schnabel failed to provide adequate retaining walls and drainage
25 and this failure, in part, caused the Buyers' damages. Opp'n at
26 2, 5; Mot. at 2.
27      The matter proceeded to trial and the jury found Blatt liable

3

under two theories: negligence and breach of contract. Mot., Bennington Decl., Ex. E. The Buyers were awarded damages of almost $145,000.[2] Opp'n at 2, 5; Mot. at 2. Schnabel was found not liable to any party. Mot. at 2. In addition to the damages the court awarded the Buyers $286,669 in attorneys' fees and $13,634.85 in costs, totaling $300,302.25. Opp'n at 6.

Because Schnabel was found not liable, Liberty declined to pay any indemnity on behalf of Blatt and Blatt therefore paid the damages of almost $145,000 directly to the Buyers. Mot. at 3; Opp'n at 6. Liberty did, however, pay $300,302.25 in reimbursement for the Buyers' attorneys' fees and costs and $198,345.11 for Blatt's attorneys' fees and costs. Opp'n at 2, 6. According to Liberty, payment of these fees and costs was pursuant to a supplementary payments provisions of the Schnabel policy. Mot. at 3. These payments were made subject to the September 4, 2002, reservation of rights letter. Id.

Liberty has filed the present suit in an effort to recoup the payments associated with the defense of Blatt, which totaled $498,648.

III. **DISCUSSION**

   A.   **Legal Standard**

Entry of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[2] Almost all of the damages were awarded under the negligence claim; the jury only awarded one dollar in damages for the breach of contract claim. Mot., Bennington Decl., Ex. E.

4

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In addition, entry of summary judgment in a party's favor is appropriate when there are no material issues of fact as to the essential elements of the party's claim. Anderson, 477 U.S. at 247-49.

B.  **Analysis**

   1.  **Summary Judgment**

Liberty argues that because a jury found Schnabel, the original insured, not liable, Liberty never had a duty to defend Blatt and may therefore recover the costs Liberty spent in defending Blatt. According to California state law, "[t]he duty to defend depends on whether there is potential indemnity liability based on facts pled in the complaint . . . . There is no duty where the only potential for liability turns on resolution of a legal question." Golden Eagle Ins. Corp. v. Cen-Fed, Ltd., 148 Cal. App. 4th 976, 993 (Ct. App. 2007) (internal quotation marks, citations and alterations omitted). Thus, Liberty asserts that "[t]he jury verdict in the underlying case has established as

5

a matter of law that there was never a potential for coverage for the claims made against Mr. Blatt." Reply at 9.

"[T]he insurer's duty to defend arises whenever the third party complaint and/or the available extrinsic facts suggest, under applicable law, the <u>possibility</u> of covered claims." <u>Scottsdale Ins. Co. v. MV Transp.</u>, 36 Cal. 4th 643, 657 (2005) (emphasis added). "Determination of the duty to defend depends, in the first instance, on a comparison between the allegations on the complaint and the terms of the policy." <u>Id.</u> at 654.

In the underlying Superior Court action, the Buyers raised claims for breach of contract, negligence, fraud, negligent misrepresentation, concealment of material facts and breach of implied warranty against Blatt. Opp'n at 4; Mot. at 2. The Buyers alleged that, among other construction defects, water from the hillside had penetrated the property and there was insufficient drainage. Compl., Ex. B ¶¶ 11, 17.

The terms of the Policy issued to Schnabel by Liberty, as reiterated in the September 4, 2002, reservation of rights letter to Blatt, stated that Liberty's "defense obligation is triggered only by allegations of 'property damage' arising out of our named insured's [Schnabel's] work." Mot. at 6. The Policy defined property damage "to mean: (a) physical injury to tangible property, including all resulting loss of use of that property. . . . (b) Loss of use of tangible property that is not physically injured . . . ." Mot., Ex. C at 3. In addition, the policy included a blanket additional insured endorsement, which expanded the policy definition of insured to include Blatt. Mot. at 3.

