Ronald D. Foreman (SBN 61148)
**FOREMAN & BRASSO**
930 Montgomery Street, Suite 600
San Francisco, CA 94133
Telephone: (415) 433-3475
Facsimile: (415) 781-8030
Email: foremanandbrasso@foremanandbrasso.com

Attorneys for Defendant
MICHAEL T. BLATT.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL T. BLATT,<br><br>Defendant. | Case No. C 06 2022 SC<br><br>**DEFENDANT MICHAEL T. BLATT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Date: January 28, 2008<br>Time: 9:30 a.m.<br>Courtroom: 1<br><br>Hon. Samuel Conti, Sr.<br>Trial Date: January 28, 2008 |

This matter came before this Court for trial on January 28, 2008. Plaintiff Liberty Mutual Insurance Company ("Plaintiff" or Liberty") and defendant Michael T. Blatt ("Defendant or "Blatt") waived a trial by jury and submitted stipulated facts, along with documentary and testimonial evidence. Pursuant to Federal Rules of Civil Procedure, Rule 52(a), the Court issues the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. In September 1998, Blatt contracted to build and sell two high-end condominiums to James Gabbert and Michael Lincoln ("The Buyers). (Stipulated Fact No. 5 and Exhibits 2 and 3 thereto).

---

FINDINGS OF FACT and CONCLUSIONS OF LAW           CASE NO.: C 06 2022 SC

2. Prior to the contract, on June 9, 1998, Blatt had contracted with a foundation contractor, Schnabel Foundation Company ("Schnabel") to build a retaining wall in order to stabilize the hillside behind the two units. (Stipulated Fact No. 7 and Exhibit 5 thereto.)

3. At the time, Schnabel was insured by Liberty under a general liability policy ("the Policy"). (Stipulated Fact No. 1).

4. The Policy covered property damages and stated that Liberty's "defense obligation is triggered only by allegations of the 'property damage' arising out of our named insured's [Schnabel's] work." (Stipulated Fact No. 3 and Exhibit 1.)

5. The Policy included a blanket additional insured endorsement, which expanded the Policy definition of insured to include "any person or organization for whom you have agreed in writing to provide liability insurance, but coverage is limited to liability arising out of your operations or premises owned by or rented to you." (Stipulated Fact No. 3 and Exhibit 1).

6. On June 20, 1997, Blatt was included as an additional insured on the Policy and Liberty issued a certificate of insurance stating that "[a]ll liability policies are . . . endorsed to include Mike Blatt as an additional insured as their interest(s) may appear." (Stipulated Facts No. 1 and 3).

7. Escrow on the condominiums closed in March 1999. The Buyers then began remodeling the condominiums and discovered construction defects, including problems associated with water intrusion from the hillside. (Testimony of Blatt; Stipulated Facts No. 4, 5, and 6 and Exhibits 2, 3 and 4).

8. On January 29, 2002, the Buyers filed suit against Blatt in Marin County Superior Court, CV 020477. (Stipulated Fact No. 4).

9. On March 21, 2002, Blatt tendered his defense to Liberty and Liberty accepted the defense subject to a September 4, 2002, reservation of rights letter, which states, in part:

> "This responds to your firm's letters to us [Liberty] in which you tendered the defense and indemnity of your client, Michael Blatt, as an additional insured under our policy for Schnabel...We have reviewed the subcontract and the certificates of insurance . . . and because the correspondence in this case can be read as alleged 'property damage' to which our policy would potentially apply, we will agree to share in the defense of Michael Blatt..."

(Stipulated Facts No. 9, 10 and Exhibit 7 thereto).

10. In the complaint filed in the Marin County Superior Court, the Buyers asserted causes of action for breach of contract, negligence, fraud, negligent misrepresentation, concealment of material facts and breach of implied warranty against Blatt. (Stipulated Fact No. 6 and Exhibit 4 thereto).

11. Among other construction defects, the Buyers alleged that water from the hillside had penetrated the property and there was insufficient drainage. All of the causes of action included allegations of property damage. (Stipulated Fact No. 6 and Exhibit 4 thereto, paragraphs 11 and 17).

