1 | Ronald J. Skocypec, Bar No. 72690
J. Christopher Bennington, Bar No. 105432
2 | KRING & CHUNG, LLP
920 Hampshire Road
3 | Suite A15
Westlake Village, CA 91361
4 | Telephone:  (805) 494-3892
Facsimile:  (805) 494-3914
5
Attorneys for Plaintiff
6 | LIBERTY MUTUAL INSURANCE COMPANY

7

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

11 | LIBERTY MUTUAL INSURANCE
COMPANY,

12 |         Plaintiff,

13 |    vs.

14 | MICHAEL T. BLATT,

15 |         Defendant.

16

) Case No. C 06 2022 CW
)
) **TRIAL BRIEF OF LIBERTY**
**MUTUAL INSURANCE**
**COMPANY**
)
)
)
) **TRIAL: January 28, 2008**
)
)
)

17 |     Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") hereby

18 | submits the following trial brief.

19

20 | Dated:  January 24, 2007           KRING & CHUNG, LLP

21

22 |          By: _____

23 |          Ronald J. Skocypec
J. Christopher Bennington
24 |          Attorneys for Plaintiff
LIBERTY MUTUAL INSURANCE
25 |          COMPANY

26

27

28



1

# **TABLE OF CONTENTS**

2

3    Introduction.......................................................................................................1

4

5    Statement of Facts............................................................................................2

6

7    1.  BASED ON THE COURT'S RULING ON THE SUMMARY

8        JUDGMENT MOTION, LIBERTY MUTUAL IS ENTITLED TO

9        RECOVER AT LEAST THE POST-VERDICT FEES SPENT ON

10       MR. BLATT'S DEFENSE.............................................................................4

11

12   2.  BASED ON THE COURT'S RULING ON THE SUMMARY JUDGMENT

13       MOTION, LIBERTY MUTUAL IS ENTITLED TO RECOVER AT LEAST

14       THE POST-VERDICT FEES INCURRED BY PLAINTIFFS' COUNSEL IN

15       THE UNDERLYING CASE............................................................................5

16

17   3.  THE COURT DID NOT EXPRESSLY RULE ON THE CLAIM

18       FOR FEES AND COSTS PAID TO THE UNDERLYING

19       PLAINTIFFS...............................................................................................5

20

21   4.  LIBERTY MUTUAL IS ENTITLED TO RECOVER PREJUDGMENT

22       INTEREST.................................................................................................10

23

24   5.  LIBERTY MUTUAL'S CLAIMS ARE NOT BARRED BY WAIVER OR

25       ESTOPPEL...............................................................................................15

26

27   Conclusion.......................................................................................................17

28



KRING & CHUNG
ATTORNEYS LLP

1                          **TABLE OF AUTHORITIES**

2

3   Buss v. Superior Court,

4        16 Cal.4th 35, 65 Cal.Rptr.2d 366 (1997)..............................1, 8, 13, 14

5   California Shoppers, Inc. v. Royal Globe Ins. Co.,

6        175 Cal.App.3d 1, 221 Cal.Rptr. 171 (1985).........................................15

7   Golden Eagle v. Cen-Fed, Ltd.,

8        148 Cal.App.4th 976, 56 Cal.Rptr.3d 279 (2007)...................................8

9   Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.,

10       211 Cal.App.3d 1285, 260 Cal.Rptr. 190 (1989)............................10, 11

11  Highland Ins. Co. v. Continental Casualty Co.,

12       64 F.3d 514 (9th Cir. 1995).................................................................12

13  Montrose Chemical Corp. v. Superior Court,

14       6 Cal.4th 287, 24 Cal.Rptr.2d 46 (1993)................................................7

15  Oil Base, Inc. v. Transport Indemnity Co.,

16       148 Cal.App.2d 490, 492, 306 P.2d 924 (1957)...................................15

17  Prichard v. Liberty Mut. Ins. Co.,

18       84 Cal.App.4th 890, 101 Cal.Rptr.2d 298 (2000)...............................8, 9

19  Ringler Associates, Inc. v. Maryland Casualty Co.

20       80 Cal.App.4th 1165, 96 Cal.Rptr.2d 136 (2000)...............................7, 8

21  Scottsdale Insurance Co v. MV Transportation,

22       36 Cal.4th 643, 31 Cal.Rptr.3d 147........................................................8

23  Shell Oil Co. v. National Union Fire Ins. Co.,

24       44 Cal.App.4th 1633, 52 Cal.Rptr.2d 580 (1996)................................12