Blatt was found liable under two claims: negligence and breach of contract. Both of these claims included allegations of property damage. In comparing the allegations in the Buyers' complaint with the terms of the Policy, the Court must determine whether, as a matter of law, either claim was covered by the insurance policy. See Golden Eagle, 148 Cal. App. 4th at 984 (holding that "interpretation of an insurance policy is a question of law").

In their breach of contract claim, the Buyers asserted, in part, the following:

> Blatt . . . breached the Purchase Agreement by failing to deliver to plaintiffs the Property in accordance with the original structural and engineering plans. . . . Blatt . . . also breached the Purchase Agreement by failing to disclose material defects as required by law. Among the defects are the following: required hold-downs were missing . . .; walls were missing sill plate [sic] and were not built to plain; . . . steel beams were not correctly packed; welded bolts were used instead of through bolts; . . . improper stair risers; . . . vapor barriers missing; and insufficient drainage because of lack of exit routes . . . .

Sup. Ct. Complaint ¶¶ 10-11, Mot., Ex. D.

A review of this claim and theory of recovery shows that the Buyers did allege physical injury to tangible property. Liberty's Policy explicitly covered "physical injury to tangible property." Mot., Ex. C at 3. At the very least, the allegations in the breach of contract claim created the potential for coverage under

///
///

7

the Policy.[3] This potential is all that is required under California law to trigger a duty to defend. See Scottsdale, 36 Cal. 4th at 657 (stating "[t]he insurer's duty to defend arises whenever the third party complaint and/or the available extrinsic facts suggest, under applicable law, the *possibility* of covered claims") (emphasis added). Thus, the Court finds, as a matter of law, that the Buyers' cause of action for breach of contract constituted a claim for physical injury to tangible property and therefore was a claim for property damage.

In their negligence claim, the Buyers asserted, in part, the following:

> [Blatt] negligently . . . constructed houses for plaintiffs such that, among other things, water penetrated the Property, the Property failed to comply with applicable building and safety codes, [and] the Property was not properly ventilated . . . . [Blatt] also negligently and carelessly selected and engaged contractors and subcontractors and others to perform portions of the work on the Property.

Sup. Ct. Complaint ¶ 17, Mot., Ex. D.

Again, upon review of this claim and theory of recovery, it is clear that the Buyers alleged physical injury to tangible property. There was, at minimum, the potential for the claims to be covered by the policy. This potential is all that is required to trigger a duty to defend. Scottsdale, 36 Cal. 4th at 657.

---

[3] Indeed, Liberty acknowledged this potential when it agreed to defend Blatt. See September 4, 2002, Reservation of Rights letter, Mot., Ex. C (stating "because the correspondence in this case can be read as alleging 'property damage' to which our policy would potentially apply, we will agree to share in the defense of Michael Blatt . . .").

8

Thus, the Court finds, as a matter of law, that the Buyers' cause of action for negligence constituted a claim for physical injury to tangible property and therefore was a claim for property damage.

Liberty's assertion that "[t]he jury verdict in the underlying case has established as a matter of law that there was never a potential for coverage for the claims made against Mr. Blatt," Reply at 9, is, simply put, wrong.

The role of a jury is that of a fact-finder. See, e.g., 75A AM. JUR. 2d Trial § 602 (2007) (stating "it is the function of the jury to resolve conflicts in the evidence and determine issues of fact . . . . The jury hears the evidence and, by its verdict, settles the issues of fact . . ."); Cal. Jury Instructions, Civil, General Instructions, Pre-Trial Admonitions, at 2 (Fall, 2006 Ed) (explaining that juries "must base [their] decisions . . . on the facts and the law" and "must determine the facts from the evidence received in trial"); 23B AM. JUR. Pleading & Practice Forms § 212 (2007) (stating that jury members "are the sole judges of the facts in issue . . . . It is the exclusive province of the jury to weigh and consider all evidence . . . to determine the issues of fact in the case").