12. Blatt cross complained against Schnabel, alleging that Schanbel failed to provide adequate retaining walls and drainage and this failure, in part, caused the Buyers' damage. (Stipulated Fact No. 8 and Exhibit 6 thereto; Stipulated Fact 11.)

13. The matter proceeded to trial and on February 27, 2007, the jury found Blatt liable under two theories: negligence and breach of contract. (Stipulated Fact No. 11 and Exhibit 8 thereto).

14. The Buyers were awarded damages of almost $145,000, most under the negligence claim and one dollar on the breach of contract claim. (Stipulated Fact No. 11 and Exhibit 8 thereto).

15. Schnabel was found not liable to any party. (Stipulated Fact No. 11 and Exhibit 8 thereto).

16. In addition to the damages, the Marin County Superior Court awarded the Buyers $286,669.00 in attorneys fees and $13,634.85 in costs, for a total of $300,303.85. (Stipulated Fact No. 12).

17. Because Schnabel was found not liable, Liberty declined to pay indemnity on behalf of Blatt and therefore Blatt therefore paid the damages of almost $145,000 directly to the buyers. (Testimony of Blatt).

18. Liberty did pay $300,302.25 in reimbursement for the Buyers' attorneys' fees and costs and $198,344.88 for Blatt's attonreys fees and costs. According to Liberty, payment of these fees and costs was pursuant to a supplementary payments provision of the Schnabel policy. These payments were made subject to the September 4, 2002, reservation of rights letter. (Stipulated Facts No. 13 and 14; Stipulated Fact No. 10 and Exhibit 7 thereto).

19. Liberty filed the present action to recoup the payments associated with the defense of Blatt. (Liberty Complaint).

20. Liberty filed a Motion for Summary Judgment and Summary Adjudication on certain issues. On October 26, 2007, the Court issued its order, finding that three issues remained to be decided by the trier of fact:

    (1)    Whether any attorneys' fees and/or costs were generated, in the defense of Blatt, after the jury verdict;

    (2)    Whether Liberty paid any of these fees and/or costs;

    (3)    The amount, if any, of these fees and costs.

(Exhibit A, Summary Judgment/Adjudication Order, 15:11-19).

21. After the jury verdict, $8,755.19 was paid by Liberty Mutual in defense of Blatt and $1,582.50 was paid by Liberty Mutual to counsel for Gabbert and Lincoln for fees incurred after the jury verdict, or a total of $10,337.69. (Stipulated Facts No. 17 and 18).

22. Liberty Mutual waited over two years to file this lawsuit to recoup its costs. Blatt relied on Liberty's payment to his detriment. (Testimony of

Blatt). Blatt asserts the affirmative defenses of waiver, estoppel and unclean hands. (Answer, Seventh and Thirteenth Affirmative Defenses).

## CONCLUSIONS OF LAW

1.  According to California state law, "[t]he duty to defend depends on whether there is potential indemnity liability based on facts plead in the complaint....There is no duty where the only potential liability turns on resolution of a legal question." *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 148 Cal. App. 4th 976, 993 (Ct. App. 2007) (internal quotation marks, citations and alterations omitted).

2.  [T]he insurer's duty to defend arises whenever the third party complaint and/or the available extrinsic facts suggest, under applicable law, the <u>possibility</u> of covered claims." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 657 (2005) (emphasis added). "Determination of the duty to defend depends, in the first instance, on a comparison between the allegations on the complaint and the terms of the policy." *Id.* at 654.

3.  In the underlying Marin County Superior Court action, the Buyers raised claims for breach of contract, negligence, fraud, negligent misrepresentation, concealment of material facts and breach of implied warranty against Blatt. (Stipulated Fact No. 6 and Exhibit 4 thereto.) The Buyers alleged that, among other construction defects, water from the hillside had penetrated the property and there was insufficient drainage. (Stipulated Fact No. 6 and Exhibit 4, paragraphs 11 and 17).