25  Waller v. Truck Ins. Exchange,

26       11 Cal.4th 1, 44 Cal.Rptr.2d 370 (1995)..............................................16

27

28



1   California Civil Code section 3287(a)...........................................................10
2   California Civil Code section 3289(b)...........................................................13

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

28

1

2

## **INTRODUCTION**

3        Liberty Mutual seeks to recover the defense costs incurred in defending
4 Michael Blatt against claims made in the underlying litigation, Gabbert v.
5 Blatt, Marin County case number CV 020477 ("Gabbert action").   Liberty
6 Mutual maintains that the results of the Gabbert action and the terms of the
7 relevant policy established that Liberty Mutual never had any obligation to
8 defend Blatt at all.   Liberty Mutual maintains that it is entitled to
9 reimbursement of all costs of defense, including the attorneys fees and costs
10 paid to the underlying plaintiffs.   Buss v. Superior Court, 16 Cal.4th 35, 65
11 Cal.Rptr.2d 366 (1997).

12

13        This court, however, has disagreed.   In its October 26, 2007 ruling on
14 Liberty Mutual's motion for summary judgment (Document 60), the court not
15 only denied the motion but held that there were only three issues remaining
16 for trial: 1) whether any attorneys' fees and/or costs were generated in the
17 defense of Blatt, after the jury verdict; 2) whether Liberty paid any of these
18 fees and/or costs; and 3) the amount, if any, of these fees and costs.

19

20        The court apparently left open at least the issue of attorneys fees and
21 costs generated by the underlying plaintiffs post-verdict and paid by Liberty.
22 (See footnote 4 to court's ruling on the motion for summary judgment.)   At a
23 minimum, Liberty Mutual maintains that it is entitled – pursuant to the court's
24 prior order -- to recover any post-verdict fees paid to the underlying plaintiffs.

25

26        But the court's order is less than clear about the entire issue of the fees
27 and costs awarded to the underlying plaintiffs and paid by Liberty Mutual
28 pursuant to the supplementary payments provision of the policy.   Liberty

1 Mutual will offer the court to chance to clarify its position on the roughly
2 $300,000 paid to the underlying plaintiffs after the jury verdict had exonerated
3 Liberty Mutual's named insured and eliminated any potential for coverage
4 under the policy for Mr. Blatt.

5

6      Finally, Liberty Mutual maintains that it is entitled to interest on any
7 award made in its favor.  While the court denied interest at the time the
8 summary judgment was heard, the stipulated facts prepared and submitted
9 by the parties now establish the amounts to which Liberty Mutual is entitled
10 so as to allow a computation of interest with certainty.

11

12      In submitting this limited trial brief on the remaining issues as
13 circumscribed by the court, Liberty Mutual in no way concedes that the
14 court's ruling on the summary judgment was correct.  Liberty Mutual reserves
15 all of its rights to appeal each of the rulings made by the trial court
16 concerning the summary judgment motion.

17

18                    **STATEMENT OF FACTS**

19

20      In September of 1998, James Gabbert and Michael Lincoln entered
21 into a contract with Michael Blatt, Catherine Blatt and Peter Kane, wherein
22 the Blatts agreed to build and sell two high-end condominiums in Sausalito to
23 Gabbert and Lincoln.  Kane acted as the real estate agent for the Blatts.

24

25      Schnabel Foundation Company ("Schnabel") was hired to construct a
26 soil nail retaining wall to stabilize the hillside behind the condos. Schnabel as
27 insured by Liberty Mutual, and Liberty Mutual issued a certificate of insurance
28 naming Mr. Blatt as an additional insured.

2

1    Escrow on the Sausalito properties closed in March 1999, and Gabbert
2  and Lincoln embarked on extensive remodeling of the condominiums.  During
3  the remodeling they discovered construction defects, including problems with
4  water intrusion from the hillside.
5

6    Gabbert and Lincoln filed suit against the Blatts and Kane in January
7  2002.   In Gabbert v. Blatt, Marin County case number CV 020477, the
8  plaintiffs asserted causes of action for breach of contract, negligence, fraud,
9  negligent misrepresentation, "suppression and concealment of facts," and
10 breach of implied warranty.  Plaintiffs generally alleged that the Blatts had
11 breached their contract because the building failed to conform to the agreed
12 plans and failed to meet the applicable codes.  They also maintained that the
13 property was unsuitable for occupation and that the Blatts had failed to
14 disclose defects in the property.  The Blatts, in turn, filed a cross-complaint
15 against Schnabel.
16