In the underlying Superior Court action, the jury found that the facts presented at trial did not give rise to any liability for Schnabel. That Schnabel's liability was put in front of a jury in the first place indicates that there were triable issues of fact. As the California Court of Appeal has noted, where "the potential for indemnity liability . . . turn[s] on disputed

_factual_ issues," the insurer is "required to provide a defense at least until the facts [are] conclusively decided to show that there is no coverage and thus no duty to defend." Golden Eagle, 148 Cal. App. 4th at 993 (emphasis in original). Therefore, Liberty's duty to defend was triggered.

Liberty's reliance on Golden Eagle, 148 Cal. App. 4th, is also misplaced. In Golden Eagle, the court granted reimbursement for defense costs because the court determined that the insured's complaint and theory of recovery were premised on claims for economic harm, not property damage. Id. at 989. Because the insurance policy covered only property damage, and not economic harm, the court found, as a matter of law, that there was no potential coverage. Id. In addition, the court found that the insurer's policy covering personal injury was outside the scope of the insured's claim, which involved "a corporate organization, not a person." Id. at 990. Thus, in Golden Eagle, the court found that as a matter of law, the claims raised by the insured did not fall under the insurance policies. As detailed above, the same cannot be said for the claims in the present case.

For the foregoing reasons, the Court FINDS, as a matter of law, that the Buyers' claims for breach of contract and negligence constituted claims that were potentially covered by the insurance Policy for property damage. Therefore, Liberty's duty to defend Blatt was triggered and Liberty cannot now seek reimbursement for defense funds that accrued before the jury verdict. Therefore, Liberty's Motion for Summary Judgment is DENIED.

///

### 2. Summary Adjudication

In the alternative to its Motion for Summary Judgment, Liberty moved for summary adjudication of three issues: (1) that Liberty is entitled to reimbursement by Blatt for any costs and fees paid to defend Blatt against claims not covered by the Policy; (2) that Liberty is entitled to reimbursement from Blatt for any costs and fees paid to defend Blatt after the jury verdict was returned; and (3) Liberty is entitled to prejudgment interest on any amounts recovered from Blatt. The Court addresses each in turn.

#### i. Reimbursement for Claims Not Covered by the Policy

Liberty argues that it is entitled to reimbursement of the funds used to defend Blatt against claims that were not covered by the Policy. "In a 'mixed' action, in which some of the claims are at least potentially covered and the other claims are not, the insurer has a duty to defend as to the claims that are at least potentially covered . . . but does not have a duty to defend as to those that are not . . . ." Buss, 16 Cal. 4th at 47-48. Nonetheless, because of policy concerns, the California Supreme Court has also held that "in a mixed action, the insurer has a duty to defend the action in its entirety." Id. at 48. In explaining this, the Court stated: "To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." Id. at 49 (internal citations omitted).

11

Thus, "[a]s to the claims that are at least potentially covered, the insurer may not seek reimbursement for defense costs." Id. "As to the claims that are not even potentially covered, however, the insurer may indeed seek reimbursement for defense costs." Id. at 50. In determining which costs may actually be recovered, the California Supreme Court stated that only "[d]efense costs that can be allocated solely to the claims that are not even potentially covered" may be recovered. Id. at 52.

The Court further held that the insurer must demonstrate by a preponderance of the evidence that certain defense costs were allocated solely to claims that were not potentially covered. Id. at 53. The Court noted the difficulty of this standard, stating that to carry its burden, the insurer "must accomplish a task that, if ever feasible, may be extremely difficult." Id. at 57-58 (internal quotation marks and citations omitted). "Hence, the insurer will probably pursue the matter only in apparently exceptional cases--for example, where the defense costs the insurer may obtain in reimbursement are clear and substantial and where the assets the insured has available for reimbursement are themselves of the same sort." Id. at 58 (emphasis in original).