4.  The terms of the Policy issued to Schnabel by Liberty, as reiterated in the September 4, 2002, reservation of rights letter to Blatt, stated that Liberty's "defense obligation is triggered only by allegations of 'property damage' arising out of our named insured's [Schnabel's] work." (Stipulated Fact No. 3 and Exhibit 1; Stipulated Fact No. 10 and Exhibit 7).

5.  The Policy defined property damage "to mean: (a) physical injury

to tangible property, including all resulting loss of use of that property. . .(b) Loss of use of tangible property that is not physically injured..." (Stipulated Fact No. 1 and the Policy).

6. The Policy included a blanket additional insured endorsement, which expanded the policy definition of insured to include Blatt. (Stipulated Fact Nos. 1, 3 and Exhibit 1 thereto).

7. Blatt was found liable under two claims: negligence and breach of contract. Both of these claims included allegations of property damages. (Stipulated Facts No. 11 and Exhibit 8 thereto.)

8. Comparing the allegations in the Buyers' complaint with the terms of the Policy, the Court determines that, as a matter of law, either claim was covered by the insurance policy. See *Golden Eagle*, 148 Cal.App.4th at 984 (holding that "interpretation of an insurance policy is a question of law"). In their breach of contract claim, the buyers asserted, in part, the following:

> "Blatt. . .breached the Purchase Agreement by failing to deliver to plaintiff the Property in accordance with the original structural and engineering plans. . .Blatt. . .also breached the Purchase Agreement by failing to disclose material defects as required by law. Among the defects are the following: required hold-downs were missing. . .; walls were missing sill plate [sic] and were not built to plan; . . .steel beams were not correctly packed; welded bolts were used instead of through bolts;. .. Improper stair risers;. . .vapor barriers missing; and insufficient drainage because of lack of exit routes..." (Stipulated Fact No. 6 and Exhibit 4, paragraphs 10-11).

9. A review of this claim and theory of recovery shows that the Buyers did allege physical injury to tangible property. Liberty's Policy explicitly covered "physical injury to tangible property." (Stipulated Fact No. 1 and Policy). These allegations in the breach of contract claim created the

FINDINGS OF FACT and CONCLUSIONS OF LAW    CASE NO.: C 06 2022 SC
- 6 -

potential for coverage under the policy, which is all that is required under California law to trigger a duty to defend. See *Scottsdale Ins. Co.*, 36 Cal.4th at 657 (stating "[t]he insurer's duty to defend arises whenever the third party complaint and/or the available extrinsic facts suggest, under applicable law, the possibility of covered claims"). Indeed, Liberty acknowledged this potential when it agreed to defend Blatt in its September 4, 2002 reservation of rights letter, stating: "because the correspondence in this case can be read as alleging 'property damage' to which our policy would potentially apply, we will agree to share in the defense of Michael Blatt . . ."). (Stipulated Fact No. 10 and Exhibit 7 thereto.) Thus, the Court finds, as a matter of law, that the Buyers cause of action for breach of contract constituted a claim for physical injury to tangible property and there was a claim for property damages.

10.   In their negligence claim, the Buyers asserted, in part, the following:

> "[Blatt] negligently . . . constructed houses for plaintiffs such that, among other things, water penetrated the Property, the Property failed to comply with applicable building and safety codes, [and] the Property was not properly ventilated . . . . [Blatt] also negligently and carelessly selected and engaged contractors and subcontractors and others to perform portions of the work on the Property."

(Stipulated Fact No. 4, 6 and Exhibit 4, para. 17).

11.   It is clear from reviewing this negligence claim and theory of recovery that the Buyers alleged physical injury to tangible property. There was, at a minimum, the potential for the claims to be covered by the policy. This potential is all that is required to trigger a duty to defend. *Scottsdale Ins. Co.*, 36 Cal.4th at 657. Thus, the Court finds, as a matter of law, the Buyers' cause of action for negligence constituted a claim for physical injury to tangible property and therefore was a claim for property damage.