17    Mr. Blatt tendered his defense to Liberty Mutual under the terms of the
18 policy issued to Schnabel.  Liberty Mutual accepted Mr. Blatt's defense
19 subject to a September 4, 2002 reservation of rights, including Liberty
20 Mutual's "right to seek allocation and/or reimbursement of any defense costs
21 not associated with" covered claims.    Liberty Mutual ultimately paid
22 $198,345.11 for Mr. Blatt's defense. (Stipulated Trial Fact 1.)
23

24    The matter proceeded to trial, and the jury returned a verdict on
25 February 27, 2004.  Mr. Blatt was found liable to the plaintiffs for almost
26 $145,000.  Schnabel was found not liable to any party.  Pursuant to an
27 attorneys' fees provision in their contract with Mr. Blatt, plaintiffs were
28 awarded their attorneys' fees of nearly $287,000 as prevailing parties, as well

1 as court costs of almost $14,000, for a total of $300,302.25.  (Stipulated Trial
2 Fact 2.)

3

4       Since Schnabel was found not liable, Liberty Mutual declined to pay
5 any indemnity on behalf of Mr. Blatt, and Mr. Blatt paid the $145,000
6 judgment to the plaintiffs.  However, Liberty Mutual did pay the court costs
7 and attorneys fees awarded against Mr. Blatt and in favor of Gabbert and
8 Lincoln under the supplementary payments provisions of the Schnabel policy.
9 Payment was made subject to the reservation of rights.  (Stipulated Trial Fact
10 2.)

11

12       Subsequent to this court's ruling on the motion for summary judgment,
13 the parties have met and agreed to the following trial facts: 1) that of the fees
14 incurred in the defense of Mr. Blatt, up to $23,045.71 was incurred after the
15 jury verdict in the underlying Gabbert v. Blatt case; 2) that Liberty Mutual paid
16 $8,755.19 of those fees in a series of payments after the verdict; and 3) of
17 the fees incurred on behalf of the underlying plaintiffs, $1,582.50 was
18 incurred by counsel for Gabbert and Lincoln after the jury verdict.

19

20   **1.   BASED ON THE COURT'S RULING ON THE SUMMARY**
21        **JUDGMENT MOTION, LIBERTY MUTUAL IS ENTITLED**
22        **TO RECOVER AT LEAST THE POST-VERDICT FEES**
23        **SPENT ON MR. BLATT'S DEFENSE.**

24

25       In its ruling on the summary judgment, the court specifically held that
26 "any attorney fees and costs that were generated after the jury found no
27 liability for Schnabel may be recovered by Liberty."  (October 26, 2007 order,
28 p. 13, ll. 14-16.)

1

2    The parties have stipulated that Liberty Mutual paid $8,755.19 in fees
3    generated after the underlying verdict.   At a minimum, Liberty Mutual is
4    entitled to recover that amount.

5

6    **2.   BASED ON THE COURT'S RULING ON THE SUMMARY**
7    **JUDGMENT MOTION, LIBERTY MUTUAL IS ENTITLED**
8    **TO RECOVER AT LEAST THE POST-VERDICT FEES**
9    **INCURRED BY PLAINTIFFS' COUNSEL IN THE**
10   **UNDERLYING CASE.**

11

12    The order on the summary judgment motion is not entirely clear, but it
13   appears that the court is also allowing Liberty Mutual to recover at least those
14   fees generated by counsel for the underlying plaintiffs post-verdict.    The
15   parties in this case have stipulated that that amount is $1,582.50.  The court
16   should award at least that much to Liberty Mutual on this portion of its claim.

17

18   **3.  THE COURT DID NOT EXPRESSLY RULE ON THE CLAIM**
19   **FOR FEES AND COSTS PAID TO THE UNDERLYING**
20   **PLAINTIFFS.**

21

22    With its motion for summary judgment or summary adjudication, Liberty
23   Mutual sought three things: 1) to recover some or all of the fees spent in the
24   direct defense of Mr. Blatt; 2) a full recovery of the fees and costs paid to the
25   underlying plaintiffs pursuant to the "supplementary payments" provisions of
26   the policy; and 3) legal interest on the first two items.  In its order, the court
27   omits any direct ruling on item number 2.  In fact, the court lays out its
28   understanding of Liberty Mutual's claim in a very different way.  It also recites

5

1 three elements of the claim at page 11 of the order: "1) that Liberty is entitled
2 to reimbursement by Blatt for any costs and fees paid to defend Blatt against
3 claims not covered by the policy; 2) that Liberty is entitled to reimbursement
4 from Blatt for any costs and fees paid to defend Blatt after the jury verdict
5 was returned; and 3) Liberty is entitled to prejudgment interest on any
6 amounts recovered from Blatt." There is no specific mention of the claim for
7 recovery of the more than $300,000 paid to the underlying plaintiffs for their
8 fees and costs. Yet, Liberty Mutual was clearly entitled to recover that
9 amount.