Blatt was found liable on two claims: breach of contract and negligence. As stated above, however, the Court finds that both of these claims were potentially covered by the insurance policy. Thus, there are no remaining claims which might be "not even potentially covered." Buss, 16 Cal. 4th at 52. Accordingly, summary adjudication on this issue is DENIED.

12

### ii. Reimbursement for Costs and Fees Incurred After the Jury Verdict

"When the duty [to defend], having arisen, is extinguished by a showing that no claim can in fact be covered, 'it is extinguished only prospectively and not retroactively.'" Scotsdale Ins. Co., 36 Cal. 4th at 655 (citing Buss v. Super. Ct., 16 Cal. 4th 287, 298 (1997)). Thus, Liberty was "required to provide a defense at least until the facts were conclusively decided to show that there [was] no coverage and thus no duty to defend." Golden Eagle, 148 Cal. App. 4th at 993.

Once the jury returned a finding of no liability for Schnabel, Liberty's duty to defend Blatt was extinguished. Blatt was insured only insofar as any claims against him arose under Liberty's coverage of Schnabel. Therefore, any attorneys' fees and costs that were generated after the jury found no liability for Schnabel may be recovered by Liberty.

Although the Court finds that Liberty is entitled to recover the attorneys' fees and costs, if any, that arose after the jury returned its verdict, neither Liberty nor Blatt indicates whether any of these fees and costs were in fact generated after the verdict.[4] Thus, although Liberty would be entitled to any of these fees, it is unclear from the parties' papers whether such fees and costs even exist. As detailed below, this issue is one for the jury. The Court therefore GRANTS Liberty's Motion for

---

[4] To be clear, the fees and costs generated by Blatt and the Buyers during the trial and paid by Liberty after the verdict, are not fees that were 'incurred after the jury verdict.'

13

Summary Judgment on the issue of whether the fees and costs generated after the jury verdict may be recovered by Liberty. This holding, however, is contingent upon the finding, by the jury, that such fees and costs even exist.

### iii. Prejudgment Interest

Finally, Liberty argues that it is entitled to prejudgment interest of 10% on all amounts recovered from Blatt. Blatt has not contested this assertion.

California Civil Code section 3287 provides in pertinent part: "Every person who is entitled to damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ."

The only issue on which the Court has granted summary adjudication is in respect to Liberty's right to recover any attorneys' fees and costs that were generated after the jury found Schnabel not liable. Thus, these fees are the only fees that would be affected by the awarding of prejudgment interest. Liberty, however, has failed to state what, if any, fees were generated after the verdict. One of the requirements of California Civil Code section 3287, as interpreted by California courts, is that section 3287 "does not authorize prejudgment interest as a matter of law where the amount of damages depends upon a judicial determination based upon conflicting evidence." Hartford Accident & Indem. Co. v. Sequoia Ins. Co., 211 Cal. App. 3d 1285, 1307 (Ct. App. 1989) (internal quotation marks and citations omitted).

14

In the present case, Liberty has presented no evidence pertaining to post-verdict fees. Thus, the Court at this time cannot say with any certainty that the amount of damages for which Liberty requests prejudgment interest is, as it must be, certain. See id. (stating that "[p]rejudgment interest runs from the date when damages are certain or are capable of being calculated to a certainty") (internal citations and quotation marks omitted). For these reasons, Liberty's Motion for Summary Adjudication on the issue of prejudgment interest is DENIED.

## IV. REMAINING ISSUES TO BE DECIDED BY JURY

This matter is scheduled to go to trial on November 19, 2007. In the interest of judicial economy and for the benefit of both parties, the Court FINDS that the following issues remain to be decided by the jury:

(1) Whether any attorneys' fees and/or costs were generated, in the defense of Blatt, after the jury verdict;

(2) Whether Liberty paid any of these fees and/or costs;

(3) The amount, if any, of these fees and costs.

///
///
///
///
///
///
///
///

15

V.  **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED.  Plaintiff's Motion for Summary Adjudication is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: October 26, 2007

UNITED STATES DISTRICT JUDGE