12. As the California Court of Appeal has noted, where "the potential for indemnity liability . . . turn[s] on disputed <u>factual</u> issues," the insurer is "required to provide a defense at least until the facts [are conclusively decided to show that there is no coverage and thus no duty to defend." *Golden Eagle*, 148 Cal.App.4th at 993 (emphasis in original). Therefore, Liberty's duty to defend was triggered.

13. Because of policy concerns, the California Supreme Court has held that "in a mixed action, the insurer has a duty to defend the action in its entirety." *Buss v. Superior Court*, 16 Cal.4th 35, 48 (1997). In explaining this, the Court stated: "To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." *Id.* at 49. Although the insurer may seek reimbursement for defense costs on claims that are not even potentially covered, this rule does not apply here. Blatt was found liable on two claims: breach of contract and negligence. The Court finds that both of these claims were potentially covered by the insurance policy. Thus, there are no remaining claims which might be "not even potentially covered." *Buss*, 16 Cal.4th at 52.

13. For the foregoing reasons, the Court finds, as a matter of law, that the Buyers' claims for breach of contract and negligence constituted claims that were potentially covered by the insurance Policy for property damage. Therefore, Liberty's duty to defend Blatt was triggered and Liberty cannot now seek reimbursement for defense funds that accrued before the jury verdict.

14. "When the duty [to defend], having arising, is extinguished by a showing that no claim can in fact be covered, 'it is extinguished only prospectively and not retroactively.'" *Scottsdale Ins. Co.*, 36 Cal.4th at 655 (citing *Buss v. Superior Court*, 16 Cal.4th 287, 298 (1997)). Thus, Liberty was "required to provide a defense at least until the facts were conclusively

decided to show that there [was] no coverage and thus no duty to defend." *Golden Eagle*, 148 Cal.App.4th at 993. Once the jury returned a finding of no liability for Schnabel, Liberty's duty to defend Blatt was extinguished. Therefore, any attorneys' fees and costs that were generated after the jury found no liability for Schnabel may be recovered by Liberty.

15. According to the stipulated facts, after the jury verdict, Liberty incurred $8,755.19 in defense of Blatt and $1,582.50 was paid by Liberty Mutual to counsel for Gabbert and Lincoln for fees incurred after the jury verdict, or a total of $10,337.69. (Stipulated Facts No. 17 and 18).

16. In defense to this amount [$10,337.69], Blatt asserts the equitable affirmative defenses of waiver, estoppel (Seventh Affirmative Defense) and unclean hands (Thirteenth Affirmative Defense). See, Answer. The doctrine of equitable estoppel involves the presence of four elements: (1) the party to be estopped must be apprised of the facts; (2) it must intend that its conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely upon the conduct to his or her injury. The essence of an estoppel is that the party to be estopped has, by false language or conduct, led another to do that which he or she would not otherwise have done, and as a result thereof he or she has suffered injury. *Hair v. State of California*, 2 Cal. App. 4th 321, 328-329 (1991). With respect to the affirmative defense of unclean hands, A party who has acted wrongfully, dishonestly, or unfairly in bringing an action to court may be precluded from obtaining equitable relief. *Seymour v. Cariker*, 220 Cal. App. 2d 300, 305 (1963). According to Blatt, Liberty's conduct of paying the fees and costs and not seeking reimbursement until over two years post-verdict created the impression that there was no coverage dispute and also caused Blatt to rely on this conduct to his detriment by depriving him of the right to negotiate the fees

1  and/or pursue an appeal. (Testimony of Blatt).

2       17.   For the foregoing reasons, the Court finds that Liberty takes
3  nothing by way of its complaint and finds that Blatt, as the prevailing party, is
4  entitled to his costs in this action.

5  DATED: January 25, 2008                    FOREMAN & BRASSO

7                                      By:   /s/
                                             Ronald D. Foreman
8                                            Attorneys for Defendant
                                             Michael T. Blatt

FINDINGS OF FACT and CONCLUSIONS OF LAW         CASE NO.: C 06 2022 SC
- 10 -