10

11 Liberty Mutual was only obliged to defend and indemnify Mr. Blatt to
12 the extent that his liability arose out of the operations of Schnabel. Mr. Blatt's
13 liability for the fees and costs awarded to the underlying plaintiffs did not
14 arise out of Schnabel's work for two independent reasons: 1) the fees were
15 awarded as a result of the attorneys fees provisions in the real estate
16 contracts (Exhibits 2 and 3) Blatt negotiated with Gabbert and Lincoln,
17 contracts to which Schnabel was a stranger and which had nothing to do with
18 Schnabel's work; and 2) Liberty Mutual's defense obligation had been
19 terminated, as a result of the jury verdict in favor of Schnabel, long before
20 any fees and costs were awarded against Mr. Blatt.

21

22 It is clear that the attorneys fees awarded to Gabbert and Lincoln did
23 not arise out of Schnabel's operations. Rather, they were awarded as a
24 result of the contracts Blatt negotiated with the underlying plaintiffs. Those
25 contracts, signed in 1998, post-dated the construction agreement between
26 Blatt and Schnabel (Exhibit 5) by over a year. It is untenable on it face to
27 suggest that a fee award based solely on the attorneys fee provision in a real
28 estate sales contract arises out of the work of a contractor hired a year

6
LIBERTY MUTUAL'S TRIAL BRIEF

1 before the real estate contract is even negotiated. In other words, the fee
2 award represents an element of defense costs that were incurred for a claim
3 which was never even potentially covered by the policy: fees based on the
4 real estate sales contracts, not the work of Schnabel Foundation.

5

6    Second, the underlying jury verdict, which established that there was
7 no liability to any party arising out of Schnabel's operations, also foreclosed
8 any possible coverage under the Liberty Mutual policy for the claims made
9 against Mr. Blatt. The verdict was returned on February 27, 2004. On that
10 date, as a matter of law, Liberty Mutual had no further obligation to defend or
11 indemnify Mr. Blatt. The California Supreme Court made clear in Montrose
12 Chemical Corp. v. Superior Court, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 46
13 (1993) that a carrier's duty to defend continues "until the underlying lawsuit is
14 concluded . . . or until it has been shown that there is *no* potential for
15 coverage." (Emphasis in original.) Even defendant conceded in his
16 opposition to the summary judgment motion that Liberty Mutual had no
17 further or "prospective" defense obligation going forward after the jury verdict.
18

19    The underlying plaintiffs' court costs and attorneys fees were awarded
20 after a hearing on May 4, 2004, and the judgment including the award of
21 costs and fees was signed by the trial court on June 30, 2004 (Exhibit 9).
22 Liberty Mutual later made payments to the underlying plaintiffs for their costs
23 and attorney's fees at the specific behest of Mr. Blatt's counsel and under the
24 terms of the reservation of rights. All of these events occurred after the jury
25 verdict had established that there was no duty to defend.

26

27    Once the facts demonstrate that a carrier has no potential for coverage,
28 the carrier is free to withdraw from the defense of the insured. See, for

1 example, Ringler Associates Inc., v. Maryland Casualty Co., 80 Cal.App.4th
2 1165, 1186-87, 96 Cal.Rptr.2d 136 (2000).  On the other hand, a carrier is
3 not obliged to withdraw its defense as a predicate for seeking reimbursement
4 from its insured.  The Ringler court noted that "in order to avoid any
5 possibility of liability for bad faith . . . it may be prudent for an insurer to obtain
6 a declaratory judgment that it has no duty before unilaterally withdrawing
7 from a defense. . . ."  Id. at 1192.  The carrier may instead reserve its rights,
8 defend the insured, and then seek reimbursement from the insured of sums
9 the carrier was not ultimately obliged to spend.  Scottsdale Ins. Co. v. MV
10 Transportation, 36 Cal.4th 643, 649, 31 Cal.Rptr.3d 147 (2005).  That is
11 *exactly* what Liberty Mutual did in this case.  Defendant's suggestion that
12 Liberty Mutual's payment somehow bars its Buss reimbursement claim would
13 render the Buss decision completely meaningless.

14

15 Moreover, this very issue – the payment of attorney's fees and costs to
16 a claimant when it has been determined that there is no duty to defend the
17 insured – was resolved by the Court of Appeal in Golden Eagle v. Cen-Fed,
18 Ltd., 148 Cal.App.4th 976, 56 Cal.Rptr.3d 279 (2007).  It is on all fours and
19 establishes Liberty Mutual's right to seek reimbursement for the fees and
20 costs paid to the underlying plaintiffs.[1]

21

22 One other thing needs to be noted.  This court has suggested obliquely

23

24 [1]  In opposing the motion for summary judgment, Defendant suggested that Liberty
Mutual's reliance on Cen-Fed was "misplaced," and insisted that the Cen-Fed "trial court
25 found that there was no duty to defend under the policy, yet held that the insurer had to
pay attorneys fees pursuant to contract."  That *is* what the Cen-Fed *trial* court found, and
26 that ruling was reversed by the Court of Appeal.  Clearly, if there was no further duty to
defend on the part of Liberty Mutual after the verdict, under Cen-Fed and Prichard Liberty
27 Mutual had and has the right to reimbursement for those amounts it paid to the underlying
plaintiffs.

28

LIBERTY MUTUAL'S TRIAL BRIEF

KRING & CHUNG
ATTORNEYS LLP

1 that regardless of the jury verdict, Liberty Mutual is somehow obliged to pay
2 the fees incurred by the underlying plaintiffs up to the date of the verdict.
3 Yet, there is no support in the law for this interpretation.  Moreover, on the
4 date of the underlying verdict, *neither Blatt nor Liberty Mutual had any*
5 *obligation to pay the fees and costs incurred by the underlying plaintiffs*.  That
6 obligation had yet to be assessed by the trial court.

7

8      Under the holding in Ringler, Liberty Mutual had the right to stop
9 funding Blatt's defense on the date of the verdict, and it would never have
10 had any obligation to pay anything to the underlying plaintiffs.  The payment
11 of the underlying plaintiffs' fees and costs was *an element of the defense*, not
12 an indemnity obligation.  Prichard v. Liberty Mutual, 84 Cal.App.4th 890, 101
13 Cal.Rptr.2d 298 (2000).  On the date of the verdict, *those fees and costs*
14 *were not yet an incurred defense cost because they had not been assessed*
15 *by the court*.  If Liberty Mutual's defense obligation ended with the jury verdict
16 – as both parties and the court all recognize – how could it be obliged to pay
17 for a defense cost that had not yet been incurred by the defense at the time
18 that obligation ended?   To ask the question is to demonstrate the
19 unreasonableness of defendant's position concerning the fees and costs paid
20 to the underlying plaintiffs.[2]

21

22      The parties have stipulated to the amount that was paid for the

23

24 [2]  This point can be illustrated with another fact.  Prejudgment interest is also payable
under the supplementary payments provisions of the Liberty Mutual policy.  Thus, it is also
25 an element of the cost of defense.  In this case, the underlying plaintiffs were arguably
accruing prejudgment interest on their claim against Mr. Blatt.   Yet, no one would
26 seriously argue that Liberty Mutual had an obligation to pay any prejudgment interest
awarded to the underlying plaintiffs once the jury verdict had been rendered, thereby
27 exonerating Schnabel and extinguishing Liberty Mutual's defense obligation.  Why should
the result be any different with the fees and costs awarded to the underlying plaintiffs?

28

1 underlying plaintiffs' attorneys fees and costs -- $300,303.85.  Liberty Mutual
2 is entitled to recover that sum.

3

4      **4.    LIBERTY    MUTUAL    IS    ENTITLED    TO    RECOVER**
5            **PREJUDGMENT INTEREST.**

6

7      In ruling on the motion for summary judgment, the court denied Liberty
8 Mutual any award of prejudgment interest because the amount due to plaintiff
9 was uncertain at the time the motion was heard.  That is not the case, at
10 least with regard to the fees and costs paid to the underlying plaintiffs and the
11 fees and costs generated after the verdict.

12

13     Under the provisions of California Civil Code section 3287(a) a party is
14 entitled to recover prejudgment interest on any claim which involves
15 "damages certain, or capable of being made certain by calculation" so long
16 as "the right to recover is vested in him on a particular day. . . ."  In this case,
17 Liberty Mutual has the right to recover the specific sum of defense fees and
18 costs incurred in the underlying litigation and the specific amount paid as
19 supplementary payments to the Gabbert plaintiffs.  Liberty Mutual's right to
20 recover those amounts from defendant vested when the payments were
21 made because, as a matter of law, Liberty Mutual never had an obligation to
22 defend Mr. Blatt in the underlying litigation.

23

24     An insurer's right to recover prejudgment interest from another when
25 the carrier is determined to have no coverage for a claim is well-established.
26 For example, in Hartford Accident & Indemnity Co. v. Sequoia Ins. Co., 211
27 Cal.App.3d 1285, 260 Cal.Rptr. 190 (1989), Hartford was determined to have
28 a right to reimbursement for a portion of the settlement it paid in resolving

10

1 claims arising from a single-vehicle rollover accident.  On appeal, the court
2 found that Hartford, as the primary and excess insurer of the vehicle, was
3 entitled to recover from both Sequoia, the permissive driver's primary carrier,
4 and Transamerica, the permissive driver's excess carrier.  Hartford was also
5 awarded to prejudgment interest from each of the defendants.

6

7      Among other things, Transamerica argued that Hartford was not
8 entitled to recover interest because its claim and its corresponding right to
9 damages was unclear.  The appellate court rejected this argument and
10 declared that "[w]hile Hartford's right to recover damages from Transamerica,
11 like Hartford's right to recover damages from Sequoia was in issue, the
12 amount of damages recoverable was 'certain, or capable of being made
13 certain by calculation' and was 'vested' in Hartford . . . the day Hartford
14 exhausted its primary policy limit and first paid out money under its umbrella
15 policy."  211 Cal.App.3d at 1307.  The court also granted Hartford's claim to
16 interest even though the total amount of damages would have been different
17 depending on the how the trial court ordered the priority of the several
18 policies.  It explained:

19

20      "Assuming Hartford was entitled to recover damages, the only
21      question remaining was how the trial court would prioritize the
22      policies.  In this respect, the court had only two options: (1) to
23      hold, as it did, that the Sequoia policy was second in order and
24      that the Hartford and Transamerica polices share the excess
25      liability on a prorata basis, or (2) that the Hartford umbrella policy
26      and the combine limits of the Sequoia and Transamerica policies
27      be prorated.  This was purely a question of law since the amount
28      of damages under either formula was reasonably ascertainable by

KRING & CHUNG
ATTORNEYS LLP

1       mathematical calculation. Thus, the amount of damages was
2       never 'unliquidated' or 'contingent' but rather, only the legally
3       proper order of priority of the respective policies was uncertain.
4       Under these circumstances, Hartford is entitled to prejudgment
5       interest." Id.

6

7       Likewise, in Shell Oil Co. v. National Union Fire Ins. Co., 44
8 Cal.App.4th 1633, 52 Cal.Rptr.2d 580 (1996), Shell was an additional insured
9 under a policy issued to one its contractors by National Union. Shell was
10 awarded damages and prejudgment interest against the carrier when
11 National Union paid the entirety of its policy limits on behalf of its named
12 insured contractor to settle a suit filed against both that contractor and Shell.
13 Citing Hartford, the Shell court wrote:

14

15       "Here, Shell's alternative theories required only the court's legal
16       determination of which was appropriate; the amount of damages
17       would thereby be fixed. The present case thus resembles
18       Hartford . . . , in which the overall responsibility of an insurer was
19       in dispute, and the amount recoverable from it depended on how
20       the court assigned priorities among it and two other insurers.
21       There, as here, 'the amount of damages under either formula was
22       readily ascertainable by mathematical calculation.'" 44
23       Cal.App.4th at 1651.

24

25       In Highland Ins. Co. v. Continental Casualty Co., 64 F.3d 514 (9th Cir.
26 1995), the plaintiff excess carrier sought to recover all amounts it paid to
27 indemnify a mutual insured where the defendant primary carrier refused on
28 several occasions to accept an offer to settle the underlying case for an

1 amount within the primary carrier's limits of coverage. The Ninth Circuit
2 agreed with the trial court that Highland was entitled to prejudgment interest
3 even though Continental had argued that there were questions of
4 comparative fault that affected Highland's right to recovery.

5

6       Based on this authority, Liberty Mutual is entitled to recover
7 prejudgment interest from defendant. While Mr. Blatt may dispute Liberty
8 Mutual's *right* to reimbursement, the *amount* of damages is readily
9 ascertainable from the amounts paid by Liberty Mutual and the bills prepared
10 by his own defense counsel in the underlying case. Liberty Mutual is entitled
11 to prejudgment interest on those amounts pursuant to section 3287.

12

13       The applicable rate of interest is 10 percent. Civil Code section
14 3289(b) provides that "[i]f a contract entered into after January 1, 1986 does
15 not stipulate a legal rate of interest, the obligation shall bear interest at a rate
16 of 10 percent per annum after a breach." The Liberty Mutual policy in this
17 case was issued for the period April 1997 to April 1998, so it falls within the
18 purview of section 3289(b).

19

20       In applying the rate of 10 percent, there is no doubt that this case
21 represents a type of contractual claim by Liberty Mutual against Mr. Blatt. In
22 Buss, the Supreme Court made clear that a carrier may seek reimbursement
23 of defense costs spent on uncovered claims because of "a right of
24 reimbursement that is implied in law as quasi-contractual, whether or not it
25 has one that is implied in fact in the policy as contractual." 16 Cal.4th at 51.
26 In a footnote in the opinion, the court is even clearer:

27

28       "That the insurer does not have a right of reimbursement express

13
LIBERTY MUTUAL'S TRIAL BRIEF

1
2
3
4
5
6
7
8

in the policy does not mean that it does not have one implied in law.  Rather, that it has an implied-in-law right helps explain why it does not have an express-in-policy one.  The former renders the latter unnecessary.  This is proved by the fact that, with an implied-in-law right and without an express-in-policy one, insurers have sought, and obtained, reimbursement – and have done so, on the evidence of reported decisions, for more than a decade. . . ." Id.

9

10   The right to reimbursement is implied in law into the contract.  This is
11   similar to the Buss court's decision that the obligation to defend, at least
12   initially, all parts of a "mixed" action against the insured is justified "as an
13   obligation imposed by law in support of the policy."  16 Cal.4th at 48-49.
14   Both the obligation to defend an entire mixed action, and the right to seek
15   reimbursement for uncovered claims, are implied into the contract under
16   concepts of equity.  But at root, these are implied into the *contract*; they are
17   not created from whole cloth.  As such, the provisions of section 3289
18   governing the rate of prejudgment interest in contract cases apply.

19

20   The same should be true in this case.  Liberty Mutual's right of
21   reimbursement is implied by law into the contract.  The scope of coverage
22   under the policy – which is the issue that determines in the first place
23   whether there is a duty to defend and indemnify – is a question of contract
24   interpretation.    Therefore, the contract remedy of prejudgment interest
25   applies.

26

27   Simple notions of fairness also compel this conclusion.  If the roles
28   were reversed, and Mr. Blatt were seeking benefits payable under the policy,

14

KRING & CHUNG
ATTORNEYS LLP

1 he would surely be seeking prejudgment interest at the statutory rate.  And
2 he would be entitled to such a recovery.  See, for example, California
3 Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal.App.3d 1, 33, 221 Cal.Rptr.
4 171 (1985);  Oil Base, Inc. v. Transport Indemnity Co., 148 Cal.App.2d 490,
5 492, 306 P.2d 924 (1957).

6

7      How would it be fair to deny Liberty Mutual a full recovery, including
8 prejudgment interest, when Mr. Blatt would be allowed to do so?    The
9 question answers itself.

10

11      The payment to the underlying plaintiffs was made by Liberty Mutual on
12 September 10, 2004 (Stipulated Trial Fact 2).  That was just over 40 months
13 ago, or roughly 3.33 years.  This translates to simple interest of 33.3 percent
14 (3.33 years x .10 per year).  That percentage applied to the fees and costs
15 paid to the underlying plaintiffs yields an amount of \$100,001.18 in interest
16 (\$300,303.85 x .333).

17

18      Interest can likewise be calculated on the post-verdict fees and costs
19 paid to Mr. Blatt's counsel.  The post-verdict fees were paid to counsel by
20 August of 2004 (Stipulated Trial Fact 3), or a little more than 40 months ago.
21 Even using the 33.3 percent figure, the interest on \$8,755.19 would be an
22 additional \$2,915.48.

23

24   **5.    LIBERTY MUTUAL'S CLAIMS ARE NOT BARRED BY**
25          **WAIVER OR ESTOPPEL.**

26

27      In his trial brief, Mr. Blatt resurrects his argument that Liberty Mutual
28 has waived its claim or is estoped from pursuing them.  Both defenses must

1   fail.

2

3       To hold that there has been a waiver, a court must find "the intentional
4   relinquishment of a known right after knowledge of the facts.    The
5   burden . . . is on the party claiming a waiver of a right to prove it by clear and
6   convincing evidence that does not leave the matter to speculation, and
7   doubtful cases will be decided against a waiver."    Waller v. Truck Ins.
8   Exchange, 11 Cal.4th 1, 31, 44  Cal.Rptr.2d 370 (1995).  That burden cannot
9   be met in the present case where Liberty Mutual fully reserved its rights in
10  writing to seek "reimbursement" from Mr. Blatt.  (Exhibit 7.)

11

12      The estoppel argument must also fail.  An equitable estoppel requires a
13  showing of "detrimental reliance."  Id. at 34.  Defendant suggests that Liberty
14  Mutual "failed to notify Blatt . . . that it would seek reimbursement" of the
15  amounts paid to the underlying plaintiffs. (Blatt Trial Brief p. 9, ll. 13-15.)  But
16  this ignores the fact that Liberty Mutual provided its defense under an
17  express reservation of its right to seek reimbursement.  How could Blatt have
18  detrimentally relied on Liberty Mutual's actions and concluded that plaintiff
19  would not seek reimbursement when it expressly reserved its right to do so?
20  Blatt asserts that he could have negotiated with the underlying plaintiffs for
21  some discount of the fees and costs, but this assertion is offered without one
22  whit of evidence or support.

23

24      Moreover, defendant's waiver/estoppel position is disingenuous since
25  Mr. Blatt *demanded* that Liberty Mutual pay the entire judgment against him,
26  including the attorney's fees and costs awarded to the underlying plaintiffs.
27  (Exhibits G and H submitted in support of the Motion for Summary
28  Judgment.)   How can defendant accept a defense under a reservation of

1 rights, fail to establish the predicate for any coverage whatsoever (liability
2 arising from the operations of the named insured, Schnabel), demand that
3 the carrier nevertheless pay for an award of attorney's fees and costs, and
4 then argue in *equity* that the carrier is estopped from seeking reimbursement
5 because it acceded to defendant's demands and advanced the payment?

6

7 Finally, this court has already tacitly ruled against Mr. Blatt's affirmative
8 defenses.  The court held in its ruling on the summary judgment motion that
9 Liberty Mutual is entitled to recover the post-verdict fees and costs incurred
10 in Blatt's defense.  It expressly granted the alternative motion for summary
11 adjudication on that point.  In making such a ruling, the court must have
12 rejected Mr. Blatt's waiver and estoppel arguments that were advanced in
13 opposition to the motion.

14

15 **CONCLUSION**

16

17 While expressly reserving all rights on appeal, Liberty Mutual asks this
18 court to enter judgment in its favor and against defendant Blatt for the
19 following amounts: 1) $300,303.85 paid to the underlying plaintiffs as fees
20 and costs;  2)  $100,001.18  in  prejudgment  interest  on  that  amount;
21 3) $8,755.19 in post-verdict fees and costs paid to counsel for Blatt; and
22 4) $2,915.48 in interest on that amount, for a total of $411,975.70.

23

24 Dated:  January 24, 2007                      KRING & CHUNG, LLP

25

26                                          By: _____

27                                              Ronald J. Skocypec
                                                 J. Christopher Bennington
28                                              Attorneys for Plaintiff
                                                 LIBERTY MUTUAL INS. CO.

1

## PROOF OF SERVICE

2 | STATE OF CALIFORNIA, COUNTY OF ORANGE

3 | I, the undersigned, am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the
4 | within action. My electronic mail address is mbennett@kringandchung.com. The document was served electronically and the transmission was reported
5 | as complete and without error.

6 | On January 25, 2008 at approximately 3:10 p.m., I served true copies of the foregoing document(s) described as **TRIAL BRIEF OF LIBERTY**
7 | **MUTUAL INSURANCE COMPANY** on the interested parties in this action, addressed as follows:

8

**Attorneys for Michael Blatt**
9 | Ronald D. Foreman, Esq.
rdf@foremanandbrasso.com
10

11 | ☒  BY E-MAIL:  By transmitting a true copy of the foregoing document(s) to the e-mail address listed above.

12 | I declare under penalty of perjury under the laws of the State of
13 | California that the foregoing is true and correct.

14 | Executed on January 25, 2008, at Irvine, California.

15

16 | M. Bennett
MICHELLE BENNETT

17

18

19

20

21

22

23

24

25

26



27 | 1

28 | F:\8000\0006\POS\PROOF OF SERVICE.doc